## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

D.C. PROFESSIONAL TAXICAB DRIVERS
ASSOCIATION,

   and

DOMINION OF CAB DRIVERS,

               Plaintiffs,

       v.                          Civil Action No. 11-1802 (BAH)

DISTRICT OF COLUMBIA,
VINCENT C. GRAY, MAYOR,
OFFICE OF THE ATTORNEY
GENERAL FOR THE
DISTRICT OF COLUMBIA,
RON LINTON, and
D.C. TAXICAB COMMISSION,
c/o Daniel A. Rezneck, Esq. and
Jacques P. Lerner, Esq.
441 Fourth Street, N.W., 6th Floor South
Washington, D.C.  20001,

               Defendants.

## MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

    Defendants District of Columbia, Vincent C. Gray, Mayor, Office of the Attorney

General for the District of Columbia, Ron Linton, and D.C. Taxicab Commission (hereinafter,

collectively, "Defendants"), by and through their undersigned attorneys, the Office of the

Attorney General for the District of Columbia, respectfully move this Honorable Court, pursuant

to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the First

Amended Complaint ("complaint") on the following grounds:

1.     The "Office of the Attorney General for the District of Columbia" and the "D.C. Taxicab Commission" cannot be sued because they are *non sui juris. Ali v. District of Columbia Gov't.,* 2010 U.S. Dist. LEXIS 27580, *5 (D.D.C. 2010).

2.     The claims against Defendant Vincent C. Gray is in his official capacity as Mayor of the District of Columbia and Defendant Ron Linton in his official capacity as Chairperson of the D.C. Taxicab Commission ("Commission" or "DCTC") are redundant of those against Defendant District of Columbia.  *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985).

3.     All counts other than X and XI fail because Plaintiffs have no private rights of action under local law.  *See Pittman v. Jones,* No. 01-7192, 2003 WL 179838, *1 (C.A.D.C. 2003) (D.C. Cir. Jan. 24, 2003); *Tynes v. Gogos,* 144 A.2d 412, 417 (D.C. 1958).

4.     Count I fails because Plaintiffs lack an injury-in-fact, and therefore associational standing under Article III, to complain about whether the Commission's authority properly derives from the DCTC Establishment Act of 1985, *codified as amended at* D.C. OFFICIAL CODE § 50-301 *et seq.* (2007 Supp.), or from the Mayor's authority, as delegated.  *See Friends of the Earth, Inc. v. Laidlaw Env'l. Servs., Inc.,* 528 U.S. 167, 180-81 (2000); *Hunt v. Washington State Apple Adver. Comm'n*, 432 US 333, 341-43 (1977).

5.     Counts I and X fail because Plaintiffs' prior unsuccessful lawsuits, *D.C. Professional Taxi Drivers Assoc'n, Inc. v. D.C.,* No. 1587-06 (D.C. Super. Ct.), and *D.C. Professional Taxi Drivers Assoc'n, Inc. v. D.C.,* No. 1993-08 (D.C. Super. Ct.), bar the re-litigation in this case of the issues that were or could have been adjudicated in those cases through the doctrines of collateral estoppel, *res judicata,* and *stare decisis. See Rodriguez v. Editor in Chief,* 285 Fed. Appx. 756, 760 (D.C. Cir. 2008); *U.S. v. Tohono O'Odham Nation*, __

S. Ct. __, 2011 WL 1543329 at *6 (April 26, 2011); *U.S. v. Cardales-Luna,* 632 F.3d 731, 736 (1st Cir. 2011).

6.      Counts II, III, V, and XI fail because they are moot in whole or in part.  *See Bender* v. *Jordan,* 515 F.Supp.2d 10, 16 (D.D.C. 2007).

7.      Counts IV and V fail because Plaintiffs have not exhausted their administrative remedies on the issues raised in those claims.  *See District of Columbia Metro. Police Dep't v. Fraternal Order of Police,* 997 A.2d 65, 81 (D.C. 2010).

8.      Count I fails because the Mayor has not exercised unlawful control over the Commission.  *See, e.g,* 2005 D.C. Omnibus Authorization Act, Pub. L. No. 109-356, 120 Stat. 2019.

9.      Count II fails because the composition of the Taxicab Commission is not unlawful.  *See* D.C. Official Code § 50-303(12).

10.      Count IV fails because the Commission is not obligated to conduct a rate "study." *See* D.C. Official Code § 317.

11.      Counts V, VII, and IX fail because they attack discretionary government decisions protected by sovereign immunity or entitled to deference by the Court.  *See Washington Metro. Area Transit Auth. v. Barksdale-Showell,* 965 A.2d 16, 20-21 (D.C. 2009); *Kuri Bros., Inc. v. District of Columbia Bd. of Zoning Adj.*, 891 A.2d 241, 245 (D.C. 2006).

12.      Count VII fails because it does not state *any* claim under the Supreme Court's holding in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

13.      Count X fails because the "Non Resident Acts," D.C. Official Code § 50-1501.02(c)(5), as amended, do not violate the Commerce Clause or Plaintiffs' right to travel since they do not discriminate against Plaintiffs in their ability to drive taxicabs in the District.

*See City of Philadelphia v. New Jersey* 437 U.S. 617 (1978); *Attorney General of N.Y. v. Soto-Lopez*, 476 U.S. 898, 903 (1986).

14.     Most or all of the counts in the complaint are barred by the statute of limitations and/or laches.  D.C. OFFICIAL CODE § 12-301; *Curtis v. Gordon,* 980 A.2d 1238, 1247 (D.C. 2009).

In support of their motion, Defendants respectfully refer the Court to the attached memorandum of points and authorities.  An appropriate, proposed Order also accompanies these papers.

Respectfully submitted,

IRVIN B. NATHAN
Attorney General for the District of Columbia

ELLEN EFROS
Deputy Attorney General
Public Interest Division


/s/ *Grace Graham*_____
GRACE GRAHAM, D.C. Bar No. 472878
Chief, Equity Section
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C.  20001
Direct Dial: (202) 442-9784
Receptionist: (202) 727-6295
Facsimile: (202) 741-8852
Email: grace.graham@dc.gov


/s/ *Daniel A. Rezneck*_____
DANIEL A. REZNECK, D.C. Bar No. 31625
Senior Assistant Attorney General
441 Fourth Street, N.W., Suite 600S
Washington, D.C.  20001
Direct Dial: (202) 724-5691
Fax: (202) 727-3625
Email: daniel.rezneck@dc.gov

/s/ *Jacques P. Lerner*_____
JACQUES P. LERNER, D.C. Bar No. 440998
Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C.  20001
Direct Dial:  (202) 724-1342
Receptionist:  (202) 727-6295
Facsimile:  (202) 741-5908
Email: jacques.lerner@dc.gov

**NOVEMBER 22, 2011**        **COUNSEL FOR DEFENDANTS**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

D.C. PROFESSIONAL TAXICAB DRIVERS
ASSOCIATION, *et al.*,

                     Plaintiffs,

        v.                             Civil Action No. 11-1802 (BAH)

DISTRICT OF COLUMBIA, *et al.*,

                     Defendants.

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANTS' MOTION TO**
**DISMISS THE FIRST AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

Plaintiffs, two associations of taxicab drivers, have pled numerous meritless claims

against Defendants District of Columbia, Mayor Vincent C. Gray, the Office of the Attorney

General for the District of Columbia, Ron Linton, and the D.C. Taxicab Commission ("DCTC"

or "Commission") (hereinafter, collectively, "Defendants"), primarily under the DCTC

Establishment Act of 1985, *codified as amended at* D.C. OFFICIAL CODE § 50-301 *et seq*. (2007

Supp.) ("Act") – all of which are barred on prudential and jurisdictional grounds, and most of

which otherwise fail on the merits.[1]  This is Plaintiffs' second attempt to re-litigate issues

decided against the Plaintiffs in prior lawsuits and nothing said in their instant blunderbuss

complaint is sufficient to keep this case alive.  The Commission is operating lawfully and its

decisions about rate-making and rate analysis, among other things, are political questions that

---

[1] For the Court's convenience, Defendants have prepared an index to their arguments attached hereto as Exhibit 1.

cannot be resolved through lawsuits.   For these reasons and those set forth in greater detail
below, Defendants' motion to dismiss should be granted.

## FACTUAL BACKGROUND[2]

Plaintiffs have filed a 35-page complaint containing 11 counts, in which they seek
sweeping injunctive and declaratory relief.   Complaint at 32-34.   They are two associations of
cab drivers; there are no individual plaintiffs.   The taxicab drivers who belong to the associations
reside in both the District of Columbia and Virginia.   One association is incorporated under the
laws of the District of Columbia and the other under the laws of Virginia.   Complaint at 11-13.
The defendants are the District of Columbia, Mayor Vincent C. Gray, the Office of the Attorney
General for the District of Columbia, Ron Linton, and the D.C. Taxicab Commission.   The two
officials, the Mayor of the District and the Chairman of the Taxicab Commission, are sued solely
in their official capacities, making any claims against them redundant suits against the District of
Columbia Government.   There are no claims against them in their individual capacities.

Most of the allegations of the complaint have their origins in prior administrations of both
the District Government and the Commission, dating to as long ago as the early 2000s, when the
switch was made to registration numbers in lieu of paper hack licenses.   Two claims central to
the complaint are renewed attacks on the "Non Resident Acts," D.C. Official Code              §
50-1501.02(c)(5), as amended, upheld in *D.C. Professional Taxi Drivers Assoc'n, Inc. v. D.C.,*
No. 1587-06 ("*D.C. Professional Taxi I*"), January 9, 2009 Order Denying Plaintiff's Motion for
Summary Judgment and Granting Defendants' Renewed Motion for Summary Judgment

---

[2] The facts discussed in this section are drawn from the Complaint and are accepted as true for purposes of the
motion to dismiss only.  Defendants do not intend to convert this motion to one for summary judgment under Rule
56.

(Exhibit 2), and on the Mayor's authority over taxicab rates, upheld in *D.C. Professional Taxi Drivers Assoc'n, Inc. v. D.C.,* No. 1993-08 ("*D.C. Professional Taxi II*"), April 21, 2008 Memorandum Opinion and Order (Exhibit 3).  Plaintiffs' prior lawsuits bar consideration of their latest challenges.

As explained below, even to the extent there are new claims presented here, events have outrun many of Plaintiffs' allegations by reason of changes in personnel, procedures, and regulations.  For example, in paragraph 27 of the complaint, Plaintiffs allege that:  "As of filing, the $19 maximum fare cap remains in force.  In the face of arbitrarily low fares, the $19 cap thereby forces drivers to work for free."  The Court may take judicial notice of the public notice release of the Taxicab Commission abolishing the $19 maximum fee cap effective October 21, 2011.[3]  Likewise, the complaint alleges that the "Commission's practice of encouraging or permitting hack inspectors and law enforcement officers to pull over and inspect taxicabs without probable cause or reasonable suspicion of wrongdoing is in violation of the Fourth Amendment rights of taxicab drivers."  Complaint at ¶ 89.

Count I of the Statement of Claims alleges that the Mayor exercises control over the taxicab industry in violation of the D.C. Taxicab Commission Establishment Act, though nowhere in the complaint do Plaintiffs explain how this has specifically caused them harm in light of the Mayor's delegation of his authority to the Commission.  Morever, here again, the specific allegations relate principally to actions and orders of a previous Mayor and a previous Chairman of the Taxicab Commission and not to either the present Mayor or the present Chairman of the Commission.  Complaint at ¶¶ 92, 95, 96.

---

[3] *See* http://newsroom.dc.gov/show.aspx/agency/dctaxi/section/2/release/22654/year/2011 (accessed 11-18-11 at 4:25 p.m.).

Count II of the Statement of Claims alleges that the DCTC Establishment Act requires the Commission to have three representatives with "experience in taxicab industry operations in the District." Para. 99. It then cites a different provision of the law – defining the taxicab industry to include those who are "*directly involved* in the provision of taxicab services in the district" (Italics in original) Para.100. It alleges that none of the current commissioners are "directly involved in the provision of taxicab services in the District." Complaint at ¶¶ 101, 107. This is the wrong standard for membership on the Commission, which is "experience in taxicab operations in the District" rather than "directly involved in the provisions of taxicab services in the District."

Count III alleges that Inder Raj Pawha continues to serve as a Commissioner despite term limits that rendered him ineligible. Complaint at ¶¶ 110-12. Here again events have outrun the allegations. Based on the representations herein, the Court may take judicial notice that Mr. Pawha may no longer serve as a member of the Commission.

Count IV alleges that the Commission has failed to conduct a proper rate study in violation of the DCTC Act. Complaint at ¶¶ 115-18. Plaintiffs surely misapprehend the requirements of the law on this point, but regardless, once again, events have outrun the allegations. Last month, Nicholas Maxwell, an owner-operator of a taxicab, filed with the Commission a petition for consideration and action on a proposed modification of the taxicab metered rate structure; it will be part of the DCTC proceedings scheduled for November 29, 2011 to be held for the purpose of "elicit[ing] factual information concerning the rate increase that will allow the Taxicab Commission to arrive at an evidentiary decision…" based on "presentations from both proponents and opponents or other views of the rate increase."[4]

---

[4] *See* http://newsroom.dc.gov/show.aspx/agency/dctaxi/section/2/release/22693 (accessed at 7:23 p.m. on Nov. 20, 2011).

Count V alleges that Defendants have failed to set reasonable and fair rates.  Complaint at ¶¶ 122-24, 126.  Once again plaintiffs have jumped the gun in light of the pending Maxwell petition referred to in the preceding paragraph.

Count VI alleges that Plaintiffs are entitled to a preliminary injunction ordering implementation of an interim rate adjustment.  Complaint at ¶¶ 130-31.  The rate consideration referred to in the preceding two paragraphs should meet this request.  Among other defects in this count, the four factors have not been met for a *mandatory* preliminary injunction and the administrative remedy in the Commission rate proceedings has not been exhausted.

Count VII alleges that Defendants have "misappropriated" funds obtained from drivers for the "drivers' assessment fund."  Plaintiffs do not understand the workings of this fund.  A driver pays $100 on renewal of a license, which goes to the Chief Financial Officer of the District, not to the Taxicab Commission.  The Council of the District of Columbia decides how it shall be spent.  The Commission has no control over the fund.  Moreover, Plaintiffs do not actually plead *any* non-conclusory allegations of wrongdoing sufficient to support *any* cause of action.

Count VIII alleges that the Commission improperly issued regulations.  These allegations are made against a prior Chairman of the Commission, going back several years.  Complaint at ¶¶ 142-43. There are no such allegations against the present newly appointed Chairman, Mr. Linton.

Count IX alleges that the Commission improperly eliminated hard-copy licenses and imposed restrictions on license issuance and transferability.  Complaint at ¶¶ 148-51.   Here again these allegations are against a former Chairman of the Commission.  In addition, the moratoria complained about expired September 30, 2011, rendering this allegation moot.

Count X alleges that the "Non Resident Acts" violate the right to travel and the Commerce Clause of the U.S. Constitution.  Plaintiffs persist in their misunderstanding of the law:  the residency requirement merely insures uniform enforcement of the taxicab regulations and in no way discriminates against non-District taxicab drivers.  *See D.C. Professional Taxicab I.*

Count XI alleges that the Commission had a policy of encouraging unlawful traffic stops and inspections in violation of drivers' constitutional rights.  As previously indicated, events have outrun this count.  In September of this year, the Commission issued General Order No. 1 which requires "reasonable cause" to believe that there is a violation of law for the stop of a taxicab.  Exhibit 4.  This count, like a number of others, as demonstrated herein, is therefore moot.

## LEGAL STANDARDS

Defendants' motion challenges the First Amended Complaint under both Rule 12(b)(1) and Rule 12(b)(6), which differ in their procedural application.  A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) permits the Court to look beyond the allegations of the complaint.  As this Court has explained, per Judge Walton:

> To avoid dismissal under Rule 12(b)(1)…, a plaintiff must establish the Court's jurisdiction by a preponderance of the evidence. When determining the question of jurisdiction, federal courts accept the factual allegations contained in the complaint as true.… *Moreover, the Court can consider material outside of the pleadings when determining whether it has jurisdiction.*

*Halcomb v. Office of the Senate Sergeant-At-Arms,* 563 F. Supp. 2d 228, 235 (D.D.C. 2008) (emphasis added).  *Accord Bailey v. Verizon Commun., Inc.,* 544 F. Supp. 2d 33, 35 (D.D.C. 2008) (Lamberth, J.).  *See also Harrison v. U.S.*, 2008 WL 312722, 1 (D.Neb. 2008) (stating "[w]hen subject matter jurisdiction is challenged under Fed. R. Civ. P. 12(b)(1), the Court is

permitted to consider matters outside the pleadings.").  Here, Defendants seek dismissal under

Rule 12(b)(1) of certain allegations in the complaint on two grounds calling into question the

Court's power to hear this case:  the Plaintiff associations' lack of standing, *see, e.g., Alliance for*

*Env'l. Renewal, Inc. v. Pyramid Crossgates Co.,* 436 F.3d 82, 89 (2d Cir. 2006) (stating "the

proper procedural route [for a challenge to standing] is a motion under Rule 12(b)(1)"), and

mootness, *see, e.g., Lawal v. U.S. I.N.S.,* 1996 WL 384917, *1 (S.D.N.Y. 1996) (stating

"defendant argues that this court lacks subject matter jurisdiction because the plaintiffs' action is

moot[, a]…contention [] properly entertained under Fed.R.Civ.P. 12(b)(1)….").  In all cases, the

party asserting jurisdiction maintains the burden of proving jurisdiction does exist.  *E.g.*

*Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001) (*per curiam*).

The Federal Rules of Civil Procedure require a complaint to contain a "short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

This pleading standard "does not require 'detailed factual allegations,' but it demands more than

an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct.

1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if

it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*,

550 U.S. at 557) (alteration marks omitted).  To survive a Rule 12(b)(6) motion to dismiss, a

complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S.

at 556).  This facial plausibility standard "asks for more than a sheer possibility that a defendant

has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts

that are merely consistent with a defendant's liability, it stops short of the line between

possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 557)

(internal quotation marks omitted).  Although the allegations in the complaint must be taken as

true, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."

*Twombly*, 550 U.S. at 555 (internal quotation marks omitted); *see also Iqbal*, 129 S. Ct. at 1949

("the tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions").  "[W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged – but it has not

'shown' – 'that the pleader is entitled to relief.'"  *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ.

P. 8(a)(2)) (alteration marks omitted).

    The complaint fails to meet the foregoing standards and should be dismissed.

## ARGUMENT

**I.**    **JURISDICTIONAL AND PRUDENTIAL CONSIDERATIONS WARRANT DISMISSAL OF EVERY COUNT IN THE COMPLAINT**

    **A.**    **DEFENDANTS OFFICE OF THE ATTORNEY GENERAL AND D.C. TAXICAB COMMISSION ARE *NON SUI JURIS***

    Neither the original complaint nor the First Amended Complaint is a model of clarity

with respect to *who is being sued.*[5]  The Clerk, however, has identified the "Office of the

Attorney General for the District of Columbia" and the "D.C. Taxicab Commission" as among

---

[5] The caption of the complaint lists all movants herein as Defendants, though the body of the complaint (section "III, The Parties") discusses only the Commission as a Defendant, complaint at ¶ 15, while also referring to "Defendant Mayor Gray," *id.* at 32, and "Defendants," *id.* at 33.

the parties-defendant.  These parties are *non sui juris* – both are subordinate agencies or offices

of the Government of the District of Columbia, with no separate legal existence.  *See* D.C.

OFFICIAL CODE §50-304 (establishing the Commission "as a subordinate agency within the

executive branch of the District government").  *See generally* D.C. OFFICIAL CODE § 1-301.81, *et

seq.*  Accordingly, the complaint must be dismissed in its entirety as to these Defendants.  *Ali v.

District of Columbia Gov't.,* 2010 U.S. Dist. LEXIS 27580, *5 (D.D.C. 2010); *Zirkle v. District

of Columbia,* 830 A.2d 1250, 1253 n.1 (2003); *Foster v. United States,* 615 A.2d 213, 218

(1992); *Ray v. District of Columbia,* 535 A.2d 868, 869 n.2 (D.C. 1987).

## B.   THE CLAIMS AGAINST MAYOR GRAY AND CHAIRMAN LINTON ARE REDUNDANT OF THE CLAIMS AGAINST THE DISTRICT

Plaintiffs have sued Defendant Vincent C. Gray is in his official capacity as Mayor of the

District of Columbia and Defendant Ron Linton in his official capacity as Commissioner.[6]  The

claims against these two Defendants are *redundant* of those against Defendant District of

Columbia.  *See Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985) (recognizing that official

capacity suits "generally represent only another way of pleading an action against an entity of

which an officer is an agent") (internal citations omitted).  Allowing these claims to proceed is

wholly unnecessary and an inefficient use of judicial resources.  *See Trimble v. District of

Columbia,* 779 F.Supp.2d 54 (D.D.C. 2011) ( "[b]ased on the understanding that it is duplicative

to name both a government entity and the entity's employees in their official capacity, courts

routinely dismiss claims against the officials.")*; Holmes-Ramsey v. District of Columbia,* 747

F.Supp.2d 32, 41 (D.D.C. 2010).  Accordingly, the complaint should be dismissed in its entirety

as to these Defendants.

---

[6] *See* caption of First Amended Complaint.

## C.    ALL COUNTS OTHER THAN X AND XI FAIL BECAUSE PLAINTIFFS HAVE NO PRIVATE RIGHTS OF ACTION UNDER LOCAL LAW

With the possible exception of Counts X and XI – alleging constitutional claims (and either precluded or lacking in merit for other reasons, *see infra* discussions) – none of the counts in the complaint is supported by the existence of a private right of action.  The federal courts in this jurisdiction and the District of Columbia Court of Appeals have been notably unsympathetic to claims requiring a private right of action to support them.  The burden rests on Plaintiffs to establish that a private right of action exists with respect to each of their claims.

In *Samuels v. District of Columbia,* 770 F.2d 184, 194 (D.C. Cir. 1985), the Court said: "In order to establish an implied private right of action under a federal statute, a plaintiff bears a relatively heavy burden of demonstrating that Congress affirmatively or specifically contemplated private enforcement when it passed the relevant statute. "  The District of Columbia Court of Appeals has been equally demanding when confronted with claims of implied private rights of action .  "The [District of Columbia Court of Appeals] has been reluctant to find a private right of action in a statute that provides for public enforcement." *Dial A Car v. Transportation, Inc.,* 132 F.3rd 743, 744 (D.C. Cir. 1998).  As Judge Kollar Kotelly has written: "The D.C. Council knows how to create a private right of action when it wants to . . . ." *Baumann v. District of Columbia,* 744 F. Supp.2d 216, 227 (D.D.C. 2010).

Here, there is absolutely no indication that the Council wanted to create a private right of action in any of the acts it has passed regulating the taxicab business.   None of the D.C. statutes on which Plaintiffs rely contains either an express private right of action and or any of the indicia of an implied private right of action.  Nor are we aware of any legislative history in any of these acts from which an intent to create a private right of action could be inferred or implied.  These

are public statutes serving public purposes and not designed to confer private rights of action on

private persons.   To the extent Plaintiffs rely on regulations for their claims, they are even

farther afield because municipal regulations, standing alone, cannot create a private right of

action.  *Pittman v. Jones,* No. 01-7192, 2003 WL 179838, *1 (C.A.D.C. 2003) (D.C. Cir. Jan. 24,

2003).   This principle was established long ago for the District of Columbia by the D.C. Court

of Appeals in *Tynes v. Gogos,* 144 A.2d 412, 417 (D.C. 1958).  *Compare Alexander v. Sandoval,*

532 U.S. 275, 286-287 (2001), where the Supreme Court said:

> Like substantive federal law itself, private rights of action to enforce federal law
> must be created by Congress.  The judicial task is to interpret the statute Congress
> has passed to determine whether it displays an intent to create not just a private
> right but also a private remedy.   Statutory intent on this latter point is
> determinative.  Without it, a cause of action does not exist and courts may not
> create one, no matter how desirable that might be as a policy matter, or how
> compatible with the statute.
> ….
> Language in a regulation may invoke a private right of action that Congress
> through statutory text created, but it may not create a right that Congress has not.
> . . . Agencies may play the sorcerer's apprentice but not the sorcerer himself.

*Id.* at 291.  *See also Gonzaga Univ. v. Doe,* 526 U.S. 273, 280 (2002); *County of Westchester v.*

*New York,* 286 F.3rd 150, 152-153 (2d Cir. 2002) (granting broad powers to an agency "would

be inconsistent with implying a private right of action because private litigation tends to transfer

regulatory interpretation and discretion from the agency to the courts.").  So too here, private

litigation should not be permitted to transfer regulatory interpretation and discretion from the

Taxicab Commission, which is broadly empowered to enforce the taxicab legislation and

regulations, to the courts.  Plaintiffs cannot cite language in any of the D.C. statutes relating to

the Commission or the taxicab business in the District from which a private right of action can be

implied consistently with the Supreme Court and other federal cases on the point.  There is none.

Accordingly, all the counts resting on D.C. statutes or regulations – *i.e.* all counts other than Counts X and XI – must be dismissed for the lack of a private right of action alone, although, as argued throughout these papers, there are numerous other grounds for dismissal as well.

### D.   COUNT I FAILS BECAUSE PLAINTIFFS LACK ARTICLE III STANDING TO CHALLENGE THE MAYOR'S AUTHORITY

Count I is a laundry list of political complaints about the Mayor's alleged "unilateral" authority over the taxicab industry, reflected in a series of Mayor's Orders[7] in which he has progressively delegated his authority to the Commission or its Chairperson.  Though the claim is vague at best and does not show that the Mayor has asserted any power not given to him by law, *see infra* part II.A., Count I is academic because the Mayor's Orders delegate to the Commission the Mayor's authority to:

- Implement the time and distance meter system (Mayor's Order 2007-231);
- Review and adjust rates necessary for the implementation of the time and distance metered taxicab system (subject to certain limitations) (Mayor's Order 2009-104);
- Establish a fuel surcharge (Mayor's Order 2011-64); and
- [A]mend or increase taxi fare rates and charges (Mayor's Order 2011-116).

Accordingly, the Commission now wields the *combined* power given to it under the Act and *also* the Mayor's delegated powers, as stated in the Mayor's Orders.  Given this arrangement, there is no need for the Court to rule on the *legality* of the Mayor's authority.  Not surprisingly, Plaintiffs do not allege how, if at all, their members might be *harmed* in these circumstances.

Accordingly, Plaintiffs lack Article III standing to pursue Count I.  In effect, they are asking this Court to issue an advisory opinion that the Commission's authority derives from an unlawful

---

[7] *See* Mayor's Orders 2007-231, Mayor's Order 2009-104, Mayor's Order 2011-64, and  Mayor's Order 2011-116 (collectively "Mayor's Orders") (Exhibit 5).

scheme of direct and delegated power.  Respectfully, this Court is not empowered to do that.  *See Friends of the Earth, Inc. v. Laidlaw Env'l. Servs., Inc.,* 528 U.S. 167, 180-81 (2000) ("[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.").  *See also Hunt v. Washington State Apple Adver. Comm'n*, 432 US 333, 341-43 (1977) (An organization has standing to sue if it claims an injury to its members, further, claims to represent those members).

### E.   COUNTS I AND X ARE BARRED BY COLLATERAL ESTOPPEL, *RES JUDICATA,* AND *STARE DECISIS*

#### 1.   *Res judicata* and collateral estoppel bar Counts I and X

Counts I and X are barred by the doctrines of *res judicata* (or claim preclusion) and collateral estoppel (or issue preclusion).  *Res judicata* "bars repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits."  *U.S. v. Tohono O'Odham Nation,* __ S. Ct. __, 2011 WL 1543329 at *6 (April 26, 2011) (internal citations omitted) (quoting *Commissioner v. Sunnen,* 333 U.S. 591, 597 (1948)). A plaintiff may not file a new lawsuit involving the same claims or cause of action raised in a previous lawsuit between the same parties if there has been a final, valid judgment on the merits by a court of competent jurisdiction.  *Porter v. Shah,* 606 F.3d 809, 814 (D.C. Cir. 2010).

*Res judicata* and collateral estoppel preclude litigation in a subsequent lawsuit of matters that were or could have been raised in a previous action.  *Natural Resources Defense Council,*

*Inc. v. Thomas,* 838 F.2d 1224, 1252 (D.C. Cir. 1988). *Res judicata* goes further than collateral

estoppel, to bar relitigation not only of all matters *actually adjudicated* in the prior action, but

also all matters that might have been determined, *Tutt v. Doby*, 459 F.2d 1195, 1197

(D.C.Cir.1972)  Under *res judicata*, "the parties to a suit and their privies are bound by a final

judgment and may not re-litigate any ground for relief which they already have had an

opportunity to litigate *even if they chose not to exploit that opportunity* whether the initial

judgment was erroneous or not." *See Lewis v. DEA*, 777 F.Supp.2d 151, 161 (D.D.C. 2011)

(emphasis in original) (quoting *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981)).

Moreover, collateral estoppel extends to new *legal theories* based on the same facts that could

have been raised in the prior action. *Rodriguez v. Editor in Chief,* 285 Fed. Appx. 756, 760

(D.C. Cir. 2008) (citing *Hall v. Clinton,* 285 F.3d 74, 81 (D.C.Cir. 2002)).

 As explained above, this is the *third* lawsuit brought by the lead Plaintiff, D.C.

Professional Taxicab Drivers Association, raising some of the same issues presented here, and

therefore triggering the preclusive effects of claim and issue preclusion both as to that Plaintiff

and to the other Plaintiff, Dominion of Cab Drivers, its privy.

 In Count X, Plaintiffs makes a brazen effort to re-litigate the challenge to the

constitutionality of the "Non-Resident Acts" in *D.C. Professional Taxicab I* by changing the

*legal theory* for the claim from an alleged violation of the privileges and immunities clause and

of the 5th and 14th Amendments, to an allegation that the Acts violate the commerce clause and

the right to travel. *See* Complaint at 78-83; 153-56. But the material issue with respect to the

Acts has not changed: it is whether the Acts preclude non-resident taxicab owners from

operating their taxicabs in the District of Columbia, a question answered in the negative in the

earlier lawsuit.[8]  As the *D.C. Professional Taxicab I* court observed, "[t]he challenged statute may not permit non-resident taxicab owners to register their vehicles in the District of Columbia and obtain District of Columbia license plates, but it does not preclude them from obtaining the DCTC certificate necessary to operate their taxicabs in the District of Columbia." *Id.* at 7.  "The plaintiffs' claims are all based on a misstatement of the legal effect of the challenged statute. They have not met their heavy burden of establishing that the statute is unconstitutional, nor can any of their other challenges to the statute be sustained, given their faulty premise." *Id.* at 9. Since the issue of whether the Acts *disfavor* non-residents has already been *actually adjudicated* against the lead Plaintiff, Count X is barred by collateral estoppel.[9]  This preclusion extends to Plaintiff Dominion for the reasons stated above.  Finally, even if the issue presented is different in this case, Plaintiff certainly cannot claim it did not have a full and fair opportunity in *Taxicab II* to litigate *all* constitutional challenges to the Non-Resident Acts, regardless of their denomination.  *See* March 1, 2006 complaint and April 25, 2006 amended complaint in *D.C. Professional Taxicab I* (Exhibit 6).  Accordingly, Count X would also be barred by *res judicata.*

        In Count I, Plaintiffs allege that the Mayor – beginning with former Mayor Fenty in 2007 and continuing though the present – has exercised unlawful control over taxicab rates, starting with Mayor's Order 2007-231.  *See* Complaint at ¶¶ 16-32; 90-97.  Though Plaintiffs attempt to

---

[8] Plaintiffs' *instant* allegation that the Acts "establish a strict residency requirement for the issuance of vehicle registrations," Complaint at 154, belies Plaintiffs' continuing confusion about the material issue.  *See D.C. Professional Taxicab I* at 5 ("Although the plaintiffs attempt to frame their challenges to the statute under a variety of legal theories,[] all of their arguments are premised on the claim that the statutory requirement that only individuals who are domiciled in the District can register vehicles here (and therefore obtain D.C. license tags) prevents non-resident taxicab owners from conducting their businesses in the District."); 7 ("Notably, there is no mention of a DCTC certificate [permitting plaintiffs to drive their taxicabs in the District with out-of-state plates] in any of the plaintiffs' affidavits, nor do the affiants claim that they ever attempted to register the replacement taxicabs in their home jurisdictions and obtain DCTC certificates for them.").  There is no constitutional right to register a vehicle in a jurisdiction in which one does not reside.

[9] Plaintiff's effort to recast its prior challenge to the Acts is nothing more than a change in the legal theory of its case; this has no effect on collateral estoppel, which turns on the attempt to relitigate the *same facts*.

distinguish their prior lawsuit by mentioning more recent events and inaccurately describing their prior suit as having a "limited scope," *see* complaint at ¶ 23, the material issue has not changed: whether the Mayor may exercise control over taxicab rates, a questioned answered unequivocally in the affirmative in *D.C. Professional Taxicab II,* based, on a minimum,[10] on his authority in the 2005 District of Columbia Omnibus Authorization Act, Pub. L. No. 109-356, 120 Stat. 2019 ("Omnibus Act").   The sweep of *D.C. Professional Taxicab II* is in no way limited to mere authority to require the move to metered rates and Plaintiffs' discussion of subsequent Mayor's Orders does not change the basic, underlying issue – the Mayor's authority in this area.   *D.C. Professional Taxicab II,* at 21-22.   Since this issue has been *actually adjudicated* against the lead Plaintiff, Count I is barred by collateral estoppel.   This preclusion also extends to Plaintiff Dominion because it is in privity with the lead Plaintiff.   *Modiri v. 1324 Restaurant Group, Inc.*, 904 A.2d 391, 396 (D.C. 2006) ("A privy is one so identified in interest with a party to the former litigation that he or she represents precisely the same legal right in respect to the subject matter of the case.").   In addition, because the lead Plaintiff sought relief in the prior case based on a charge that the Mayor lacks authority to set taxicab rates, to the extent these issues were *not* decided in that case, Plaintiffs cannot deny that the lead Plaintiff had a full and fair opportunity in the prior lawsuit to do so.   *See* March 7, 2008 complaint in *D.C. Professional Taxicab II* (Exhibit 7).   Thus, they are barred by *res judicata.   See Lewis v. DEA*, 777 F.Supp.2d 151 (D.D.C. 2011).

---

[10] *See infra* discussion part II.A, in which we argue that, if the Court reaches the merits of Count I despite the decision in *D.C. Professional Taxicab II,* there are additional reasons why the Count fails.

### 2.   Alternatively, Counts I and X are barred by *stare decisis*

In the alternative, to the extent the Court limits the preclusive effects of *Taxicab I* and *Taxicab II* short of the extent urged herein, Defendants submit that these prior decisions should be afforded substantial weight in the Court's decision under the doctrine of *stare decisis.  U.S. v. Cardales-Luna,* 632 F.3d 731, 736 (1st Cir. 2011). ("We are thus drawn to an inescapable conclusion: although [the prior decision] has no *res judicata* effect here, we nonetheless are bound to follow it, under principles of *stare decisis,* insofar as the record now before us does no more than replicate the same facts that were before us in the previous appeal.").  The reasoning of those decisions applies with equal force to the allegations of the complaint here.  On that basis, Counts I and X should be dismissed for failure to state a claim, as they have no merit.

### F.   COUNTS II, III, V, AND XI ARE MOOT IN WHOLE OR IN PART

Several of Plaintiffs' claims should be dismissed because they are moot in whole or in part.  Federal Rule of Civil Procedure 12(b)(1) imposes on the Court "an affirmative obligation to insure that it is acting within the scope of its jurisdictional authority."  *Bender* v. *Jordan,* 515 F.Supp.2d 10, 16 (D.D.C. 2007) (quoting *Jones* v. *Ashcroft,* 321 F. Supp. 2d 1, 5 (D.D.C. 2004)).  The Constitution permits federal courts to decide only "actual, ongoing controversies."  *Id.* (quoting *Honig* v. *Doe,* 484 U.S. 305, 317 (1988)). "Even where the litigation posed a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."  *Id.* (quoting *Clarke* v. *United States,* 915 F.2d 699, 701 (D.C. Cir. 1990)) (internal quotation marks and citations

omitted).   A case is moot if a defendant can demonstrate the following:  (1) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation" and (2) "there is no reasonable expectation that the alleged wrong(s) will be repeated."  *Id.* (citing *Doe* v. *Harris,* 696 F.2d 109, 111 (D.C. Cir. 1982)).  "When both conditions are satisfied, the case is moot because neither party has a legally cognizable interest in the final determination of the underlying facts and law." *Id.* (citation omitted).

*First,* Count II in part and all of Count III challenge the propriety of Commissioner Inder Raj Pahwa's service on the Commission.  *See* Complaint at ¶¶ 105-106; 109-113.  Mr. Pahwa will no longer be serving on the Commission.[11]   Accordingly, Count II – to the extent it rests on Mr. Pahwa's service – and Count III in its entirety – are moot.  *Second,* in Count V, Plaintiffs challenge rate setting by the Commission, alleging there is a rate cap of $19 for rides within the District.  *See* Complaint at ¶ 123.  The rate cap was abolished effective October 21, 2011.[12]  This portion of Count V is therefore moot.  *Third,* Count XI alleges that traffic stops of taxicabs may be conducted "without probable cause or reasonable suspicion."  *See* Complaint at ¶ 160.  On September 29, 2011, DCTC issued General Order No. 1, Public Vehicle Enforcement Inspector Traffic Stop Protocol (Exhibit), which, among other things, establishes uniform policies for traffic stops and inspections; the former are now permitted only where reasonable suspicion exists to believe the driver is in violation of Title 31 of the DCMR.[13]

---

[11] Undersigned counsel represents to the Court that, as of November 18, 2011, Mr. Pahwa had informed the D.C. Office of Boards and Commissions that he will resign; the Office expects his resignation shortly.  Further, the Office has told him that if he fails to resign, he will be removed.

[12] *See* http://newsroom.dc.gov/show.aspx/agency/dctaxi/section/2/release/22654/year/2011 (accessed 11-18-11 at 4:25 p.m.).

[13] To the extent Plaintiffs are claiming the Fourth Amendment requires reasonable suspicion for *inspections,* they are simply incorrect and such a claim should be dismissed on the merits.  *Drive Trans Corp. v. New York City Taxi and Limousine Comm'n,* 513 N.Y.S.2d 920, 921 (N.Y. Supp. 1987) (approving use of random searches of taxicabs for administrative compliance and stating "[c]onsidering the need for the TLC to ensure that taxicabs comply with certain procedures there does not appear to be any constitutional prohibition against random searches of this nature.

**G.      COUNTS IV AND V ARE BARRED BY PLAINTIFFS' FAILURE TO EXHAUST THEIR ADMINISTRATIVE REMEDIES**

Public policy and prudential considerations strongly favor the dismissal of Counts IV and V for failure to exhaust administrative remedies.  It is a bedrock principle of administrative law "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51 (1938).  Exhaustion "applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course." *District of Columbia Metro. Police Dep't v. Fraternal Order of Police,* 997 A.2d 65, 81 (D.C. 2010).

In Count IV, Plaintiffs complain about the Commission's alleged failure to conduct a rate "study" by an outside analyst – *a requirement found nowhere in the law*[14] – and, in Count V, Plaintiffs complain about Defendants' alleged failure to set reasonable rates in compliance with the Act.  Even assuming Plaintiffs have a private right of action to sue under the Act to require the Commission to take the action they seek, nowhere in the complaint do they mention the pending proceedings before the Commission that will both secure the taxicab rate *review* required by the Act,  D.C. Official Code § 50-317, and consider a rate increase.  The Commission will be holding a "Public Hearing on Rate Increase" on November 29, 2011, for the purpose of "elicit[ing] factual information concerning the rate increase that will allow the Taxicab Commission to arrive at an evidentiary decision…" based on "presentations from both

---

Thus random stops by TLC inspectors to check the driver's vehicle credentials are constitutionally valid."). *See also U.S. v. Biswell,* 406 U.S. 311, 315 (1972) ("In the context of a regulatory inspection system of business premises that is carefully limited in time, place, and scope, the legality of the search depends not on consent but on the authority of a valid statute.").

[14] As explained in part II.C. *infra,* the Act does not require a rate "study" of any kind, merely a biennial "review of the taxicab rate structure."  D.C. OFFICIAL CODE § 50-317.

proponents and opponents or other views of the rate increase."[15] The third speaker listed as speaking in favor of a rate increase is Mr. Nathan Price, a representative of the lead Plaintiff in this case.  *See id.*  For these reasons, the Court should not consider Counts IV or V in light of the pending administrative process; these counts should be dismissed.

## II.    IN THE ALTERNATIVE, COUNTS I AND X FAIL TO STATE A CLAIM

### A.    COUNT I FAILS BECAUSE THE MAYOR HAS NOT EXERCISED UNLAWFUL CONTROL OVER THE COMMISSION

Count I is a vague and meritless attack on the Mayor's authority to regulate taxicab rates in the District that states no claim and is really little more than  a series of political jabs at the Mayor that do not belong in a court of law.  *See* complaint at ¶¶ 22-32, 91-96.  While it is not altogether clear exactly what Plaintiffs believe the Mayor has done that is *unlawful* – as opposed to "arbitrary," "wholly inadequate," and "unfair," *see id.* – two things *are* clear:  (1) the Mayor has rate-setting authority over the D.C. taxicab industry, and (2) as a result of the series of Mayor's Orders beginning in 2007 attacked by Plaintiffs, the Mayor has progressively and lawfully delegated his rate-setting authority to the Commission, making any challenge to his authority academic.  Accordingly, Count I is both legally wrong, utterly beside the point, and self-defeating jurisdictionally.

*First,* the Mayor has at least three sources of authority to regulate taxicab rates and charges in the District of Columbia.  On October 16, 2006, Congress directed the District of Columbia to implement a metered system for all taxicabs.  *See* § 105, 2005 District of Columbia

---

[15] *See* http://newsroom.dc.gov/show.aspx/agency/dctaxi/section/2/release/22693 (accessed at 7:23 p.m. on Nov. 20, 2011).

Omnibus Authorization Act ("Omnibus Act"), 120 Stat. 2023, D.C. OFFICIAL CODE § 50-381(a)

(2007 Supp.).

> [N]ot later than 1 year after October 16, 2006, the District of Columbia shall require all taxicabs licensed in the District of Columbia to charge fares by a metered system.
>
> [T]he Mayor of the District of Columbia may exempt the District of Columbia from the requirement under subsection (a) of this section by issuing an executive order that specifically states that the District of Columbia opts out of the requirement to implement a metered fare system for taxicabs.

D.C. OFFICIAL CODE § 50-381.

Local law establishes the DCTC with "exclusive authority for intrastate regulation of the

taxicab industry," D.C. OFFICIAL CODE § 50-304, and gives its Panel on Rates and Rules

"original jurisdiction" to "[e]stablish methodologies for the determination of reasonable fares"

and to "authorize a metered system for determining taxicab fares" subject to Council review, *id*.

§ 50-307(b)(1)(B). Nothing in this language precludes the Mayor from taking the actions

attacked by Plaintiffs in Count I, including issuing any of the Mayor's Orders mentioned therein.

*See* complaint at ¶¶ 22-32, 91-96.

### 1. The Mayor's authority under the DCTC Establishment Act

The Mayor is expressly authorized, under the DCTC Establishment Act to "issue any

reasonable rule relating to the supervision of passenger vehicles for hire he or she considers

necessary for the protection of the public." *Id*. at § 50-313(a). Further, "[n]o person . . . shall

operate a passenger vehicle for hire in the District without first . . . meeting all requirements as

mandated by the Mayor." *Id*. § 50-313(c).[16] That authority—alone—defeats Plaintiffs' claim.

This statutory language is broad enough to give the Mayor considerable discretion in acting to

---

[16] A "taxi or taxicab" is specifically defined as a passenger vehicle for hire carrying eight or fewer passengers. *Id*. at §§ 50-303(6), (8).

protect the public, even without the express command of Congress discussed in greater detail below.

It is well-established that in interpreting a statute, all parts should be harmonized, if possible, to implement the policy and intent of the legislature. 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46.05 at 169 (6TH ed. 2000).

The Mayor's interpretation of his authority under the Act is eminently reasonable, and is due considerable deference.  The Court should defer to the Mayor's interpretation of the Act unless that interpretation is "unreasonable in light of prevailing law, inconsistent with the statute as a whole, or plainly erroneous." *Orius Telecommunications, Inc. v. District of Columbia Dept. of Employment Svcs.*, 857 A.2d 1061, 1065 (D.C. 2004) (citations omitted). *See also Hughes v. District of Columbia Dep't of Employment Servs.*, 498 A.2d 567, 570 (D.C. 1985) ("Particularly where there is broad delegation of authority [including rulemaking], we must give deference to a reasonable construction of the regulatory statute").

"When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration." *Bausch v. District of Columbia Police & Firefighters' Retirement and Relief Bd.*, 926 A.2d 125, 129 (D.C. 2007) (quoting *Udall v. Tallman*, 380 U.S. 1, 16 (1965)). Indeed, "the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." *Spring Valley v. Wesley Heights Citizens Ass'n v. District of Columbia Bd. of Zoning Adjustment*, 644 A.2d 434, 436 (D.C. 1994).

Plaintiffs cannot demonstrate the "compelling indications" necessary to overcome the great deference due to the Mayor's interpretation of the Act that would allow him to issue the

Mayor's Orders attacked in Count I and assert lawful and appropriate control over taxicab rates and charges.

### 2.      The Mayor's inherent authority as Chief Executive

Even if the Mayor had *not* been granted broad powers under the Act, his inherent authority is sufficient to justify his actions here.  The Mayor, under § 422 of the Home Rule Act, is vested with the "executive power of the District." D.C. OFFICIAL CODE § 1-204.22 (2006). "The Mayor shall be responsible for the proper execution of all laws relating to the District . . . ." *Id*.  The Mayor's power to delegate this responsibility to the Chairman of the DCTC is based on § 422(4) and (6) of the Home Rule Act:

> The Mayor shall, through the heads of administrative boards, offices, and agencies, supervise and direct the activities of such boards, offices, and agencies.
> * * *
> The Mayor may delegate any of his functions . . . to any officer, employee, or agency of the executive office of the Mayor . . .

D.C. Official Code § 1-204.22(4), (6).

Moreover, the DCTC is *not* an independent agency, but is statutorily defined as a "subordinate agency within the executive branch," *i.e.*, under the control of the Mayor. D.C. OFFICIAL CODE § 50-304.

The term "subordinate agency" is defined in the DCAPA as:

> any officer, employee, office, department, division, board, commission, or other agency of the government of the District, other than an independent agency or the Mayor or the Council, required by law or by the Mayor or the Council to administer any law or any rule adopted under the authority of a law.

D.C. OFFICIAL CODE § 2-502(4) (2006 Repl.).  In contrast, an "independent agency" is one "with respect to which the Mayor and Council are not authorized by law . . . to establish administrative procedures." *Id*. at § 2-502(5). Thus, a "subordinate agency" is one over which the Mayor has

"authority to control daily operations or to determine or implement [agency] policy . . . ." *Hazel v. Barry*, 580 A.2d 110, 111 (D.C. 1990).[17]

Further, the Mayor is authorized to delegate his rulemaking authority to any officer or agency of the executive branch, including the Chairman of the DCTC.[18]  *Cf. Hughes*, 498 A.2d at 570 (Council's broad grant of power to the Mayor by the Worker's Compensation Act ("including rulemaking") was appropriately delegated to the Director of DOES, pursuant to the Home Rule Act).  Because the Mayor has the inherent power to issue rules to carry out his express statutory powers, he may, under Mayor's Order No. 2007-231, and the other, more recent Mayor's Orders challenged by Plaintiffs, take appropriate steps to exercise his rate-setting authority.  The Mayor's Order is thus lawful.

### 3.      The Mayor's authority under the Omnibus Act

Congress maintains plenary power over the District. Article I, section 8, clause 17 of the Constitution empowers Congress to exercise exclusive legislative authority over the District of Columbia. *See, e.g., Bliley v. Kelly*, 306 U.S. App. D.C. 199, 23 F.3d 507, 508 (D.C. Cir. 1994); *Atkinson v. D.C. Bd. of Elections & Ethics*, 597 A.2d 863, 867 (D.C. 1991).  Further, Section 105(a) of the Omnibus Act provides that "not later than 1 year after the date of enactment October 16, 2006, the District of Columbia shall require all taxicabs licensed in the District of Columbia to charge fares by a metered system." D.C. OFFICIAL CODE § 50-381(a).  The

---

[17] In *Hazel*, members of the board of trustees of the D.C. Public Library, a "statutory independent agency," challenged the Mayor's reduction of that agency's budget, despite the "mandate" of both the Congress (through an appropriations act) and the Council that budget reductions were only to be made to "agencies under the control of the Mayor . . . ." *Id*.  The D.C. Court of Appeals rejected that argument, finding that the law that established the Library "does not purport to be the sole source of authority for defining the relationship between the Mayor and the Library Board," and that the Mayor's independent budget power over the Executive Branch was sufficient to defeat the claim.  *Id*. at 114.

[18] The DCAPA defines "rulemaking" as the "*Mayor's* or agency's process for the formulation, amendment, or repeal of a rule." D.C. OFFICIAL CODE § 2-502(7) (emphasis added).

provision is mandatory, as is clear from the language "shall require." Although § 105(b) of that Act gave the Mayor the power to opt-out, his determination not to exercise this option leaves § 105(a) in full force. The mandate is directed *exclusively* to the Mayor. The Mayor's power to implement this mandate must also be inferred from the fact that Congress gave only the Mayor the power to exempt the District of Columbia from this requirement.

While there does not appear to be any legislative history for *this* Omnibus Act's taximeter provisions, the issue has been the subject of discussion on Capitol Hill for many years. *See, e.g.*, 147 Cong. Rec. S11532–11533 (Nov. 7, 2001).  Congress, after years of frustration and delay,[19] has required the Mayor to authorize a metered system. If the Mayor had chosen to do nothing in response to the Omnibus Act, the District would still have had to adopt such a system, but because the Act *specifically vests power* in the Mayor to make the determination, and the Act is silent as to a definition of "metered system," the Mayor has reasonable discretion to choose among the available metered systems.

The cited provisions of the DCTC Establishment Act must be read consistently with the Omnibus Act's congressional mandate. Moreover, in case of a conflict between local law and an Act of Congress, the Act of Congress prevails. Section 601 of the Home Rule Act provides:

> Notwithstanding any other provision of this Act, the Congress of the United States reserves the right, at any time, to exercise its constitutional authority as legislature for the District, by enacting legislation for the District on any subject, whether within or without the scope of legislative power granted to the Council by this Act, including legislation to amend or repeal any law in force in the District prior to or after enactment of this Act and *any act passed by the Council*.

D.C. OFFICIAL CODE § 1-206.01 (2006) (emphasis added).  Reading local law and the Omnibus Act in harmony, the Mayor is authorized and indeed was required by § 422(6) of the Home Rule Ac, D.C. Official Code § 1-204.22(6) (2006), to implement § 105 of the Omnibus Act initially

---

[19] Defendant has additional materials on this point as well and will provide them if directed by the Court.

by establishing a metered rate system through delegation of his rulemaking authority to the Chairman of the Commission, and continuing to do so through subsequent delegations of his authority which, as of this time, give the Chairperson"the [Mayor's] authority to amend or increase taxi fare rates and charges."  Mayor's Order 2011-116.  For all these reasons, Plaintiffs' claim that the Mayor lacks authority to set rates and charges for the D.C. taxicab industry is without merit.

### B.      COUNT II FAILS BECAUSE THE COMPOSITION OF THE TAXICAB COMMISSION DOES NOT VIOLATE THE ACT

Plaintiffs' Count two alleges that the Taxicab Commission's "Lack of Industry representation" violates the D.C. Taxicab Commission Establishment Act.  Complaint at 21.  Plaintiffs' own statement of its claim shows that it has no claim on this count.  They cite the DCTC Establishment Act as requiring the Commission to have three industry representatives with "experience in taxicab operations in the District."  Complaint at ¶ 99.   They then cite D.C. Code § 50-303(12) as defining the taxicab industry to include those who are "*directly involved* in the provision of taxicab services in the District."  Complaint at ¶ 100 (emphasis in original).

Having correctly quoted the two statutes, Plaintiffs then engage in the *non sequitur* of alleging that *none* of the current DCTC commissioners is "directly involved in the provision of taxicab services in the District."  Complaint at ¶ 101.  But, as their own quotation of the relevant statutes shows, the requirement is that three Commissioners must have "experience with taxicab operations in the District," not that they be "directly involved in the provision of taxicab services in the District."  Plaintiffs have mixed up the two statutes and cited the wrong one as the basis of their claim.  The complaint goes on to allege that "Commissioner Cohn is a restaurateur" and "Commissioner Lasner is a hotel executive."  Complaint at ¶¶ 103-104.  Restaurateurs and hotel

executives may or may not be "directly involved in the provision of taxicab services in the

District."  But it is no stretch to say that they qualify as Commissioners because they

have "experience in taxicab operations in  the District," which is what the statute actually

requires.   Every restaurant and hotel in the District interacts with taxicab business because many

of their customers rely on taxicabs for transportation.  Restaurant and hotel operators therefore

have familiarity and experience with taxicab operations because they must in order to serve their

own customers.  For these reasons, Plaintiffs have shown that the opposite of their claim is

correct, and thereby have pled themselves out of Court on this count.

### C.      COUNT IV FAILS BECAUSE THE COMMISSION IS NOT OBLIGATED TO CONDUCT A RATE "STUDY"

Plaintiffs allege that the Commission has failed to conduct a proper rate study, in

violation of 50 D.C. Official Code § 317.  But the cited section does not require a rate "study" of

the sort described by plaintiffs.  At most, it requires "a review of the taxicab rate structure though

the holding of a public hearing."  D.C. OFFICIAL CODE § 50-317.  Plaintiffs' allegation that

because "[w]hen completing prior rates studies, the Commission has traditionally [done

something different], *i.e.* "sought independent expert analysts to study taxi-rates and make

recommendations," the current Commission is obligated to do the same thing finds no support in

the Act.  How prior Commissioners may have exercised their discretion to "review" taxicab rates

in no way limits the current Commissioners, since the *how* they carry out their lawful duties is a

matter of discretionary decision-making beyond the jurisdiction of this Honorable Court.  *See*

*infra* part II.D.

**D.     COUNTS V, VII, AND IX FAIL BECAUSE THEY ATTACK DISCRETIONARY DECISIONS PROTECTED BY SOVEREIGN IMMUNITY OR ENTITLED TO DEFERENCE BY THE COURT**

In Count V, Plaintiffs challenge the Defendants' decisions to set rates which *they* believe are too low.  In Count VII, Plaintiff challenge the handling of the District of Columbia Taxicab Commission Fund, established by D.C. Official Code § 50-320.  Finally, in Count IX, Plaintiffs challenge the decisions made several years ago to abandon paper licensing in favor of a registration number,[20] and, more recently, to impose limited moratoria on new licenses (in November 2010).  All of these decisions are immune from suit under District of Columbia law because they are discretionary.  As the D.C. Court of Appeals has explained,

> [D]iscretionary activity is shielded by sovereign immunity.  Discretionary functions are governmental actions and decisions that are based upon considerations of public policy and require an element of judgment or choice.  If any statute, regulation, or policy specifically prescribes a course of action for [the decision-maker] to follow, then no discretion is involved because [the decision-maker] had no rightful option but to adhere to the directive.  In the absence of a prescribed code of conduct, however, [the Government's] decisions are discretionary if they involve political, social, or economic choices.

*Washington Metro. Area Transit Auth. v. Barksdale-Showell,* 965 A.2d 16, 20-21 (D.C. 2009) (citations and internal quotations omitted).  When presented with a challenge to an official decision or act, the Court must make a threshold determination of whether the decision or act was discretionary or ministerial.  *Aguehounde v. District of Columbia,* 666 A.2d 443, 447 (D.C.1995) ("While characterizing an act as discretionary or ministerial is not always an easy task, discretionary acts are generally defined as those acts involving the formulation of policy while ministerial acts are defined as those relating to the execution of policy.  [B]arring

---

[20] Plaintiff challenges this decision made "within the last decade."  Even if the decision were not immune and not otherwise entitled to deference by the Court, as explained in the text, any equitable relief on this claim would be barred by laches.

suit for such actions … prevents judicial second-guessing of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort.")  (citations and internal quotations omitted).  "Whether a function is discretionary or ministerial is a question going to the subject matter jurisdiction of the trial court."  *Id.*

There is no question that the decisions to set rates at a particular level, to "review" taxicab rates in the manner *actually* required by the law (as opposed to what Plaintiffs have told the Court), and to move from paper licensing to the use of registration numbers and to place limited moratoria on new taxicab licenses[21] require government officials to balance competing political, social, and economic considerations.  Further, there is no statute, regulation, or policy specifically prescribing any course of action to be followed in connection in making these decisions (and Plaintiffs do not suggest otherwise).  They are completely within the discretionary authority of the Commission (originally, or as delegated from the Mayor).  *See* D.C. Official Code § 50-307(a)-(b).  Accordingly, Counts V and IX fail on the basis of discretionary function immunity.[22]

Alternatively, even if the Court finds that one or both of the decisions challenged in Counts V, VII, and IX is ministerial and therefore not protected by immunity, the Court should still find that the Commission is entitled to substantial deference in the interpretation of the statutes and regulations pursuant to which it made these decisions.  To the extent Plaintiffs' claim is that the Act does not authorize these decisions, they cannot overcome this deference by *post hoc* arguments attempting to show that the decisions were not based on a correct reading of the Act or the regulations, as it clearly established that the agency is entitled to deference in the

---

[21] The moratoria do not preclude existing taxicab companies from adding vehicles to their fleets.

[22] This immunity may be described as municipal immunity for governmental functions, sovereign immunity for discretionary functions, and similar names.

interpretation of the statute that it administers, and even greater weight in the interpretation of any regulations appertaining thereto.  *See Kuri Bros., Inc. v. District of Columbia Bd. of Zoning Adj.*, 891 A.2d 241, 245 (D.C. 2006) ("we accord weight to the agency's construction of the statute which it administers"); *Archer v. District of Columbia Dep't of Human Resources,* 375 A.2d 523, 526 (D.C. 1977) ("[i]t is the duty of the agency to administer the legislation and to apply its provisions according to its best lights.").  *See also Mallof v. D.C. Bd. of Elections & Ethics,* 1 A.3d 383, 392 (D.C. 2010) ("even where the petitioner advances a more plausible reading of the regulations than that offered by the agency, it is the agency's choice that receives substantial deference.").

Thus, Counts V, VII, and IX should be dismissed on the basis of discretionary function immunity or the deference due to the Commission or the Mayor (and delegated officials).

**E.     ALTERNATIVELY, COUNT VII FAILS BECAUSE PLAINTIFFS HAVE PLED NO ACTIONABLE CLAIM CONCERNING THE DCTC FUND**

Count VII fails to state a claim under the Supreme Court's holding in *Iqbal.  First,* Count VII alleges no more than the *conclusions* that there have been "irregularities" and "misappropriation" with respect to the District of Columbia Taxicab Commission Fund, or "driver's assessment fund" ("Fund"), but no *facts* to show that D.C. Official Code § 50-320, creating the fund, has been violated.  *See* complaint at ¶¶ 42-49; 135-39.  *First,* Plaintiffs do not understand the workings of this fund.  A driver pays $100 on renewal of a license, which goes to the Chief Financial Officer of the District, not to the Taxicab Commission.  The Council of the District of Columbia decides how it shall be spent.  The Commission has no control over the assessment fund.  *Second,* Plaintiffs' conclusory allegations of wrongdoing pass muster under *Iqbal.*  "[A] complaint [does not] suffice if it tenders naked assertions devoid of further factual

enhancement." 129 S. Ct. at 1949. The facial plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Count VII fails to meet this low standard. *Third,* Plaintiffs have not even suggested how *their members* have been harmed in connection with the handling of the Fund. *See* complaint at ¶¶ 42-49; 135-39. Thus, *no one* has *standing* to raise the generalized complaints asserted by Plaintiffs in Count VII. *See Friends of the Earth, Inc. v. Laidlaw Env'l. Servs., Inc.,* 528 U.S. 167, 180-81 (2000) (discussing need for injury-in-fact component of Art. III standing). *Fourth,* Plaintiffs' contention that the Act *requires* the Fund to be used to "conduct[] fair and independent rate studies" – a requirement which itself exists nowhere in the law – is not even mention in the portion of the Act cited by Plaintiffs. *See* complaint at ¶ 136 (citing D.C. Official Code § 50-320(b) ("(b) The Fund shall be used to pay the costs of the Commission, including the costs of operating and administering programs, investigations, proceedings, and inspections, and any costs including any costs for improving the District's taxicab fleet."). Accordingly, Count VII fails to state a claim

## F.     COUNT X FAILS BECAUSE THE NON RESIDENT ACTS DO NOT VIOLATE THE COMMERCE CLAUSE OR THE RIGHT TO TRAVEL

As noted above, Plaintiffs have done no more than change their *legal theory* about why the Non-Resident Acts are unconstitutional, this time alleging that "[t]he … Acts violate the commerce clause of the U.S. Constitution and non-residents' constitutional right to travel. *See* U.S. Const., Art. I, Sec. 8, Cl. 3; Amds. V, XIV." Complaint at ¶ 155. As explained, the Non-Resident Acts do not actually *affect* non-resident taxi drivers' ability to operate taxicabs in D.C. But, even if they did have some effect on non-resident drivers, the Acts would still not violate the Commerce Clause or the right to travel. State statutes that overtly *discriminate* against interstate commerce are presumptively unconstitutional. *City of Philadelphia v. New Jersey* 437

U.S. 617 (1978); *Hunt v. Washington State Apple Advertising Comm.*, 432 U.S. 333 (1977).

Such cases typically involve statutes that involve state protectionism, such as price-setting and

capitalization requirements.  *See, e.g.*, *Baldwin v. G.A.F. Seelig, Inc.*, 294 U.S. 511 (1935)

(finding New York's imposition of minimum prices established an economic barrier against

competition from other states); *Crutcher v. Kentucky*, 141 U.S. 47 (holding unconstitutional

Kentucky's law requiring companies not incorporated in Kentucky to prove a minimum amount

of capitalization).  But when a law is "directed to legitimate local concerns, with effects upon

interstate commerce that are only incidental," *United Haulers Ass'n v. Oneida-Herkimer Solid*

*Waste Management* Authority, 550 U.S. 330, 346 (2007), that is, "where other legislative

objectives are credibly advanced and there is no patent discrimination against interstate trade, the

Supreme Court has adopted a flexible approach, the general contours of which were outlined

in *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)," *City of Philadelphia v. New Jersey*,

437 U.S. at 624.  Here, although Plaintiffs use the word "protectionism," Compliant at ¶ 81, they

fail to plead facts to support the threshold issue – whether there is any discrimination; they

simply do not allege that *non-resident drivers earn less or cannot compete fairly with District*

*drivers as a result of the Acts.*[23]  In any event, the Acts serve legitimate Government interests in

policing vehicles from without the District that are improperly being operated as taxicabs.

Therefore, the Non-Resident Acts do not violate the Commerce Clause.

The Acts also do not violate the right to travel.  A law implicates the right to travel when

it actually deters travel, when impeding travel is its primary objective, or when it uses a

classification that penalizes the exercise of the right.  *Attorney General of N.Y. v. Soto-Lopez*,

476 U.S. 898, 903 (1986); *Kansas v. United States*, 16 F.3d 436, 441 (D.C. Cir. 1994).  The Acts

---

[23] For this reason, the allegations in Count X do not even meet the pleading requirements of. *Iqbal* – that a pleading offer more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  129 S. Ct. at 1949.

do none of these things.  Travel through or into the District is not deterred, in that any U.S.

citizen may legally operate a taxicab in the District, as discussed *infra*.  Nor were the restrictions

*designed* to impede travel; their purpose is to eliminate the problems caused by allowing non-

residents to display *District of Columbia* tags on their vehicles.  *Taxicab II* at 7-8.  Finally, there

is no classification in the Acts other than a bona fide residency requirement that appropriately

limits *vehicle registration – not taxicab operation* – to District of Columbia residents.

> A bona fide residence requirement, appropriately defined and uniformly applied,
> furthers the substantial state interest in assuring that services provided for its
> residents are enjoyed only by residents. Such a requirement . . . [generally] does
> not burden or penalize the constitutional right of interstate travel, for any person is
> free to move to a State and to establish residence there.

*Soto-Lopez*, 476 U.S. at 903 n.3. *Id*. (alteration in original).  Here, the Act's requirement that

only *District* residents may register their vehicles in the District easily fits this test, since it

serves substantial public safety and enforcement interests.  It is a *bona fide* residence

requirement.  Consequently, the right to travel of non-resident taxicab drivers is not infringed by

the Acts.

### G.     A NUMBER OF COUNTS ARE BARRED BY THE STATUTE OF LIMITATIONS AND LACHES

The applicable statute of limitations on any damage or monetary claims by Plaintiffs is

three years under D.C. Official Code § 12-301.  Laches is, of course, an equitable doctrine

barring equitable claims because of undue delay in bringing them.  *See, e.g., Curtis v. Gordon*,

980 A.2d 1238, 1247 (D.C. 2009).  The factual allegations in the complaint date to at least 2007,

more than three years before the complaint was filed.  Complaint at ¶ 18.  Many of the counts

attack the administration of the meter system for taxicabs, which, it is alleged, was complete in

implementation "by June 2008."  *See* complaint at ¶¶ 21, 22, 78, 122, 132, 142, 143, 164.  The

original complaint was filed in Superior Court on September 20, 2011, more than three years after many of the actions complained of.  The fact that Plaintiffs were well aware of the gravamen of this case prior to the limitations period is further shown by the filing of their earlier complaints; *D.C. Professional Taxicab I* was filed May 1, 2006, and *D.C. Professional Taxicab II,* was filed March 7, 2008.  In light of these earlier cases, there can be no doubt Plaintiffs were on notice of their claims long before they filed suit in this case on September 20, 2011.  Both the statute of limitations and laches should bar their present case.

## III.    COUNTS VI AND XII ARE NOT CAUSES OF ACTION

Counts VI and XII are not causes of action, but prayers for relief.  Count XII is a request for declaratory relief that more appropriately belongs among the *ad damnum* clauses on pages 32-34 of the complaint.

In Count VI, Plaintiffs allege they are entitled to preliminary relief requiring implementation by the Commission of an "interim rate adjustment consistent with the WMATC taxicab fare rates during the pendency of the rate study" – a proposition fraught with misunderstanding of the law.  *First,* Count VI is not a motion for preliminary injunction, which required to obtain such relief in this Court.  LCvR 65.1 ("An application for a preliminary injunction shall be made in a document separate from the complaint.").  *Second,* Plaintiffs have failed to allege or argue the *heightened* requirements for a *mandatory* preliminary injunction, applicable when seeking an Order *compelling* a party to take action.  *Veitch v. Danzig,* 135 F.Supp.2d 32, 35 (D.D.C. 2001) (plaintiff must show "extreme or very serious damage" or "clearly entitled to immediate relief").  *Third,* Plaintiffs have admitted the obvious:  that the crux of their request is an alleged threat to them of "economic" harm, *see* complaint at ¶ 131, which is

insufficient to justify the issuance of a preliminary injunction.  *See generally Sampson v. Murray,* 415 U.S. 61 (1974).  Plaintiffs also allege, without explaining, that they are threatened with "physical" harm.  Since there is no factual basis whatsoever for this *conclusory* allegation, it must be rejected under *Iqbal,* 129 S. Ct. at 1949 ("a complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement.").  *Fourth,* Plaintiffs have not explained how the Court could ever have jurisdiction to order Defendants to *implement a particular taxicab rate* – a request that would most definitely invade the province of the Executive Branch in carrying out a discretionary Governmental function.  *See supra* part II.D.  Accordingly, to the extent Count VI is a cognizable request for a preliminary injunction, that request should be denied.

## CONCLUSION

Plaintiffs have pled numerous claims against the District, all of which are barred on prudential and jurisdictional grounds, and most of which otherwise fail on the merits.  This is Plaintiffs' second attempt to re-litigate issues decided against Plaintiffs in prior litigation.[24]  The crux of the complaint – a desire for changes in the way the Commission operates and makes decisions, *see* complaint at ¶¶ 22-32, 91-96 (referring to fare structure as "arbitrary," gas surcharge as "wholly inadequate," and use of Mayoral authority as "exacerbate[ing] the problems" and "unfair") – is an improper challenge to matters wholly committed to the Executive Branch.  These issues cannot be resolved through a lawsuit, particularly one raised by the voluntary participants in a heavily-regulated industry.  *See, e.g., Statharos v. New York City*

---

[24] Although Plaintiffs do not expressly seek damages, to the extent the Court may read Plaintiffs' *ad damnum* clauses are requesting such relief, Plaintiffs would be required to comply with D.C. Official Code § 12-309, requiring notice to the Mayor of the District of Columbia within six months after the injury or damage was sustained, of the approximate time, place, cause, and circumstances of the injury or damage.  There is no indication in the complaint that such notice was provided.

*Taxi & Limousine Comm'n,* 198 F.3d 317 (2nd Cir. 1999); *Buliga v. New York City Taxi Limousine Comm'n,* 2007 WL 4547738 (S.D.N.Y. Dec. 21, 2007); *Drive Trans. Corp. v. New York City Taxi & Limousine Comm'n,* 513 N.Y.S.2d 920 (N.Y. 1987); *Everett Town Taxi, Inc. v. Board of Aldermen of Everett,* 320 N.E.2d 896 (Mass. 1974).

      For all the foregoing reasons, the complaint fails under Rules 12(b)(1) and 12(b)(6) and should be dismissed.

Respectfully submitted,

IRVIN B. NATHAN
Attorney General for the District of Columbia

ELLEN EFROS
Deputy Attorney General
Public Interest Division

/s/ *Grace Graham*_____
GRACE GRAHAM, D.C. Bar No. 472878
Chief, Equity Section
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
Direct Dial: (202) 442-9784
Receptionist: (202) 727-6295
Facsimile: (202) 741-8892
Email: grace.graham@dc.gov

/s/ *Daniel A. Rezneck*_____
DANIEL A. REZNECK, D.C. Bar No. 31625
Senior Assistant Attorney General
441 Fourth Street, N.W., Suite 600S
Washington, D.C. 20001
Direct Dial: (202) 724-5691
Fax: (202) 727-3625
Email: daniel.rezneck@dc.gov

/s/ *Jacques P. Lerner*
JACQUES P. LERNER, D.C. Bar No. 440998
Assistant Attorney General
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C.  20001
Direct Dial:  (202) 724-1342
Receptionist:  (202) 727-6295
Facsimile:  (202) 741-5908
Email: jacques.lerner@dc.gov

**NOVEMBER 22, 2011**          **COUNSEL FOR DEFENDANTS**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

D.C. PROFESSIONAL TAXICAB DRIVERS
ASSOCIATION, *et al.,*

           Plaintiffs,

     v.                                  Civil Action No. 11-1802 (BAH)

DISTRICT OF COLUMBIA, *et al.,*

           Defendants.

**ORDER**

      Upon consideration of the Motion to Dismiss the First Amended Complaint, filed by

Defendants District of Columbia, Vincent C. Gray, Mayor, Office of the Attorney General for

the District of Columbia, Ron Linton, and D.C. Taxicab Commission, the memorandum of points

and authorities in support thereof, any opposition thereto, and the entire record in this case, it is,

this _____ day of _____, 20___, for the reasons stated by Defendants in their papers,

      **ORDERED** that the motion is hereby **GRANTED**; and it is

      **FURTHER ORDERED** that the First Amended Complaint is hereby **DISMISSED**

**WITH PREJUDICE.**

_____
UNITED STATES DISTRICT JUDGE