# Exhibit 1

# Index to Defendants' Motion to Dismiss

(Not including arguments in sections I.A, I.B, and II.G)

| Count | Plaintiffs' claim | Basis for dismissal | Section(s) of Defendants' brief |
|---|---|---|---|
| I | Mayoral control | Plaintiffs have no private rights under action of local law | I.C |
| | | Plaintiffs lack Article III standing to challenge the Mayor's authority | I.D |
| | | Collateral estoppel, *res judicata,* and *stare decisis* | I.E |
| | | The Mayor has not exercised unlawful control over the commission | II.A |
| II | Industry representation on Commission | Plaintiffs have no private rights of action under local law | I.C |
| | | Moot in whole or in part | I.F |
| | | The composition of the Taxicab Commission does not violate the Act | II.B |
| III | Eligibility of commissioner | Plaintiffs have no private rights of action under local law | I.C |
| | | Moot in whole or in part | I.F |
| IV | Rate "study" | Plaintiffs have no private rights of action under local law | I.C |
| | | Plaintiffs failed to exhaust their administrative remedies | I.G |
| | | The Commission is not obligated to conduct a rate "study" | II.C |
| V | Rate-making | Plaintiffs have no private rights under action of local law | I.C |
| | | Moot in whole or in part | I.F |
| | | Plaintiff's failure to exhaust their administrative remedies | I.G |
| | | Attack discretionary decisions protected by sovereign immunity or entitled to deference by the Court | II.D |
| VI | Preliminary injunction | Not a cause of action | III |

| Count | Plaintiffs' claim | Basis for Dismissal | Section(s) of Defendants' Brief |
|---|---|---|---|
| VII | Drivers' fund | Plaintiffs have no private rights of action under local law | I.C |
| | | Attack discretionary decisions protected by sovereign immunity or entitled to deference by the court | II.D |
| | | Plaintiffs have pled no actionable claim concerning the fund | II.E |
| IX | Licensing and moratoria | Plaintiffs have no private rights of action under local law | I.C |
| | | Attack discretionary decisions protected by sovereign immunity or entitled to deference by the court | II.D |
| X | "Non-Resident Acts" | Collateral estoppel, *res judicata,* and *stare decisis* | I.E |
| | | The Acts do not violate the Commerce Clause or the right to travel | II.F |
| XI | Traffic stops | Moot in whole or in part | I.F |
| XII | Declaratory judgment | Not a cause of action | III |

# Exhibit 2

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

CIVIL DIVISION

| | | |
|---|---|---|
| **D.C. PROFESSIONAL TAXI DRIVERS ASSOCIATION, INC.,** *et al.* | : | |
| | : | |
| **Plaintiff,** | : | **Docket No. 2006 CA 1587 B** |
| | : | **Calendar 7** |
| **v.** | : | **Judge Bartnoff** |
| | : | |
| **DISTRICT OF COLUMBIA** | : | |
| | : | |
| **Defendant.** | : | |

<u>**ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**</u>

This case is before the Court on the parties' cross motions for summary judgment: a Motion for Summary Judgment filed by plaintiffs D.C. Professional Taxi Drivers Association, Inc., et al. and a Renewed Motion for Summary Judgment filed by defendant District of Columbia. Each party has filed an opposition to the other's motion. The defendant also filed a reply to the opposition to its motion, and the plaintiffs made a supplemental submission thereafter in further support of their opposition.

I.

The essential background to this case is not disputed. For many years prior to 2006, the District of Columbia allowed taxicab drivers who were domiciled in Maryland and Virginia to register their vehicles with the D.C. Department of Motor Vehicles ("DMV") and to obtain Washington, D.C. taxicab license plates, which are known as "H-tags." In 2001, the D.C. City Council passed D.C. Law 13-289, codified as D.C. Code

§ 50-1501.02(c)(5), which became effective on April 27, 2001. That statute provides that

only vehicles owned by individuals or businesses domiciled in the District of Columbia

may be registered in the District of Columbia. By its terms, the statute does not permit

taxicab owners who are not domiciled in the District of Columbia to register their

vehicles in the District of Columbia and obtain D.C. taxicab license plates ("H-tags") for

them.

Although the legislation became effective in April 2001, the DMV did not apply it

to taxicab owners for several years after it was enacted. In 2005, DMV officials realized

that they had been issuing license plates to taxicab owners who were not domiciled in the

District, despite the requirements of the statute, and after public notice, DMV began to

implement the statute as to taxicabs beginning March 1, 2006. The DMV made an

exception for renewals of registrations of taxicabs that were currently registered, but it

did stop issuing new vehicle registrations and H-tags to non-resident taxicab owners.

The plaintiffs brought this lawsuit to challenge implementation of the statute,

which they contend is unlawful and unconstitutional, on a variety of grounds. They claim

to be or to represent taxicab owners who are domiciled in Maryland or Virginia and who

were engaged in the taxicab business in the District prior to implementation of the statute.

The essence of the plaintiffs' claim is that by reason of the new statute and their inability

to obtain new registrations and H-tags for their taxis in the District of Columbia, they can

no longer conduct their taxicab businesses here.

In response, the District of Columbia contends that the plaintiffs are confusing the

registration of their taxicabs in the District of Columbia with their ability to obtain

certification from the District of Columbia Taxicab Commission ("DCTC" or "the

Commission") to operate their taxicabs in the District of Columbia. Although the record was at first somewhat confusing, the defendants now have clarified that a District of Columbia vehicle registration (and consequently, a D.C. license plate) is not required in order to operate a taxicab in the District. Individual taxicab owners who live in Maryland or Virginia can register their vehicles in their home states and still operate them as taxicabs in the District, if they obtain a certificate from the Commission, pay the required fee and comply with certain inspection, insurance and licensing requirements.

The statute at issue also was amended while this case was pending. In June 2007, the City Council passed the "Non-Resident Taxi Drivers Registration Emergency Amendment Act of 2007," and in early 2008, it passed the "Non-Resident Taxi Drivers Registration Amendment of 2008," which took effect on March 26, 2008. That amendment added a "grandfather" provision, under which a non-resident taxicab owner who had a District of Columbia vehicle registration as of March 1, 2006 can continue to register a taxicab (and obtain an H-tag) in the District.

The District argues that the new amendment moots the plaintiffs' claims for injunctive relief, that the challenged statute is fully lawful and constitutional and that the plaintiffs cannot show otherwise, and that there is no legal basis for the individual plaintiffs' damages claims. The plaintiffs take the contrary position.

II.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue as to any material fact and that it therefore is entitled to the entry of a judgment in its favor as a matter of law. *Grant v. May Dep't Stores Co.*, 786 A.2d 580, 583 (D.C. 2001); Super. Ct. Civ. R. 56(d). In reviewing a

motion for summary judgment, the trial court must view the pleadings and other materials submitted in the light most favorable to the non-moving party. *Grant*, 786 A.2d at 583 (citing *Nader v. De Toledano*, 408 A.2d 31, 42 (D.C. 1979)).  The motion may be granted only if a reasonable jury, drawing all reasonable inferences in favor of the non-moving party, could not find for the non-moving party based on the evidence in the record. *Id.*

The moving party has the initial burden of proving that there is no issue of material fact in genuine dispute. If that initial burden is carried, the non-moving party then assumes the burden to establish that there is a genuine issue of material fact in dispute. *Grant*, 786 A.2d at 583 (citing *O'Donnell v. Associated Gen. Contractors of America, Inc.*, 645 A.2d 1084, 1086 (D.C. 1994)).  The non-moving party may not merely rely on the allegations in its pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Super. Ct. Civ. P. R. 56(e).

## III.

In challenging the constitutionality of a statute, the plaintiffs bear a heavy burden and must overcome a strong presumption that the law is valid. *See Hornstein v. Barry*, 560 A.2d 530, 534 (D.C. 1989).  The plaintiffs must "establish that the legislature acted in an arbitrary and irrational way" and "must make a very compelling showing indeed" in order to establish that a statute should be invalidated. *Id.*  The plaintiff essentially must establish beyond a reasonable doubt that the challenged statute violates the Constitution. *Id.* at 533, n.5 (citations omitted).

The statute limiting motor vehicle registration in the District of Columbia to vehicles owned by persons who are domiciled in the District on its face is a rational and reasonable exercise of the District's police powers. *See Hendrick v. Maryland*, 235 U.S.

610, 622 (1915).   Nothing in the record suggests that the statute was intended to target non-resident taxicab drivers.

Although the plaintiffs attempt to frame their challenges to the statute under a variety of legal theories, [1] all of their arguments are premised on the claim that the statutory requirement that only individuals who are domiciled in the District can register vehicles here (and therefore obtain D.C. license tags) prevents non-resident taxicab owners from conducting their businesses in the District. In their opposition to the defendant's renewed motion for summary judgment, for example, the plaintiffs state that they "complain of denial of the right to own a business, namely their taxicabs, in the District of Columbia." Pls.' Opp'n at 1.  But it is clear on the current record that as a matter of law, the statute does no such thing. The statute at most addresses who may obtain a vehicle registration in the District of Columbia, but it does not (and does not purport to) impose any limitation on who may operate a taxicab business here.

The current record clarifies the requirements for conducting a taxicab business in the District of Columbia and, in particular, the difference between a DCTC certificate for a taxicab and a vehicle registration. The regulatory scheme is set out primarily through the Declaration of Causton Toney, the former Chairperson of the Commission, but it is based on the statute and regulations and therefore is not a subject of factual dispute. The Commission, and not the DMV, has the responsibility and authority to establish criteria, standards and requirements for taxicab vehicle licensing and for the licensing of taxicab owners and operators in the District. *See* D.C. Code §§ 50-307(a)(1)(C), (D).

---

[1] The plaintiffs assert claims based on the privileges and immunities clause, the Fifth and Fourteenth Amendments, tortious interference with prospective business advantage, unlawful restraint of trade, and breach of duty of good faith and fair dealing.

As a legal matter, a District of Columbia vehicle registration is not required in order for an individual taxicab owner to conduct business in the District. What is required is a DCTC certificate for the vehicle, a valid "Face ID" for the operator,[2] and a valid registration for the vehicle in the District of Columbia, Maryland, or Virginia. A license plate issued by the applicable jurisdiction is evidence of the vehicle registration.

In order to obtain a DCTC certificate, the vehicle owner must present certain documentation to the Commission, including an inspection report issued by the District DMV showing that the vehicle has passed a taxicab inspection[3] and proof that the vehicle is insured as a taxicab in the District. As noted above, there is no requirement that the vehicle be registered in the District or that it bear a District license plate.

Nonetheless, the plaintiffs attempt to support their position by referring to 31 D.C. Mun. Regs. § 828.1, which addresses taxicab reciprocity with surrounding jurisdictions. Under those regulations, taxicabs licensed in certain surrounding jurisdictions may enter the District to pick up passengers on a prearranged basis or to discharge passengers and then pick up passengers returning to their jurisdictions, but may not be dispatched from the District to another District location or otherwise transport passengers from one location in the District to another. The plaintiffs argue that those regulations preclude

---

[2] The Face ID is issued by the Commission to individuals who are approved to operate taxicabs in the District. To obtain a Face ID, the driver must take a course and pass an exam at the University of the District of Columbia. The driver also must pass an exam at the Commission and must satisfy other requirements, such as a physical examination and a criminal background check, as set out at D.C. Code § 47-2829(e)(1) and 31 D.C. Mun. Regs. § 1001. The taxicab operator must have resided in the greater metropolitan area for at least one of the past three years, but there is no requirement that the taxicab operator be a resident of the District.

[3] The taxicab inspection requirements are set out in Title 31 of the District of Columbia Municipal Regulations.

them from conducting an intrastate taxicab business in the District if they do not have an H-tag. But that argument—like the plaintiffs' other arguments—confuses a license plate with a DCTC certificate for a taxicab. The regulations only apply to taxicabs that are licensed in neighboring jurisdictions but do not have DCTC certificates.

To the extent that the plaintiffs may have been under the impression that the District required them to have H-tags in order to operate their taxicabs in the District, the plaintiffs are mistaken regarding the applicable legal requirements. The challenged statute may not permit non-resident taxicab owners to register their vehicles in the District of Columbia and obtain District of Columbia license plates, but it does not preclude them from obtaining the DCTC certificate necessary to operate their taxicabs in the District of Columbia.

A few additional points warrant some mention. Certain of the individual plaintiffs, as well as certain other members of the plaintiff association, have submitted affidavits that they had H-tags for their taxicabs prior to March 1, 2006, that they replaced those vehicles after that date, and that they then were unable to obtain H-tags for them. They state that because they had no H-tags, they were unable to conduct their taxicab businesses in the District. Notably, there is no mention of a DCTC certificate in any of the plaintiffs' affidavits, nor do the affiants claim that they ever attempted to register the replacement taxicabs in their home jurisdictions and obtain DCTC certificates for them.

Further, the record reflects that Mr. Toney, in his capacity as the Chairperson of the Commission, noted in public meetings and at his deposition that the statute created enforcement problems for the Commission, because it would be more difficult to police

vehicles from Maryland or Virginia that were improperly being operated as taxicabs in the District if legal taxicabs could not necessarily be identified by their license plates. But that testimony serves to confirm that as a legal matter, non-resident taxicab owners could continue to operate in the District without H-tags once D.C. Code § 50-1501.02(c)(5)(A) began to be applied to taxicabs. One potential solution to the enforcement problem was to require, by regulation, that no DCTC certificate be issued for a taxicab not registered in the District. The Commission even proposed emergency regulations to that effect, but the record reflects that they never took effect.[4]

It is the case, however, that the statute has now been amended to grandfather in the plaintiffs and permit them, if they owned a taxicab that was registered in the District prior to March 1, 2006, to replace that vehicle and register the replacement in the District. That amendment moots the plaintiffs' request for injunctive relief.[5] The amendment does contain certain restrictions, but it appears to address the particular situations described in the affidavits presented by the individual plaintiffs and other members of the plaintiff association.

The plaintiffs claim, nonetheless, that they were injured by their inability to obtain H-tags, at least prior to the enactment of the emergency and permanent amendments to the statute. But they base that claim on their alleged inability to conduct their taxicab

---

[4] It appears that the proposed emergency regulations, which could only be in effect for four months, were under consideration by the Commission only as a stopgap measure, in anticipation of legislation that would resolve the enforcement problem by permitting non-resident taxi owners to register their vehicles in the District and obtain H-tags.

[5] Although the parties advised the Court of the passage of the emergency legislation excepting the plaintiffs from the statutory requirement that only persons domiciled in the District can register a vehicle here, they did not supplement their motion papers to advise the Court of the enactment of the 2008 amendment that made the emergency exception permanent.

businesses in the District during that period because of their inability to register new

taxicabs and obtain H-tags after the District began to enforce the statute as to them.  As is

explained above, that premise is based on a misstatement of the law. The statute did not

preclude non-residents from operating their taxicabs in the District, and there accordingly

is no basis for the plaintiffs' claims of constitutional or other damages.

Finally, the plaintiffs attempt to challenge § 50-1501.02(c)(5)(A) on due process

grounds because it was enacted without a public hearing. But there is no constitutional

requirement that a legislature conduct public hearings prior to enacting legislation. The

procedural requirements for the D.C. City Council in enacting legislation are set out in

the Home Rule Act. *See* D.C. § 1-204.12(a) (requiring two readings of a proposed act,

with at least thirteen days intervening, prior to enactment, but containing no requirement

for a public hearing).  Further, the plaintiffs' arguments in that regard again are based on

their claim that the statute denied them the ability to pursue their livelihood, which is not

the case.

The plaintiffs' claims are all based on a misstatement of the legal effect of the

challenged statute. They have not met their heavy burden of establishing that the statute

is unconstitutional, nor can any of their other challenges to the statute be sustained, given

their faulty premise. Summary judgment therefore will be entered for the District and

against the plaintiffs.

Based on the foregoing and the entire record, it therefore is by the Court this **9th**

**day of January 2009**

**ORDERED** that the Defendant's Renewed Motion for Summary Judgment be

and it hereby is **GRANTED,** and it is

**FURTHER ORDERED** that the Plaintiffs' Motion for Summary Judgment be and it hereby is **DENIED**.

_____
Judge Judith Bartnoff
Signed in Chambers

Copies to:

Horace L. Bradshaw, Esq.
1644 Sixth Street, NW
Washington, DC 20001

Ellen A. Efros, Esq.
Andrew J. Saindon, Esq.
Office of the Attorney General for the District of Columbia
441 Fourth Street, NW, Sixth Floor
Washington, DC 20001

# Exhibit 3

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

---

**DISTRICT OF COLUMBIA PROFESSIONAL**
**TAXICAB DRIVERS ASSOCIATION, INC,** *et al.,*

                **Plaintiffs,**

    v.

**LEON J. SWAIN, JR.,** *et al.,*

                **Defendants.**

---

**2008 CA 001993 B**
**Judge Brook Hedge**
**Calendar 7**

## MEMORANDUM OPINION AND ORDER

### Introduction

Plaintiffs brought this action to declare null and void, and enjoin, regulations issued by the Mayor of the District of Columbia requiring that taxicabs utilize time and distance meters.[1] Before the Court are the parties' dispositive motions regarding the Mayor's substantive authority to issue the regulations mandating such meters, and procedural authority to allow only written comments and not oral ones, as well as to issue the regulations on an emergency basis.[2] For the reasons that follow, the Court holds that the Mayor had authority under the Omnibus Authorization Act to issue the time and distance taxicab meter regulations and that he complied with the D.C. Administrative Procedure Act in doing so.

### Background

---

[1] Plaintiffs are two associations whose membership is comprised of taxicab drivers, a Commissioner on the District of Columbia Taxicab Commission, and a District resident.
[2] What is not before the Court is which meter system should be utilized, time and distance or zone. That decision is one for the other branches of government.

The material facts are undisputed and the case turns on issues of statutory construction. It is necessary, therefore, to set forth the legislative and statutory framework and to place in context this controversy which has existed in one form or another for over seventy years.[3]

**1.      Legislative and Statutory Framework**

**A.      District of Columbia Taxicab Commission**

Through the decades, taxicabs have become an increasingly essential part of public transportation in the District of Columbia. As time went on, regulatory authority over these passenger vehicles for hire became spread out among seven different District administrative offices, in addition to the District's Public Service Commission, the Mayor, and the Council for the District of Columbia ("City Council"). As a result, control of the industry was "fragmented, decentralized, and uncoordinated." D.C. Official Code §50-301(3).

Therefore, over twenty years ago, the City Council enacted the District of Columbia Taxicab Commission Establishment Act of 1985 ("DCTC Establishment Act") (codified at D.C. Official Code §50-301, et seq.). As stated by the City Council:

> Recommendations have been made over the course of several decades by various private and commissioned studies, task forces, public and private groups, individuals, and congressional committees and subcommittees urging regulatory reform of the taxicab industry and the creation and consolidation of regulation into a single agency or bureau.

D.C. Official Code §50-301(5). The City Council concluded that "…there should be [a] centralized regulatory mechanism for the furtherance of coherent, efficient, and enforceable regulation, and for the establishment of sound taxi transportation policy."

---

[3] *See* January 3, 2008 Committee Report of the Council of the District of Columbia Committee on Public Works and the Environment, p. 1 (Exhibit 1 to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Council Committee Report")); *Bell Cab Co. v. Patrick*, 75 F.2d 1005 (D.C.Cir. 1934).

D.C. Official Code §50-301(4).  As noted by the Council of the District of Columbia

Report on Bill 6-159 (which became the DCTC Establishment Act):

> The purpose of [the Act] is to effect a consolidation of the District's regulation of the taxicab industry in one agency of government.  In effecting this purpose the bill proposed to abolish fragmented governmental authority over taxicabs and establishes a District of Columbia Taxicab Commission …with full regulatory power over the industry.  [The Act] also centralizes within the Office of the Mayor authority over other private carriers such as ambulances, funeral cars, and limousines, and places taxicab insurance regulation under the Superintendent of Insurance.

Report, p. 1.[4]

The City Council created the District of Columbia Taxicab Commission "as a

subordinate agency within the executive branch of the District government with exclusive

authority for intrastate regulation of the taxicab industry as provided by [the Act]."  D.C.

Official Code §50-304.  The Commission is comprised of nine members.  Five are

members of the public and three are from the industry.  The members serve for five year

terms, are appointed by the Mayor with the advice and consent of the City Council, and

serve for no more than two consecutive terms.  D.C. Official Code §§50-305(b) and (c).

Individual members may be removed by the Mayor for cause.  D.C. Official Code §50-

305(c).  The ninth person is the Chairperson, who serves at the pleasure of the Mayor.

D.C. Official Code §§50-305(b) and (c).  The Chairperson is the chief administrative

officer of the Commission in charge of the organization and administration of the

Commission.  D.C. Official Code §50-305(d).

Substantively, the Commission is organized into two "panels," the membership of

which is determined by the Mayor.  The two panels are "Rates and Rules" and

---

[4] Among the problems created by the decentralization was the lack of meaningful control and resolution of industry issues.  As stated in the report, "there has been longstanding public criticism of the taxicab industry that has centered on problems of overcharging, refusal to transport, discourteousness, and inadequate knowledge of the city on the part of some operators." Report, p. 3

"Consumer and Industry Concerns." D.C. Official Code §50-306. The Panel on Rates

and Rules is central to the instant controversy. Its "original jurisdiction," in relevant part,

is to:

> Establish reasonable rates for taxicab service for the transportation of passengers and their property within the District, including all charges incidental and directly related to the provision of taxicab services.

D.C. Official Code §50-307(b)(1)(A), and to

> Establish methodologies for the determination of reasonable fares for taxicab service, including, but not limited to, revision of the zone boundaries and zone construct currently employed to determine taxicab fares. The Commission's Panel on Rates and Rules shall neither impose any limitation on the number of taxicabs that may operate in the District, nor shall it authorize a metered system for determining taxicab fares without a 60-day period of Council review of the proposal.

D.C. Official Code §50-307(b)(1)(B).

In exercising its authority, the Panel on Rates and Rules must "adhere to and be

subject to" the District of Columbia Administrative Procedure Act ("DCAPA"), and must

"afford interested persons an opportunity to submit views and data orally during a public

hearing, for which adequate notice has been given." D.C. Official Code §50-308(b). In

addition, "[n]o rule or rate [relating to taxicab service] shall be effective unless a majority

of the full Commission has voted affirmatively for the adoption of the rule or rate." D.C.

Official Code §50-308(c).

**B. The Mayor**

Under various enactments dating from 1877 to today, the District of Columbia

was the successor of the corporations of Washington and Georgetown, and all the

property of said corporations, and of the County of Washington, was vested in the

District of Columbia. D.C. Official Code §1-104. The Corporation was "continued for

all purposes… under all acts". D.C. Official Code §1-105.  Under D.C. Official Code §1-103, the Mayor and members of the City Council are "deemed…officers of such corporation."

Under the District of Columbia Self-Government and Governmental Reorganization Act ("Home Rule Act"), the executive power of the District is vested in the Mayor, who is the chief executive officer.  D.C. Official Code §1-204.22.  The Mayor is "responsible for the proper execution of all laws relating to the District, and for the proper administration of the affairs of the District coming under his jurisdiction or control…." D.C. Official Code §1-204.22.  Consistent with this grant of authority, "[t]he Mayor shall, through the heads of administrative boards, offices, and agencies, supervise and direct the activities of such boards, offices, and agencies." D.C. Official Code §1-204.22(4).  The Mayor may also "delegate any of his functions … to any officer, employee, or agency of the executive office of the Mayor . . ." D.C. Official Code § 1-204.22(6).  Further, the Mayor "is authorized to issue and enforce administrative orders, not inconsistent with this or any other Act of Congress or any act of the Council, as are necessary to carry out his functions and duties." D.C. Official Code §1-204.22(11).

## C. Congressional Action on Taxi Meters

On October 16, 2006, Congress enacted the 2005 District of Columbia Omnibus Authorization Act, Pub. L. No. 109-356, 120 Stat. 2019 ("Omnibus Act").  Section 105 of that Act ("Section 105"), in its entirety, provides:

> (a) *In general.* – Except as provided in subsection (b) of this section and not later than 1 year after the date of enactment of this Act, the District of Columbia shall require all taxicabs licensed in the District of Columbia to charge fares by a metered system.

(b) *District of Columbia opt out.* – The Mayor of the District of Columbia may exempt the District of Columbia from the requirement under subsection (a) of this section by issuing an executive order that specifically states that the District of Columbia opts out of the requirement to implement a metered fare system for taxicabs.

This amendment is popularly known as the "Levin Law," and is codified at D.C. Official Code §50-381. [5]

At oral argument, both sides agreed that there is no specific legislative history for Section 105 of the Omnibus Act. The meter issue, however, has been the subject of discussion on Capitol Hill for many years. For example, seven years ago, Senators Levin and Landrieu remarked:

Mr. LEVIN. Mr. President, since the late-1980s, I have urged the mayors of the District of Columbia and Commissioners of the DC Taxicab Commission toward implementation of recommendations from numerous District of Columbia studies to replace the current taxicab zone fare with a meter system. [T]he District of Columbia is the only major city in the Nation where taxi fares are calculated by a zone system rather than a meter system. The use of the zone system is especially unfair to our great number of out-of-town tourists who have to cope with a complicated, confusing zone fare system with no basis on which to judge the accuracy of a particular fare. In my own experience, as a DC resident, I have encountered at least 10 different cab fares for the exact same trip to and from National Airport. A metered system would eliminate this problem.

There is a lot of correspondence that has transpired over the years on this matter. [T]here have [sic] been broken promise after broken promise. Mayor Williams' letter sets out a course of action. If it is not followed, I intend to bring this matter to a head next year—after two decades of broken promises.

Ms. LANDRIEU. Mr. President, let me just say from the outset that I appreciate my colleague's comments. The District of Columbia is the only major city that does not have a meter system in place. The current zone system compromises the integrity of the DC taxicab system. The apparent variance among cab fares to the same destination shows how the current system can be misunderstood and even abused. I deeply appreciate Senator Levin's decision to withhold an amendment at this time based on the mayor's letter. And I certainly understand that Senator Levin

---

[5] January 3, 2008 Council Committee Report, p. 1.

will be back with his amendment if meters are not in place, as indicated in Mayor Williams' letter, early next year, and I intend to support Senator Levin's efforts to end the current intolerably confusing situation.

147 Cong. Rec. S11532–11533 (Nov. 7, 2001).

### 2.    Factual Background Regarding Action After Passage of The Omnibus Act

At various times during 2007, the DCTC addressed issues that touched on the fares and the meter issue.[6]  On September 11, 2007, the DCTC held a public hearing on meters.  It then entertained a number of motions for recommendations to the Mayor, including adopting zone meters, adopting time and distance meters, opting out of the Congressional requirement, and other combinations of options to try and reach a consensus.[7]  The DCTC was unable to break a deadlock.[8]  In the end, with some members abstaining, it voted the following recommendation to the Mayor with respect to meters:

> The commission recommends to the Mayor that he use 31 DCMR section 602.1 as a guide to his decision with the language in section 602.1 which reads "computes fares based on the zone charges set forth in Appendix 8-2" replaced with "computes fares based on zone charges after further review of the zone system and the zone meter" and that the Mayor accept the already written regulation as to Council review of 60 days.[9]

---

[6] For example, the June 13, 2007 Minutes of the DCTC reflect that former Mayor Williams established the Taxicab Information Project (TIP) as part of the then Mayor's Task Force on Taxicab Reform to look into the use of time and distance meters and the economic effect on the public and the drivers.  The project was based in the Office of the Deputy Mayor for Planning and Economic Development.  The project appeared to transfer to the DCTC when a person working on the issue in the Mayor's office became Chairperson of the DCTC.  At the June 2007 meeting, the Commission members expressed concern that they were not consulted on the initiation and scope of the TIP, but that "to the extent the issue of meters is squarely before the Commission for its recommendation to Mayor Adrian Fenty," the report should be disseminated to the public through the Commission.  June 13, 2007 Minutes of DCTC Meeting, p. 10.

[7] All DCTC Minutes and hearing transcripts are available at http://dctaxi.dc.gov/dctaxi/cwp/view,a,1187,q,632502,taxiNav,|30625|,dctaxiNav,|30625|34015|.asp

[8] Seven votes were taken, *id.* at pp. 136, 138, 147, 148, 149, 157, 159, 160, 171, 172, 179, 188, 190, 197, 201. September 11, 2007 Hearing Transcript.

[9] DCMR Section 602 is titled "Meters." Section 602.1 states: "A taxicab may be equipped with a device that computes fares based on the zone charges set forth in Appendix 8-2, mechanically or electronically upon notifying the Commission of its use."

On October 17, 2007, Mayor Adrian M. Fenty issued an administrative order directing that "time and distance" meters be instituted for all taxicabs licensed in the District of Columbia.  Mayor's Order No. 2007-231.[10]   Under the order, the "Mayor's authority to implement the new time and distance metered taxicab system" was delegated to defendant Swain, the Chairperson of the DCTC.  *Id.*  The order was stated to be issued under the authority of the Omnibus Act and the Home Rule Act, D.C. Official Code §1-204.22(6).

On November 8, 2007, the Council of the District of Columbia Committee on Public Works and the Environment ("Council Committee") held a "public oversight roundtable" hearing on the proposed regulations.

The next day, November 9, 2007, defendant Swain, "pursuant to the authority set forth under section 105 of the Omnibus Act, D.C. Official Code §50-381(a) (2007 Supp.) and Mayor's Order, 2007-231, dated October 17, 2007," issued  proposed rules to implement the decision by the Mayor to require time and distance taximeters in licensed District of Columbia taxicabs.  54 D.C. Reg. 10819.[11]  Among other things, the proposed rules intended to amend Chapters 6, 8, 10, 11, 12, and add a new Chapter 13 to Title 31 of the District of Columbia Municipal Regulations (DCMR).  Sixty days were given for comment before final rulemaking action was to be taken.  The Mayor transmitted a copy of the draft regulations to the City Council.[12]

---

[10] This Order was published January 4, 2008, 55 D.C. Reg. 167.  The subject line read "Delegation of Authority to the D.C. Taxicab Commission."

[11] D.C. Register publications may be found at: http://newroom.dc.dc.gov/list.aspx/agency/os/section/37

[12] January 3, 2008 Council Committee Report, p. 1.

On November 14, 2007, a regularly scheduled meeting of the DCTC was held. At that time, Chairman Swain advised the Commissioners that the proposed November 9, 2007 rules were on the web, and that a special meeting would be held in December so that the members and public could give their comments which would become a part of the "official" record given to the Mayor.[13]

On December 12, 2007, the DCTC held a public special Commission meeting. At the meeting, in response to Commissioner questions regarding the Mayor's authority to issue the proposed rules, Chairperson Swain indicated the special meeting was called because "several members indicated" they wanted to give the public an opportunity to provide comments to the proposed rulemaking within the sixty-day period. He also "pointed out that the Mayor issued a Mayor's order that essentially transferred the authority as to this decision making to the Chairperson and that the Commissioners are not involved in voting on the proposed rulemaking." [14]   In response to questions about the Mayor's authority to act, defendant Swain stated the "Mayor and his legal advisors feel that Congress gave him the authority to implement meters" with the Omnibus Act.[15]   He, however, was asking for comments from the Commissioners which he would take into consideration when making the final decision.[16]

On January 3, 2008, Councilmember Jim Graham, as Chairperson of the City Council's Committee on Public Works and the Environment, issued a report to the City Council members. The Council Committee's report discusses both the zone and time and distance meter options and, in the end, concludes that "either metered system would

---

[13] November 14, 2007 DCTC Minutes, pp. 5-6.
[14] December 12, 2007 Meeting Minutes, pp. 3.
[15] *Id.* at p. 4
[16] *Id.*

comply with the 'Levin Law' and meet the needs of the District of Columbia."[17]  At the

Committee markup on session January 3, 2008, the Committee amended its report to

include the "Committee's concern that the final structure should be similar and

comparable to current fares, since it was not the Committee's intent by this amendment to

cut revenues for taxicab drivers."[18]

On January 25, 2008, defendant Swain published a second Notice of Proposed

Rulemaking, 55 D.C. Reg. 777, and invited the submission of written comments.[19]

Eventually, the comment period was set to expire on March 26, 2008.

One month later, on February 25, 2008, a Notice of Emergency and Proposed

Rulemaking was adopted by defendant Swain and made effective February 29, 2008.  As

with the other notices, Defendant Swain relied upon the Omnibus Authorization Act,

D.C. Official Code §50-381(a)(2007 Supp.) and the Mayor's October 17, 2007 Order

2007-231. 55. D.C. Reg. 2147 for his authority to issue the rulemaking.  According to

the Notice, the February rules remained substantially unchanged from those published in

January 2008.[20]  As a result, the comment period was abbreviated to five days or March

5, 2008.  Furthermore, the emergency rules made the amendments to Chapter 6 and the

new Chapter 13 to the DCMR effective immediately.  Emergency rules were said to be

---

[17] Council Committee Report, pp. 7-8.

[18] Council Committee Report, p. 8

[19] The Notice contained an internal inconsistency with the preamble indicating a 30-day comment period and the end indicating a 60-weqday period.

[20] As stated in the Notice: "The Chairperson also gives notice of his intent to take final rulemaking action to adopt the following rules, which include amendments to Chapters 6, 8, 10, 11, and 12, the relevant table of contents and appendices, indexes, and the addition of Chapter 13 to 31 DCMR.  Proposed Rulemaking was published on January 25, 2008 at 55 DCR 777.  The only substantive change to the proposed rules of January 25, 2008 is to increase the maximum fare from $ 18.90 to $ 19.00.  The change is required to meet the specification of taximeter industry standards per comment from meter manufacturers.  The rules have also been modified to retain the additional passenger surcharge and to keep the current rates for taxicabs hired on an hourly basis.  Finally, the Chairperson has also made minor changes to other provisions for clarity.  These Proposed Rules supersede those published on January 25, 2008."

necessary to ensure that the time and distance meters were installed prior to April 6, 2008, to carry out the Mayor's order and to give taxicabs sufficient time to install the devices and to "serve the safety and welfare of the public by providing a reliable taxicab fare system that is clear, transparent, and that allows for the maximum use of taxis for public transportation." The emergency rules, which were adopted February 25, 2008, were to remain in effect for 120 days or until the final rules were published, whichever occurred first.

Plaintiffs filed suit on March 7, 2008, to enjoin the Emergency and Proposed Rulemaking. A hearing on the request for a Temporary Restraining Order was held before another judge of the Court on March, 11, 2008, at which time it was agreed that defendants would extend the notice and comment period to March 26, 2008, for the filing of written comments on the proposed rules and emergency rulemaking of January 25, 2008, and February 29, 2008, and the effective date of implementation of any time and distance meters to May 1, 2008. As a result, plaintiffs withdrew their immediate request for relief.

On March 14, 2008, the DCTC Chairperson, defendant Swain, adopted and, on March 21, 2008, published a further Notice of Emergency and Proposed Rulemaking to alter the comment and compliance dates to reflect the agreement reached in court. 55 D.C. Reg. 002951. These were also effective immediately.[21]

On March 27, 2008, this Court held a hearing on defendants' Motion to Dismiss or, in the alternative, for Summary Judgment, and on plaintiffs' Motion for Partial

---

[21] The March 21, 2008 Proposed Regulation added as defendant Swain's authority for the rules, D.C. Official Code §50-313.

Summary Judgment. Each was accompanied by various briefs and exhibits filed in support of and opposition to the motions.

On April 11, 2008, the Mayor through defendant Swain issued final regulations that make final the March 21, 2008 regulations.[22] 55 D.C. Reg. 3831. According to defendants, as a result of the comments received, only limited clarifying changes to the March (and, therefore, the January and February proposed rules) were made in the final rules. The rules amend 31 DCMR, "Taxicabs and Public Vehicles for Hire," repeal the zone fare system and establish detailed requirements for the implementation of time and distance taxicab meters in taxicabs licensed in the District of Columbia.

### Discussion

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Super. Ct. Civ. R. 56(c); *Chang v. Inst. for Public-Private P'ships, Inc.*, 846 A.2d 318, 323 (D.C. 2004).[23] "The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, after which the burden shifts to the non-moving party to designate specific facts showing that there is a genuine issue for trial." *LaPrade v. Rosinsky*, 882 A.2d 192, 196 (D.C. 2005).

In reviewing a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences from the evidence in its favor. *Herbin v. Hoeffel*, 806 A.2d 186, 191 (D.C. 2002). Summary

---

[22] The Notice and final regulations are published at:
http://newsroom.dc.gov/show.aspx?agency=os&section=37&release=13335&year=2008&file=file.aspx%2
frelease%2f13335%2f6%2520-%2520Final%2520Rulemaking.pdf
[23] Under Sup. Ct. Rule 12(b)(6), when matters outside the pleadings are considered, as they were here, the motion to dismiss is treated as one for summary judgment. Thus, the motions are in the posture of cross-motions for summary judgment.

judgment is proper when the non-moving party fails to establish an essential element of its case on which it bears the burden of proof. *Pannell v. District of Columbia*, 829 A.2d 474, 478 (D.C. 2003).

As stated at the outset, the central issue in this case is a legal one: whether the Mayor had the authority to implement directly or through the Chairperson of the DCTC the time and distance taxicab meter system. The core of plaintiffs' challenge is that the Omnibus Act only gave the Mayor the power to opt out of the requirement that meters be implemented. Beyond that action, any other steps taken with regard to meters had to be done by the DCTC which, by statute, has exclusive jurisdiction to set rates and methodologies for determining fare structures. Section 105 of the Omnibus Act did not repeal or amend the DCTC Establishment Act and, therefore, plaintiffs contend, the Mayor illegally "usurped" the DCTC's authority.

Defendants argue that the Omnibus Act gave the Mayor authority to act, particularly where, as here, the Commission's action thwarts the law. In addition, defendants contend that the DCTC is a subordinate agency under the Mayor and that the Mayor's authority under the Home Rule Act gave him "inherent authority" to justify his actions.[24] The briefs also press the argument that the Mayor has equal and co-extensive power with the DCTC to issue regulations regarding taxicabs under the DCTC Establishment Act, which the Mayor considers are "necessary for the protection of the public." D.C. Official Code §50-313(a). The Court will address these arguments starting with the last first.

**1.      The Mayor's Authority under the DCTC's Establishment Act**

---

[24] March 17, 2008 Memorandum in Support of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment, p. 9.

The Mayor did not rely on the DCTC Establishment Act as a basis for his authority when he issued his October 17, 2007 Order nor was it relied upon by Chairperson Swain in the initial rulemaking.[25]  It is an argument that came to the fore during the first court hearing on March 11, 2008.

Under the DCTC Establishment Act, "[t]he Mayor may issue any reasonable rule relating to the supervision of passenger vehicles for hire he or she considers necessary for the protection of the public."  D.C. Official Code §50-313(a).   The key is what is meant by the term "passenger vehicles for hire."   The DCTC Establishment Act specifically defines "passenger vehicles for hire" as:

> (A) Any motor vehicle for hire operated in the District by a private concern or individual as an ambulance, funeral car, sightseeing vehicle, or vehicle used exclusively for contract livery services or for which the rate is fixed solely by the hour;
> (B) Any motor vehicle for hire operated exclusively within the District between fixed termini or on a schedule, exclusive of vehicles operated by the Washington Metropolitan Area Transit Authority or other public authorities; or
> (C) Any other private motor vehicle for hire not operated on a schedule or between fixed termini and operated exclusively in the District, exclusive of taxicabs.

D.C. Official Code §50-303(6).  All agree that this subsection excludes taxicabs and that it is the Mayor and not the Commission (absent a delegation of authority from the Mayor) who regulates those vehicles captured by this subsection.

Defendants argue that the Mayor may also regulate taxicabs since the phrase "passenger vehicles for hire" is included within the definition of taxicabs under the DCTC Establishment Act.   Under the Act, taxi or taxicabs are defined in a separate subsection as " . . . any passenger vehicle for hire having a seating capacity of 8 or less

---

[25] The March 21, 2008 proposed rule is the first time the DC Establishment Act is cited as a source of the Mayor's rulemaking authority in this area.

passengers, exclusive of the driver, and operated as a vehicle for passenger transportation for hire by taxicab." D.C. Official Code §50-303(8). Defendants argue that the two provisions are separate "to preclude from the powers of the Commission any authority to regulate non-taxicab passenger vehicles for hire."[26]

When read in isolation, defendants' argument is appealing. The argument, however, does not square with other statutory provisions, the purposes of the legislation, or the legislative history.

First, subsection 313(a) upon which the Mayor relies cannot be read in isolation. Section 313, by its terms, addresses the licensing of those vehicles that are covered by the specific definition 'vehicles for hire' in Section 303(6). For example, D.C. Official Code §50-313(b) provides that the "Mayor may establish" standards and requirements "for the licensing of the different classes of passenger vehicles for hire," as well as licensing fees so long as the licensing requirements are not "duplicative of the jurisdiction of the Washington Metropolitan Area Transit Commission," (which licensing is not within the jurisdiction of the DCTC). To read the Mayor's regulation of taxicabs into this framework, as long as the Mayor was exercising the power, would render a nullity the carefully crafted legislation creating the DCTC and the rules relating to the licensing of taxicabs.[27] It would also present the opportunity for the fragmented, uncoordinated and inconsistent regulation of the taxicab industry.

Second, defendant's argument cannot be read to square with the fact that the DCTC Establishment Act explicitly vests exclusive jurisdiction over taxicabs in the

---

[26] Defendants' March 21, 2008 Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment, p.8.
[27] The circular nature of the argument is reflected in the fact that, if the interpretation were accurate, the DCTC and the explicit statutory requirements could be bypassed by the Mayor merely delegating his authority under Section 313 to the Chairperson to issue rules regulating taxicabs.

Commission, with a specific panel designated to have original jurisdiction over the methodology for rates for taxicabs. Thus, the logical conclusion is that the use of the term 'vehicles for hire' in the definition of 'taxicabs' was in the descriptive sense, and not as a term of art as that term is used in the definitional section of Sections 303(6) and 313(a).

Under statutory construction principles, all sections of legislation are to be read to give life to each and none are to be rendered a nullity if possible. *Cannerton, Ray & Simon v. Simon*, 791 A. 2d 86, 88 (D.C. 2002). Therefore, since taxicabs are not defined as vehicles for hire under 303(6), the Mayor is precluded from resting on §50-313(a) for regulatory authority over taxicabs.

Similarly, "[w]hen a statute of broad general application is inconsistent with a more specific provision … the latter provision 'must govern or control, as a clearer and more definite expression of the legislative will…'" [citations omitted] *Ford v ChartOne, Inc.,* 834 A. 2d 875, 887-888 (D.C. 2003). *See also Onabiya v. District of Columbia Taxicab Comm'n*, 557 A.2d 1317, 1319 (D.C. 1989). Thus, the general grant of authority to the Mayor under Section 313 with regard to a statutorily defined class of non-taxicab vehicles cannot be seen to negate the specific provision vesting of exclusive authority over taxicabs in the DCTC.

The DCTC establishment legislative history is consistent with this conclusion in resolving any tension among three subsections, 303(6) and 303(8) and 313(a). As D.C. Official Code §50-301 reflects, the authority to regulate taxicabs was decentralized and fragmented among seven different administrative agencies, as well as the Mayor and Council. The legislation was to address this situation by creating a "centralized

regulatory mechanism for the furtherance of coherent, efficient, and enforceable

regulation, and for the establishment of sound taxi transportation policy." D.C. Official

Code §50-301(4). It created an agency with exclusive jurisdiction to regulate taxicabs

and to establish the methodologies for fares.[28] As noted in the City Council's Report on

Bill 6-159, which established the DCTC:

> The purpose of Bill 6-159, the 'District of Columbia Taxicab Commission Establishment Act of 1985' is to effect a consolidation of the District's regulation of the taxicab industry in one agency of the government. In effecting this purpose the bill proposes to abolish fragmented governmental authority over taxicabs and establishes a District of Columbia Taxicab Commission ("Commission") with full regulatory power over the industry. Bill 6-159 also centralizes with the Office of the Mayor authority over other private carriers such as ambulances, funeral cars, and limousines, and places taxicab insurance regulation under the Superintendent of Insurance.

Council of the District of Columbia Report, November 19, 1985, p.1. The Public Service

Commission, (P.S.C.), had sought to control the regulation of the taxi industry. As the

Report noted in this context, the Bill:

> reflects an agreement reached between the Committee and Mayor on the question of centralized regulation of the industry. After considerable debate, public hearings, proposals, and media attention on the issue, both the Mayor and Committee have come to the consensus on the need for and relative benefits that will be derived from consolidation, and propose the creation of a single mission regulatory commission. The P.S.C. has also joined in the consensus on the merits of consolidation, but prefers that its statutory authority over taxicabs be transferred vis a vis a delegation to the Mayor rather than a direct revision of its current statutory mandate. Although the Committee is sensitive to and appreciates the P.S.C. preference, it is nonetheless convinced that the proper legal approach to effecting consolidation under legislation requires a direct transfer of existing authorities.

City Council Committee Report, pp. 1-2.

With regard to the particular provisions at issue, the Council Report, in discussing

the terms used in the Bill (under Section 4 of what was the definitional section), stated:

---

[28] Indeed, the City Council, well aware of the debate over zone verses time and distance fare charges, specifically provided that the DCTC's Panel on Rates and Rules could not "authorize a metered system for determining taxicab fares without a 60-day review of the proposal." D.C. Official Code §50-307(b)(1)(B).

"It should be noted that the definition of "passenger vehicle for hire" and "taxicab" differ, and that the bill makes a clear distinction between the two." Report, p. 6.  In further discussion of the specific provisions of the Bill, the Report noted under Section 5, that the provision "establishes the District of Columbia Taxicab Commission and sets forth its exclusive jurisdiction over the taxicab industry [intra-state]." Report, p. 6.  With regard to the provision that became §50-313(a), the Report described the provision's reach as centralizing "control over passenger vehicles for hire in the Mayor." Report, p. 10.[29]

Significantly, the legislative history is devoid of any suggestion that the Mayor could exercise equal and co-extensive authority with the Commission to regulate taxicabs under the DCTC Establishment Act.  Given that the purpose of the DCTC Establishment Act was to centralize the regulation of taxicabs in a specialized Commission, creating a co-equal authority would run directly counter to the goal of the legislation.  Accordingly, D.C. Official Code §50-313(a) does not grant the Mayor co-extensive power with the DCTC to regulate taxicabs.

## 2.    The Mayor's Plenary Authority Under the Home Rule Act

Defendants argue that the Mayor's "inherent authority is sufficient to justify his actions here."[30]  To be sure, the Home Rule Act vests the Mayor with the "executive power of the District," and makes him "responsible for the proper execution of all laws relating to the District." D.C. Official Code §1-204.22(2006).  He also is charged with

---

[29] During the Council's first session to consider Bill 6-159, Councilwoman Mason made a motion to replace the word "Mayor" with "Commission" in Section 14 (50-313(a).  In presenting the amendment, she noted that Subsection 4 of the Bill defined passenger vehicles for hire "so as to exclude taxicabs as defined in section 4(8).  In other words, these are two mutually exclusive categories.  Only taxicabs are under the jurisdiction of the Taxicab commission set up by Section 5." The amendment was defeated because the other vehicles for hire under the Mayor, such as ambulances, were not properly within the Taxi Commission's scope.  City Council Period VI, First Session, Transcript, pp. 64-66 (submitted by counsel at the Court's request).

[30] Defendants' March 17, 2008 Memorandum in Support of their dispositive motion, p. 9.

supervising and directing the activities of "such boards, offices and agencies through the

respective heads of each.  To this end, he may delegate any of his functions ... to any

officer, employee, or agency of the executive office of the Mayor."  D.C. Official Code

§§1-204.22(4) and (6).

Defendants' argument is essentially that, since the DCTC is not an independent

agency but, by statute, a subordinate one, the Mayor may exercise regulatory power and

set policy co-extensive with that of the DCTC.  Furthermore, he can exercise that power

by delegating it to the agency's head, the Chairperson of the DCTC.  Whether the agency

is independent or subordinate, however, does not answer the inquiry.[31]

As discussed earlier, the Mayor has powers with regard to the DCTC.  He can

appoint and remove the Chairperson at will.  He can appoint and remove for cause the

individual members.  He also designates which members serve on which of the two

DCTC panels. D.C. Official Code §50-306.  The City Council, however, can limit the

Mayor's authority.  *See Francis v. Recycling Solutions, Inc.,* 695 A. 2d 63, 72-73 (D.C.

1997); *Barry v. Bush*, 581 A. 2d 308, 313 (D.C. 1990).  Therefore, unless the Mayor has

the authority, he has none to delegate.  *Francis v. Recycling Solutions, Inc.* 695 A. 2d at

75. As discussed above, the DCTC Establishment Act cabins the Mayor's authority,

leaving regulation of taxicabs to the Commission.  Therefore, the Mayor has no inherent

authority to act in the field, absent some other statutory provision, because any inherent

authority was curtailed by the City Council just as it was in *Francis.*

3.	**The Omnibus Act**

---

[31] As defendants argue, "[b]ecause the Mayor has the inherent power to issue rules to carry out his express statutory power, under Mayor's Order No. 2007-231, the Chair ... can issue any needed rules to implement a time and distance metering system. The rulemaking power is independent of the DCTC's rulemaking power." Defendants' March 17, 2008 Memorandum, p 10.

The Mayor's October 17, 2007 Order establishing time and distance meters for District taxicabs rests his authority to do so on the congressional enactment, the Omnibus Act. D.C. Official Code §50-381 (2007 Supp.). If the Mayor had the authority through the Omnibus Act to enact the meter regulations, then he could delegate that authority to defendant Swain, the Chairperson of the DCTC, pursuant to D.C. Official Code §1-204.22(6). The Omnibus Act provided in its entirety:

> (a) *In general.* – Except as provided in subsection (b) of this section and not later than 1 year after the date of enactment of this Act, the District of Columbia shall require all taxicabs licensed in the District of Columbia to charge fares by a metered system.

> (b) *District of Columbia opt out.* – The Mayor of the District of Columbia may exempt the District of Columbia from the requirement under subsection (a) of this section by issuing an executive order that specifically states that the District of Columbia opts out of the requirement to implement a metered fare system for taxicabs.

The question then is who acts for the District of Columbia under subsection (a) of the Act.

Plaintiffs' argument is that the DCTC is the District for purposes of this provision. Although the Mayor has the authority to opt out of the meter requirements, the DCTC has "exclusive jurisdiction" to regulate taxicabs. Therefore, only the Commission can implement the meter system. In short, for purposes of taxi regulation, the Commission is the District, according to the plaintiffs. This argument, however, would grant superior power to an agency subordinate to the Mayor without any indication of such an intention. Placed in context with the Home Rule Act, the "District," as used in the Omnibus Act, is not the DCTC.

20

The District of Columbia is a governmental corporation, D.C. Official Code §1-105, whose officers are the Mayor and the City Council members.  D.C. Official Code §50-103.  The Mayor is "responsible for the proper execution of all laws relating to the District, and for the proper affairs of the District coming under his jurisdiction and control...."  D.C. Official Code §1-204.22.

The Omnibus Act is legislation which does not purport to amend the DCTC Establishment Act.  Instead, it independently required the District to implement taxicab meters within a year's time.  Congress knew the DCTC had jurisdiction to make the changes, if it chose to do so.  Although there is no legislative history for this specific legislation, the "Levin law's" concerns were addressed in other sessions.[32]  Congress could have named the DCTC in §50-381(a) as specifically as it named the Mayor in subsection (b), but it did not.  It also could have left the opt out authority to the DCTC by allowing the Commission to decline adoption of a meter system, but it did not.  Instead, knowing the Mayor was charged with ensuring the laws be faithfully executed, Congress required the Mayor to make an affirmative decision to implement a meter system or not by the opt out provision.  If the Mayor's decision was not to opt out, then he had the responsibility to ensure that the law be executed, which meant implementing a meter system for taxicabs.  Furthermore, without the DCTC being specifically identified as the District for the Omnibus Act, the District is, at a minimum, the Mayor.  The Mayor, therefore, had the authority to implement the meter system pursuant to this independent enactment.  Since he

---

[32] The central concern expressed was the impact of the non-metered zone fare system on those who visit the Nation's Capitol from all over the world. The fare is calculated in a manner that the rider cannot independently verify.

21

had that authority to so act, the Mayor could delegate such authority to the head of

the agency under the Home Rule Act.

**4.        Rulemaking**

When the suit was commenced, plaintiffs' procedural challenge was to (1) the

lack of an opportunity for oral comments, (2) the inconsistency in the January 2008

Notice as to whether the comment period was for 30 or 60 days, and (3) the need for

emergency rulemaking on February 29, 2008.

At the first hearing in this case, defendants agreed to extend the comment period

to March 26, 2008, and to extend the date by which meters had to be installed in taxicabs

from April 6, 2008 to May 1, 2008.[33]  The length of the comment period, therefore, had

been resolved.  On April 11, 2008, the defendants issued the Final Rules thereby

rendering moot the emergency exercise of authority with the February and March 2008.

The only procedural issue, therefore, is whether an opportunity for oral comments is

required.

Before proposed rules may become final, the D.C. Administrative Procedure Act

("DCAPA") requires notice and an opportunity for public comment for not less than

thirty days prior to the effective date.  D.C. Official Code §2-505(c).  The DCAPA does

not mandate an opportunity for oral comments.  DCTC Establishment Act, however, does

require a period for both written and oral comments.

Since the Court concludes that the Mayor had authority to issue the regulations in

question under the Omnibus Act but not under the DCTC Establishment Act, the

---

[33] Defendants indicated before the March 27, 2008 hearing that amended regulations would be published to place in effect the agreement reached in Court.  There was no substantive change to the February 29, 2008 proposed rules by the March 21, 2008 publication other than the change of these two dates and the further citation to authority (D.C. Official Code §50-313) allegedly supporting the action.

rulemaking requirements of the DCTC Establishment Act did not apply.  Instead, the

DCAPA requirements controlled.  Accordingly, an opportunity for oral comments was

not required.

### Conclusion

Under the Omnibus Authorization Act, the Mayor was granted authority to

require taxicab meters in taxicabs licensed in the District of Columbia.  The Mayor also

had authority, under the Home Rule Act, to delegate his authority to the Chairperson of

the D.C. Taxicab Commission to issue regulations implementing this decision.  Since the

Mayor had authority to issue rules, he had authority to decide which meter system (time

and distance or zone) was in the best interests of the District of Columbia.  In so doing,

the Mayor and the Chairman of the D.C. Taxicab Commission, who exercised the

Mayor's delegated authority, complied with the provisions of the D.C. Administrative

Procedure Act in giving the opportunity for written comments and in establishing the

effective date by which time and distance meters were required in taxicabs licensed in the

District of Columbia.

Accordingly, it is this 21st day of April 2008,

**ORDERED** that Plaintiffs' Motion for Partial Summary Judgment is **DENIED**;

and it is further

**ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**.


*Brook Hedge*

_____
BROOK HEDGE
JUDGE
(Signed in Chambers)

23

Copies filed and served electronically through eFiling for Courts, this 21st day of April, 2008:

Plaintiffs' Counsel:
Jeffrey B. O'Toole

Defendants' Counsel:
Robert Utiger
Ellen A. Efros
Andrew J. Saindon

# Exhibit 4

# GOVERNMENT OF THE DISTRICT OF COLUMBIA
## TAXICAB COMMISSION



---

**GENERAL ORDER No. 1       Date: September 29, 2011**

**SUBJECT: Public Vehicle Enforcement Inspector Traffic Stop Protocol**

**APPROVED:** *Ron M. Linton, Acting Chairman*

---

The purpose of this order is to establish a policy and procedure governing Public Vehicle Enforcement Inspector's traffic stops. This policy is intended to promote public safety, safeguard Public Vehicle Enforcement Inspectors (Hack Inspectors) of the DC Taxicab Commission and assure compliance with provisions of Title 31 of the District of Columbia Municipal Regulations (DCMR). This policy consists of the following parts:

A. Contact with Public Vehicle for Hire Drivers
B. Traffic Stops
C. Traffic Stop Procedures

### Contact with Pubic Vehicle for Hire Operator and Public Vehicle For Hire

Contact may be initiated by a Hack Inspector in two instances: 1) to conduct a vehicle inspection in the field to determine whether the vehicle is safe for public transport, the driver is legally licensed to operate as an operator of a Public Vehicle for Hire, and all legally required documents are in order *(See G.O # 2)* and 2) when he/she has reasonable cause to believe that a driver of a moving Pubic Vehicle for Hire (Taxi or Limousine) is in violation of a specific provision of the Title 31:

The Hack Inspector may also make contact if:

• Flagged down by a consumer/customer in the field.

• When the Hack Inspector is contacted by any Law Enforcement Agency for support in a situation involving a Taxi/ Limo Driver.

• When Hack Inspector is assisting Law Enforcement in routine safety checks.

• Directed by DC Taxicab Commission

1

**Traffic Stop**

• A traffic stop is initiated when a Hack Inspector has reasonable cause to believe that a public vehicle for hire operator is in violation of a specific provision of Title 31 of DCMR, examples include, but are not Limited to, observation of a refusal to haul, loitering, observing a driver on the telephone without a hands free system.

• Reasonable Cause is a combination of specific facts and circumstances which would lead a reasonable person (Hack Inspector) to believe that the pubic vehicle operator or public vehicle for hire is in violation of a specific provision of Title 31 of the DCMR.

**Procedures for Conducting a Traffic Stop**

- Pull behind suspected vehicle in violation and TURN ON RED/BLUE emergency lights
- Indicate to the driver that you want him/ her to safely pull out of traffic
- Pull DCTC official vehicle behind suspected vehicle. The DCTC vehicle should be at least one full Car length behind and pointed toward the roadway.
- Contact Citywide dispatch to inform them of your whereabouts and the nature of your call.
- Have dispatch run the vehicle Tag Number to see if there are any scofflaws present.
- Exit DCTC official vehicle and walk towards the driver's side of the vehicle in question. Also for safety reasons, TOUCH either the rear tail lamp or window to leave a fingerprint.
- STOP at the "B" Pillar of the suspect vehicle and state your Name, Agency and the reason the vehicle was instructed to pull over.
- Instruct the driver to turn the engine off and remove the keys from the ignition, to prevent danger of fleeing.
- Instruct the driver to remain in the vehicle unless instructed otherwise.
- Gather Driver/Vehicle information: Driver's License, Face ID, Vehicle DCTC and Registration, current proof of Insurance, and Manifest.
- Hack Inspector should never stand in front of the alleged violator's vehicle
- Walk back to DCTC official vehicle with all documents.
- Scan Drivers License into Handheld ticketing device.
- If scofflaw alerts come up, notify MPD for instructions
- Ascertain whether the suspected violation in fact occurred and, if other violations are apparent issue violation notices to driver.
- If no violations are found all documents are returned to the driver.
- If the driver becomes combative, the lead Inspector is contacted for assistance. If necessary, Citywide dispatch is also contacted.

# Exhibit 5

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**

**ADMINISTRATIVE ISSUANCE SYSTEM**

Mayor's Order 2007-231
October 17, 2007

**SUBJECT:**    Delegation of Authority to the D.C. Taxicab Commission

**ORIGINATING AGENCY:**   Office of the Mayor

By virtue of the authority vested in me as Mayor of the District of Columbia by section 422(6) of the District of Columbia Home Rule Act of 1973, as amended, 87 Stat. 790, P. L. No. 93-198, D.C. Official Code § 1-204.22(6), and pursuant to section 105(a) of the 2005 District of Columbia Omnibus Authorization Act, approved October 16, 2006, 120 Stat. 2023, D.C. Official Code § 50-381(a) (2007 Supp.), it is hereby **ORDERED** that:

1.    The Chairman of the D.C. Taxicab Commission is delegated the Mayor's authority to implement the new time and distance metered taxicab system for the District of Columbia.

2.    The Chairman shall immediately implement the new time and distance meter system in all taxicabs licensed to operate in the District of Columbia.

3.    **EFFECTIVE DATE:** This Order shall become effective immediately.

ADRIAN M. FENTY
**MAYOR**

ATTEST:
STEPHANIE D. SCOTT
**SECRETARY OF THE DISTRICT OF COLUMBIA**

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**

**ADMINISTRATIVE ISSUANCE SYSTEM**

Mayor's Order 2007-231
October 17, 2007

**SUBJECT:**   Delegation of Authority to the D.C. Taxicab Commission

**ORIGINATING AGENCY:**   Office of the Mayor

By virtue of the authority vested in me as Mayor of the District of Columbia by section 422(6) of the District of Columbia Home Rule Act of 1973, as amended, 87 Stat. 790, P. L. No. 93-198, D.C. Official Code § 1-204.22(6), and pursuant to section 105(a) of the 2005 District of Columbia Omnibus Authorization Act, approved October 16, 2006, 120 Stat. 2023, D.C. Official Code § 50-381(a) (2007 Supp.), it is hereby **ORDERED** that:

1.    The Chairman of the D.C. Taxicab Commission is delegated the Mayor's authority to implement the new time and distance metered taxicab system for the District of Columbia.

2.    The Chairman shall immediately implement the new time and distance meter system in all taxicabs licensed to operate in the District of Columbia.

3.    **EFFECTIVE DATE:** This Order shall become effective immediately.

ADRIAN M. FENTY
**MAYOR**

**ATTEST:**

STEPHANIE D. SCOTT
**SECRETARY OF THE DISTRICT OF COLUMBIA**

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**

**ADMINISTRATIVE ISSUANCE SYSTEM**

Mayor's Order 2009-104
June 15, 2009

**SUBJECT:**   Delegation of Authority to the D.C. Taxi Commission to Review and Adjust
Rates for Time and Distance Metered Taxicab System

**ORIGINATING AGENCY:**   Office of the Mayor

By virtue of the authority vested in me as Mayor of the District of Columbia by section 422(6) of
the District of Columbia Home Rule Act, as amended, 87 Stat. 790, Pub. L. No. 93-198, D.C.
Official Code § 1-204.22(6) (2006 Repl.), and pursuant to section 105(a) of the 2005 District of
Columbia Omnibus Authorization Act ("Omnibus Act"), approved October 16, 2006, 120 Stat.
2023, D.C. Official Code § 50-381(a) (2008 Supp.), it is hereby **ORDERED** that:

1.   The D.C. Taxicab Commission ("Commission") is delegated the Mayor's authority to
review and adjust rates necessary for the implementation of the time and distance
metered taxicab system for the District of Columbia ("rate making") in accordance
with the D.C. Administrative Procedures Act ("DCAPA"), effective October 21,
1968, 82 Stat. 1206, D.C. Official Code § 2-505 (2006 Repl.), provided that the
Commission:

   a.   May not implement more than one rate increase per year.  Nor may the
Commission implement any single increase of more than 5% without the prior
approval of the Mayor;

   b.   May not establish any additional charge beyond the fare rate (including, but
not limited to a fuel surcharge or fee for group or shared rides) without the
prior approval of the Mayor;

   c.   When making rate adjustments, sets rates to the nearest increment that can be
programmed into the taximeters at an integer value; and

   d.   Complies with procedures and criteria for rate making as established by the
Chairperson of the Commission ("Chairperson").

2.   In accordance with Mayor's Order 2007-231, the Chairperson retains the Mayor's
delegated authority to establish the procedures and criteria for rate making through
rulemaking in accordance with the DCAPA.

3.   Any provision in Mayor's Order 2007-231 that is inconsistent with this Order is
hereby rescinded.

4.  The Mayor has discretion to re-delegate his authority under the Omnibus Act by any subsequent Mayor's Order.

5.  **EFFECTIVE DATE:**  This Order shall become effective on June 15, 2009.

ADRIAN M. FENTY
**MAYOR**

ATTEST: _____
STEPHANIE D. SCOTT
**SECRETARY OF THE DISTRICT OF COLUMBIA**

## GOVERNMENT OF THE DISTRICT OF COLUMBIA

## ADMINISTRATIVE ISSUANCE SYSTEM

Mayor's Order 2011-64
March 25, 2011

**SUBJECT:**     Delegation of Authority to the Chairperson of the D.C. Taxicab Commission to establish a fuel surcharge

**ORIGINATING AGENCY:**   Office of the Mayor

By virtue of the authority vested in me as Mayor of the District of Columbia by section 422(6) of the District of Columbia Home Rule Act, 87 Stat. 790, Pub. L. No. 93-198, D.C. Official Code § 1-204.22(6) (2006 Repl.), and pursuant to section 105(a) of the 2005 District of Columbia Omnibus Authorization Act ("Omnibus Act"), approved October 16, 2006, 120 Stat. 2023, D.C. Official Code § 50-381(a) (2010 Supp.), it is hereby **ORDERED** that:

1. Notwithstanding section 1(b) of Mayor's Order 2009-104, dated June 15, 2009, the Chairperson of the District of Columbia Taxicab Commission is delegated the authority to establish a fuel surcharge.

2. This Order supersedes all prior Mayor's Orders to the extent of any inconsistency therein.

3. **EFFECTIVE DATE:**  This Order shall become effective immediately.

VINCENT C. GRAY
MAYOR

ATTEST:
CYNTHIA BROCK-SMITH
ACTING SECRETARY OF THE DISTRICT OF COLUMBIA

## GOVERNMENT OF THE DISTRICT OF COLUMBIA

### ADMINISTRATIVE ISSUANCE SYSTEM

Mayor's Order 2011-64
March 25, 2011

**SUBJECT:** Delegation of Authority to the Chairperson of the D.C. Taxicab Commission to establish a fuel surcharge

**ORIGINATING AGENCY:** Office of the Mayor

By virtue of the authority vested in me as Mayor of the District of Columbia by section 422(6) of the District of Columbia Home Rule Act, 87 Stat. 790, Pub. L. No. 93-198, D.C. Official Code § 1-204.22(6) (2006 Repl.), and pursuant to section 105(a) of the 2005 District of Columbia Omnibus Authorization Act ("Omnibus Act"), approved October 16, 2006, 120 Stat. 2023, D.C. Official Code § 50-381(a) (2010 Supp.), it is hereby **ORDERED** that:

1. Notwithstanding section 1(b) of Mayor's Order 2009-104, dated June 15, 2009, the Chairperson of the District of Columbia Taxicab Commission is delegated the authority to establish a fuel surcharge.

2. This Order supersedes all prior Mayor's Orders to the extent of any inconsistency therein.

3. **EFFECTIVE DATE:** This Order shall become effective immediately.

VINCENT C. GRAY
MAYOR

ATTEST:
CYNTHIA BROCK-SMITH
ACTING SECRETARY OF THE DISTRICT OF COLUMBIA

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**

**ADMINISTRATIVE ISSUANCE SYSTEM**

Mayor's Order 2011-116
July 11, 2011

**SUBJECT:**  Delegation of Authority to the Chairperson of the D.C. Taxicab Commission to amend or increase taxi fare rates and charges

**ORIGINATING AGENCY:**  Office of the Mayor

By virtue of the authority vested in me as Mayor of the District of Columbia by section 422(6) of the District of Columbia Home Rule Act, 87 Stat. 790, Pub. L. No. 93-198, D.C. Official Code § 1-204.22(6) (2006 Repl.), and pursuant to section 105 of the 2005 District of Columbia Omnibus Authorization Act ("Omnibus Act"), approved October 16, 2006, 120 Stat. 2023, D.C. Official Code § 50-381 (2010 Supp.), it is hereby **ORDERED** that:

1. Notwithstanding section 1 of Mayor's Order 2009-104, dated June 15, 2009, the Chairperson of the District of Columbia Taxicab Commission is delegated the authority to amend or increase taxi fare rates and charges.

2. This Order supersedes all prior Mayor's Orders to the extent of any inconsistency therein.

3. **EFFECTIVE DATE:**  This Order shall become effective immediately.

_VINCENT C. GRAY_
VINCENT C. GRAY
MAYOR

ATTEST: _Cynthia Brock-Smith_
CYNTHIA BROCK-SMITH
SECRETARY OF THE DISTRICT OF COLUMBIA

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**

**ADMINISTRATIVE ISSUANCE SYSTEM**

Mayor's Order 2011-116
July 11, 2011

**SUBJECT:**   Delegation of Authority to the Chairperson of the D.C. Taxicab Commission to amend or increase taxi fare rates and charges

**ORIGINATING AGENCY:**   Office of the Mayor

By virtue of the authority vested in me as Mayor of the District of Columbia by section 422(6) of the District of Columbia Home Rule Act, 87 Stat. 790, Pub. L. No. 93-198, D.C. Official Code § 1-204.22(6) (2006 Repl.), and pursuant to section 105 of the 2005 District of Columbia Omnibus Authorization Act ("Omnibus Act"), approved October 16, 2006, 120 Stat. 2023, D.C. Official Code § 50-381 (2010 Supp.), it is hereby **ORDERED** that:

1. Notwithstanding section 1 of Mayor's Order 2009-104, dated June 15, 2009, the Chairperson of the District of Columbia Taxicab Commission is delegated the authority to amend or increase taxi fare rates and charges.

2. This Order supersedes all prior Mayor's Orders to the extent of any inconsistency therein.

3. **EFFECTIVE DATE:**  This Order shall become effective immediately.

VINCENT C. GRAY
MAYOR

ATTEST:
CYNTHIA BROCK-SMITH
SECRETARY OF THE DISTRICT OF COLUMBIA

# Exhibit 6

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

D.C. PROFESSIONAL TAXI DRIVERS }
ASSOCIATION, INC. }
2417 Evarts Street, NE }
Washington, DC 20018 }
    Plaintiff, }
 
    v. }
 
THE DISTRICT OF COLUMBIA }
441 Fourth Street, NW }
Washington, DC 20001 }
    Defendant. }

Civil Action No.  06-0001587

Serve:  Robert Spagnoletti
    Attorney General
    441 4th Street, NW
    6th Floor
    Washington, DC 20001

    Mayor Anthony Williams }
    Office of the Secretary }
    1350 Pennsylvania Avenue, NW }
    Washington, DC 20002 }

*FILED CIVIL ACTIONS BRANCH MAY 01 2006 Superior Court of the District of Columbia Washington, D.C.*

### COMPLAINT

1.    Jurisdiction of this court is founded on D.C. Code § 11-921.

2.    Plaintiff D.C Professional Taxi Driver's Association, Inc. ("Association") is a not-for-profit District of Columbia Corporation comprised of members licensed to operate taxicabs in the District of Columbia.

3.    The members reside in the Washington Metropolitan Area, including locations in Maryland and Virginia.

4.    Defendant District of Columbia government, through it Department of Motor Vehicles ("DMV"), instituted a policy to restrict or deny the registration of a vehicle as a taxicab solely because the owner of the vehicle is not a District resident.


Case: 2006 CA 001587 B

5.      The Director of DMV has stated that she will enforce this policy effective March

1, 2006.

6.      The policy is unlawful and must be stopped.

**WHEREFORE**, Plaintiff respectfully prays that this Court enter a temporary restraining

order and preliminary injunction to enjoin the Defendant's unlawful conduct.


                                    Respectfully submitted,


                                    _____
                                    George W. Crawford (D.C. Bar No. 311639)
                                    Law Office of George W. Crawford
                                    2302 First Street, N.W.
                                    Washington, DC 20001
                                    (202) 387-0868

March 1, 2006

                                    COUNSEL FOR PLAINTIFF
                                    D.C. PROFESSIONAL TAXI DRIVERS
                                    ASSOCIATION, INC.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Division

D.C. PROFESSIONAL TAXI DRIVERS
ASSOCIATION, INC.
2417 Evarts Street, N.E.
Washington, D.C. 20018

and

BABF O. OGUNJIMI
10151 Ridgeline Drive
Gaithersburg, Maryland 20886            Civil Action No.: 06-0001587

and

MAHMAND M. YUNUS
3028 Fordson Court
Alexandria, Virginia 22306

        Plaintiffs,

v.

THE DISTRICT OF COLUMBIA
441 Fourth Street, N.W.
Washington, D.C. 20001

*Agencies:*

THE DISTRICT OF COLUMBIA
DEPARTMENT OF TRANSPORTATION
2000 14th Street, N.W.
6th Floor
Washington, D.C. 20009

and

THE DISTRICT OF COLUMBIA
DEPARTMENT OF MOTOR VEHICLES
301 C Street, N.W.
Washington, D.C. 20001



FILED
CIVIL ACTIONS BRANCH
APR 25 2006
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC



and

THE DISTRICT OF COLUMBIA TAXICAB
COMMISSION
2041 Martin Luther King Avenue, S.E.
Suite 204
Washington, D.C.  20020

          Defendant.

<u>Serve on</u>:

Mayor Anthony Williams
Office of the Secretary
1350 Pennsylvania Avenue, N.W.
Washington, D.C.  20002

and

Robert Spagnoletti, Esq.
Office of the Attorney General
441 Fourth Street, N.W.
Sixth Floor
Washington, D.C.  20001
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

## <u>AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, DAMAGES, AND FOR INJUNCTIVE RELIEF</u>

      COME NOW Plaintiffs, D.C. Professional Taxi Drivers Association, Inc., Babf O.

Ogunjimi, and Mahmand M. Yunus, by and through their attorney, Horace L. Bradshaw,

sue Defendant, The District of Columbia, by and through the actions of it's agencies: The

District of Columbia Department of Transportation, The District of Columbia

Department of Motor Vehicles, and The District of Columbia Taxicab Commission, and

for grounds state:

1.  That this is an action for damages, declaratory judgment, and preliminary and permanent injunctive relief brought pursuant to Sup.Ct.R. 65.

2.  That Plaintiffs' request for declaratory judgment is for the purpose of determining a question of actual controversy between the parties, as hereinafter more fully appears.

3.  That Plaintiff, D.C. Professional Taxi Drivers Association, Inc. (hereinafter "the Association"), is a non-profit corporation duly organized and existing under the laws of the District of Columbia, with its principal offices located in the District of Columbia.  It is in the business of aiding, representing, and advising all professional taxi drivers licensed to do business within the District by said Defendant, the District of Columbia.

4.  That Plaintiff, Babf O. Ogunjimi, is a resident of the State of Maryland.  He owns and operates, as a sole proprietor, a taxicab licensed by Defendant to do business within the geographical boundaries of the said District of Columbia.

5.  That Plaintiff, Mahmand M. Yunus, is a resident of the State of Virginia.  He owns and operates, as a sole proprietor, a taxicab licensed by Defendant to do business within the geographical boundaries of the said District of Columbia.

6.  That Defendant, the District of Columbia (hereinafter "the District"), is a public governmental entity established under the laws of The United States of America, and liable to be sued in its own name.  It is in the business of formulating and executing public laws and policies for the governance of its citizens and members the general public throughout its jurisdiction.

3

4

7.  The District of Columbia Department of Transportation, is a governmental agency established under the laws of the District of Columbia.  It is in the business of implementing and/or executing public laws and/or policies formulated by Defendant, The District of Columbia, or one or more of its agencies, for the regulation of motor vehicles and all other like transportation matters in regard to the citizens of the District of Columbia and members of the general public throughout its jurisdiction.

8.  The District of Columbia Department of Motor Vehicles, is a governmental agency established under the laws of the District of Columbia.  It is in the business of implementing and/or executing public laws and/or policies formulated by Defendant, The District of Columbia, or one or more of its agencies, for the regulation of motor vehicles and related transportation matters in regard to the citizens of the District of Columbia and members of the general public throughout its jurisdiction.

9.  The District of Columbia Taxicab Commission, is a governmental agency established under the laws of the District of Columbia.  It is in the business of implementing and/or executing public laws and/or policies formulated by Defendant, The District of Columbia, or one or more of its agencies, for the regulation, licensing, and registration of all taxicabs and taxicab drivers licensed by Defendant, The District of Columbia, to do business within the boundaries of the District of Columbia.

10.  That the Association's members reside in the Washington metropolitan area, and also in the States of Maryland and Virginia.  Further, many of its members own and operate their taxicabs as sole proprietors, with all said vehicles being subject to the

statutory licensing and registration requirements of Defendant, the District of Columbia.

11. That D.C. Code, section 50-1501.02, states as follows, in pertinent part:

> "(a) Except as provided by 50-1401.02, any motor vehicle or trailer operated in the District of Columbia shall be registered with the Department of Transportation by the owner of that motor vehicle or trailer."

12. That, however, on April 27, 2001, Defendant, the District of Columbia, pursuant to its passage of D.C. Law 13-289, also added subsection c(5) to the statute, with said amendment stating as follows:

> "(c) The Mayor shall issue a valid registration certificate and identification tags or tags for a motor vehicle or trailer if the owner: ...
>
> *(5) Is domiciled in the District of Columbia;* except that the person need not be domiciled in the District of Columbia if:
>
> (A)(i) The owner is a partnership, corporation, association, or government entity;
>
> (ii) The vehicle is housed in the District of Columbia;
>
> (iii) The vehicle is provided to an employee of the owner for his or her use;
>
> (iv) The employee is domiciled in the District of Columbia;
>
> (v) The owner submits an affidavit affirming compliance with this paragraph and agreeing that the address on the registration certificate and in the Department of the

5

Motor Vehicles' records shall be the address
of the operator and that the employees' ad-
dress shall be considered the owner's address
for the purpose of sending any notices require-
ed by any statute or regulation for that vehicle.
[... or;]

(C) The owner is a lessor and the vehicle
is leased to a person domiciled in the District
of Columbia."  [Emphasis added.]

13.  That as the foregoing amendment (which Defendant, through its said

Department of Transportation, Department of Motor Vehicles, and Taxicab Commission

(hereinafter Defendant's "agencies")) began implementing on March 1, 2006) plainly

provides, therefore, that any owner who operates his or her cab must also be *domiciled* in

the District of Columbia in order for Defendant to issue a registration certificate to said

vehicle owner, then said amendment has had the direct and intended effect of rendering

Plaintiffs ineligible to obtain vehicle registration certificates for any newly obtained

taxicabs acquired by any said Plaintiff on or after the said March 1, 2006  implementation

date.

14.  That, therefore, and clearly, Defendant, the District of Columbia, through its

said agencies, has deliberately and willfully instituted, pursuant to the foregoing

amendment, a policy of denying to Plaintiffs, who own and operate taxicabs in the

District of Columbia, the right and ability to register any newly obtained vehicles as

taxicabs solely because said Plaintiffs are not domiciled in the District of Columbia.

15.  That, however, the said policy, as stated and enunciated by the foregoing

6

section 50-1501(c)(5), is clearly unconstitutional, and Plaintiffs, as a direct result of its

implementation by Defendant, have suffered, and continue to suffer, severe damages.

## COUNT I
### (Violation of 42 U.S.C. Section 1983 - Privileges and Immunities)

16.  COME NOW Plaintiffs, D.C. Professional Taxi Drivers Association, Inc.,

Babf O. Ogunjimi, and Mahmand M. Yunus, by and through their attorney, Horace L.

Bradshaw, sue Defendants, The District of Columbia, The District of Columbia

Department of Transportation, The District of Columbia Department of Motor Vehicles,

and The District of Columbia Taxicab Commission, and hereby recite and incorporate all

of the aforegoing paragraphs, as fully as if made originally, and they further state:

17.  That at all times pertinent hereto, Defendant and its said agencies acted under

color and pretense of law, and under color of statutes, customs and usages of said

Defendant, the District of Columbia.

18.  That by illegally barring Plaintiffs from obtaining their said registration

certificates for all newly acquired taxicabs, solely because Plaintiffs are not domiciled in

the District of Columbia, Defendants have unlawfully deprived Plaintiffs of the rights,

privileges and immunities guaranteed to Plaintiffs under Art. IV, Sec. 2 of the United

States Constitution.

19.  That as a direct and proximate result of Defendants' conduct and actions,

Plaintiffs have suffered damages by being unlawfully and entirely prohibited from

pursuing their employment, and have suffered, and will continue to suffer, loss of

7

income, severe emotional anguish, and other damages.

WHEREFORE, Plaintiffs, D.C. Professional Taxi Drivers Association, Inc., Babf O. Ogunjimi, and Mahmand M. Yunus demand judgment against Defendants, The District of Columbia, The District of Columbia Department of Transportation, The District of Columbia Department of Motor Vehicles, and The District of Columbia Taxicab Commission, in the amount of One-Million Dollars ($1,000,000.00) in compensatory damages, plus interest at the rate of six percent (6%) from the March 1, 2006 date of implementation by Defendants of their said policy to the date of judgment, attorney fees in the amount of One-Hundred Thousand Dollars ($100,000.00), costs, and all such other and further relief as this Honorable Court deems just and proper.

## COUNT II
### (Violation of the Fourteenth Amendment's Equal Protection Clause)

20.  COME NOW Plaintiffs, D.C. Professional Taxi Drivers Association, Inc., Babf O. Ogunjimi, and Mahmand M. Yunus, by and through their attorney, Horace L. Bradshaw, sue Defendants, The District of Columbia, The District of Columbia Department of Transportation, The District of Columbia Department of Motor Vehicles, and The District of Columbia Taxicab Commission, and hereby recite and incorporate all of the aforegoing paragraphs as fully as if made again originally, and they further state:

21.  That by illegally barring Plaintiffs from obtaining their said registration certificates for any newly acquired taxicabs, solely because Plaintiffs are not domiciled in the District of Columbia, Defendants have unlawfully denied Plaintiffs equal protection

8

of law in violation of the Fourteenth Amendment of the United States Constitution.

22. That as a direct and proximate result of Defendants' conduct and actions, Plaintiffs have suffered damages by being unlawfully and entirely prohibited from pursuing their employment, and have suffered, and will continue to suffer, loss of income, severe emotional anguish, and other damages.

WHEREFORE, Plaintiffs, D.C. Professional Taxi Drivers Association, Inc., Babf O. Ogunjimi, and Mahmand M. Yunus demand judgment against Defendants, The District of Columbia, The District of Columbia Department of Transportation, The District of Columbia Department of Motor Vehicles, and The District of Columbia Taxicab Commission, in the amount of One-Million Dollars ($1,000,000.00) in compensatory damages, plus interest at the rate of six percent (6%) from the March 1, 2006 date of implementation by Defendants of their said policy to the date of judgment, attorney fees in the amount of One-Hundred Thousand Dollars ($100,000.00), costs, and all such other and further relief as this Honorable Court deems just and proper.

## COUNT III
### (Violation of Plaintiffs' Property Interests Under The Fifth Amendment)

23. COME NOW Plaintiffs', D.C. Professional Taxi Drivers Association, Inc., Babf O. Ogunjimi, and Mahmand M. Yunus, demand judgment against Defendants, The District of Columbia, The District of Columbia Department of Transportation, The District of Columbia Department of Motor Vehicles, and The District of Columbia Taxicab Commission, and hereby recite and incorporate all of the aforegoing paragraphs

9

as fully as if made again originally, and they further state:

24. That by illegally barring Plaintiffs from obtaining their said registration certificates for any newly acquired taxicabs, solely because Plaintiffs are not domiciled in the District of Columbia, Plaintiffs have been *unlawfully* denied said certificates in violation of the Fifth Amendment by virtue of the fact that Plaintiffs have a constitutionally protected property interest in said registration certificates.

25. That this property interest is found in Plaintiffs' right not to be illegally deprived of any licensing and/or registrations necessary for Plaintiffs to pursue their lawful trade and employments.

26. That as a direct and proximate result of Defendants' conduct and actions, Plaintiffs have suffered damages by being unlawfully and entirely prohibited from pursuing their employment, and have suffered, and will continue to suffer, loss of income, severe emotional anguish, and other damages.

WHEREFORE, Plaintiffs, D.C. Professional Taxi Drivers Association, Inc., Babf O. Ogunjimi, and Mahmand M. Yunus demand judgment against Defendants, The District of Columbia, The District of Columbia Department of Transportation, The District of Columbia Department of Motor Vehicles, and The District of Columbia Taxicab Commission, in the amount of One-Million Dollars ($1,000,000.00) in compensatory damages, plus interest at the rate of six percent (6%) from the March 1, 2006 date of implementation by Defendants of their said policy to the date of judgment, attorney fees in the amount of One-Hundred Thousand Dollars ($100,000.00), costs, and

10

all such other and further relief as this Honorable Court deems just and proper.

## COUNT IV
### (Violation of Plaintiffs' Liberty Interests Under The Fifth Amendment)

27. COME NOW Plaintiffs', D.C. Professional Taxi Drivers Association, Inc., Babf O. Ogunjimi, and Mahmand M. Yunus, demand judgment against Defendants, The District of Columbia, The District of Columbia Department of Transportation, The District of Columbia Department of Motor Vehicles, and The District of Columbia Taxicab Commission, and hereby recite and incorporate all of the aforegoing paragraphs as fully as if made again originally, and they further state:

28. That by illegally barring Plaintiffs from obtaining their said registration certificates for any newly acquired taxicabs, solely because Plaintiffs are not domiciled in the District of Columbia, Plaintiffs have been *unlawfully* denied said certificates in violation of the Fifth Amendment by virtue of the fact that Plaintiffs have a constitutionally protected liberty interest in said registration certificates.

29. That this liberty interest is found in Plaintiffs' right not to be illegally prohibited from pursuing their lawful trade and employments.

30. That as a direct and proximate result of Defendants' conduct and actions, Plaintiffs have suffered damages by being unlawfully and entirely prohibited from pursuing their employment, and have suffered, and will continue to suffer, loss of income, severe emotional anguish, and other damages.

WHEREFORE, Plaintiffs, D.C. Professional Taxi Drivers Association, Inc.,

11

Babf O. Ogunjimi, and Mahmand M. Yunus demand judgment against Defendants,

The District of Columbia, The District of Columbia Department of Transportation,

The District of Columbia Department of Motor Vehicles, and The District of Columbia

Taxicab Commission, in the amount of One-Million Dollars ($1,000,000.00) in

compensatory damages, plus interest at the rate of six percent (6%) from the March 1,

2006 date of implementation by Defendants of their said policy to the date of judgment,

attorney fees in the amount of One-Hundred Thousand Dollars ($100,000.00), costs, and

all such other and further relief as this Honorable Court deems just and proper.

### COUNT V
### (Tortious Interference With Prospective Advantage)

31. COME NOW Plaintiffs, D.C. Professional Taxi Drivers Association, Inc.,

Babf O. Ogunjimi, and "Mahmand M. Younus", by and through their attorney, Horace L.

Bradshaw, sue Defendants, The District of Columbia, The District of Columbia

Department of Transportation, The District of Columbia Department of Motor Vehicles,

and The District of Columbia Taxicab Commission, and hereby recite and incorporate all

of the aforegoing paragraphs, as fully as if made again originally, and they further state:

32. That the conduct of Defendants in passing into law and implementing the

aforesaid D.C. Code, section 50-1501(c)(5), was intentional, willful, and calculated to

cause damage to Plaintiffs' lawful business. The conduct of said Defendants was

perpetrated with the intentional and wholly improper purpose of depriving Plaintiffs of

their livelihoods, and was without justifiable cause.

12

33. That as a direct result of the conduct of Defendants, Plaintiffs have been rendered incapable of conducting their lawful business.

34. That as the direct and proximate result of Defendants' conduct and actions, Plaintiffs have suffered, and will continue to suffer, lost profits, severe emotional anguish, and other consequential damages.

WHEREFORE, Plaintiffs, D.C. Professional Taxi Drivers Association, Inc., Babf O. Ogunjimi, and "Joseph Smith" demand judgment against Defendants, The District of Columbia, The District of Columbia Department of Transportation, The District of Columbia Department of Motor Vehicles, and The District of Columbia Taxicab Commission, in the amount of One-Million Dollars ($1,000,000.00) in compensatory damages, Five-Million Dollars ($5,000,000.00) in punitive damages, plus interest at the rate of six percent (6%) from the March 1, 2006 date of implementation by Defendants of their said policy to the date of judgment, attorney fees in the amount of One-Hundred Thousand Dollars ($100,000.00), costs, and all such other and further relief as this Honorable Court deems just and proper.

## COUNT VI
### (Unlawful Restraint of Trade)

35. COME NOW Plaintiffs', D.C. Professional Taxi Drivers Association, Inc., Babf O. Ogunjimi, and Mahmand M. Yunus, demand judgment against Defendants, The District of Columbia, The District of Columbia Department of Transportation, The District of Columbia Department of Motor Vehicles, and The District of Columbia

13

Taxicab Commission, and hereby recite and incorporate all of the aforegoing paragraphs as fully as if made again originally, and they further state:

36. That by illegally barring Plaintiffs from obtaining their said registration certificates for any newly acquired taxicabs, solely because Plaintiffs are not domiciled in the District of Columbia, Plaintiffs have been *unlawfully* denied said registration certificates in violation of sections 1 and 2 of the Sherman Anti-Trust Act and D.C. Code section 28-4508.

37. That Defendants' exclusion of Plaintiffs and of all other out-of state taxicab owner/operators and/or sole proprietorships of the previously independent taxicab system and previously independent taxicab sole proprietorships from doing business within the boundaries of the District of Columbia constitutes an unlawful acquisition of *de jure* and *de facto* control by Defendants of said previously independent taxicab businesses.

38. That Defendants' said *de jure* and *de facto* control constitutes a violation of the Sherman Act because it results in the exclusion of Plaintiffs and all other all out-of-state residents from doing business within the boundaries of the District of Columbia, and denies to said Plaintiffs the opportunity to obtain newly acquired taxicabs and thereby do business in a free competitive market.

39. That the fact that all said Defendants may be regarded as a vertically integrated entity does not prevent a finding of an unlawful restraint of trade.

40. That as a direct and proximate result of Defendants' conduct and actions, Plaintiffs have suffered damages by being unlawfully and entirely prohibited from pursuing their employment, and have suffered, and will continue to suffer, loss of

i 4

income, severe emotional anguish, and other damages.

WHEREFORE, Plaintiffs, D.C. Professional Taxi Drivers Association, Inc.,

Babf O. Ogunjimi, and Mahmand M. Yunus demand judgment against Defendants,

The District of Columbia, The District of Columbia Department of Transportation,

The District of Columbia Department of Motor Vehicles, and The District of Columbia

Taxicab Commission, in the amount of One-Million Dollars ($1,000,000.00) in

compensatory damages, Five-Million Dollars ($5,000,000.00) in punitive damages, treble

damages, pursuant to D.C. Code, section 28-4508, in the amount of Fifteen Million

Dollars ($15,000,000.00), plus interest at the rate of six percent (6%) from the March 1,

2006 date of implementation by Defendants of their said policy to the date of judgment,

attorney fees in the amount of One-Hundred Thousand Dollars ($100,000.00), costs, and

all such other and further relief as this Honorable Court deems just and proper.

## COUNT VII
### (Breach of Duty of Good Faith and Fair Dealing)

41.  COME NOW Plaintiffs, D.C. Professional Taxi Drivers Association, Inc.,

Babf O. Ogunjimi, and Mahmand M. Yunus, by and through their attorney, Horace L.

Bradshaw, sue Defendants, The District of Columbia, The District of Columbia

Department of Transportation, The District of Columbia Department of Motor Vehicles,

and The District of Columbia Taxicab Commission, and hereby recite and incorporate all

of the aforegoing paragraphs, as fully as if made again originally, and they further state:

42.  That part and parcel of Defendants' granting to Plaintiffs of all said

15

registration certificates and licenses to do business within the boundaries of the District of Columbia is a duty of good faith and fair dealing.

43. That incumbent in said covenant was a good faith duty on the part of Defendants not to unlawfully, illegally, and without just cause abrogate Plaintiffs' right and ability to pursue their lawful trade and employment.

44. That, however, Defendants did, in fact, violate their said good faith duty by unlawfully, illegally, and without just cause terminating Plaintiffs' right and ability to pursue their lawful trade and employment.

45. That, as a result, and as a direct and proximate result of Defendants' violation of their said duty of good faith and fair dealing, Plaintiffs have incurred damages.

46. That as the direct and proximate result of Defendants' conduct and actions, Plaintiffs have suffered, and will continue to suffer, lost profits, severe emotional anguish, and other consequential damages.

WHEREFORE, Plaintiffs, D.C. Professional Taxi Drivers Association, Inc., Babf O. Ogunjimi, and Mahmand M. Yunus demand judgment against Defendants, The District of Columbia, The District of Columbia Department of Transportation, The District of Columbia Department of Motor Vehicles, and The District of Columbia Taxicab Commission, in the amount of One-Million Dollars ($1,000,000.00) in compensatory damages, Five-Million Dollars ($5,000,000.00) in punitive damages, plus interest at the rate of six percent (6%) from the March 1, 2006 date of implementation by Defendants of their said policy to the date of judgment, attorney fees in the amount of

16

One-HundredThousand Dollars ($100,000.00), costs, and all such other and further relief as this Honorable Court deems just and proper.

## COUNT VIII
### (Equitable Estoppel)

47.  COME NOW Plaintiffs, D.C. Professional Taxi Drivers Association, Inc., Babf O. Ogunjimi, and Mahmand M. Yunus, by and through their attorney, Horace L. Bradshaw, sue Defendants, The District of Columbia, The District of Columbia Department of Transportation, The District of Columbia Department of Motor Vehicles, and The District of Columbia Taxicab Commission, and hereby recite and incorporate all of the aforegoing paragraphs, as fully as if made again originally, and they further state:

48.  That Plaintiffs relied upon Defendants not to unlawfully abrogate their right and ability to pursue their lawful trade and employment, and Plaintiffs were justified in their reliance.

49.  That Plaintiffs, as a direct result of their said justified reliance, suffered damages.

50.  That as the direct and proximate result of Defendants' conduct and actions, Plaintiffs have suffered, and will continue to suffer, lost profits, severe emotional anguish, and other consequential damages.

WHEREFORE, Plaintiffs, D.C. Professional Taxi Drivers Association, Inc., Babf O. Ogunjimi, and Mahmand M. Yunus demand judgment against Defendants, The District of Columbia, The District of Columbia Department of Transportation, The

17

District of Columbia Department of Motor Vehicles, and The District of Columbia

Taxicab Commission, in the amount of One-Million Dollars ($1,000,000.00) in

compensatory damages, plus interest at the rate of six percent (6%) from the March 1,

2006 date of implementation by Defendants of their said policy to the date of judgment,

attorney fees in the amount of One-Hundred Thousand Dollars ($100,000.00), costs, and

all such other and further relief as this Honorable Court deems just and proper.

### COUNT IX
#### (Declaratory Judgment)

51.  COME NOW Plaintiffs, D.C. Professional Taxi Drivers Association, Inc,

Babf O. Ogunjimi, and Mahmand M. Yunus, by and through their attorney, Horace L.

Bradshaw, sue Defendants, The District of Columbia, The District of Columbia

Department of Transportation, The District of Columbia Department of Motor Vehicles,

and The District of Columbia Taxicab Commission, and hereby recite and incorporate all

of the aforegoing paragraphs, as fully as if made originally, and they further state:

52.  That there exists an actual controversy of a justiciable issue between Plaintiffs

and Defendants within the jurisdiction of this Court, involving the rights and liabilities of

the said parties.

53.  That antagonistic claims are present between the parties.  These issues indicate

imminent and inevitable litigation.

54.  That a declaratory judgment by this Court will terminate this controversy.

WHEREFORE, Plaintiffs demand:

18

1. That this Court determine and adjudicate the rights and liabilities of the parties with respect to the right of Plaintiffs to pursue their lawful business within the boundaries of the District of Columbia with no further interference from said Defendants;

2. That this Court determine that Defendants, The District of Columbia, *et al.*, pursuant to their passage and implementation of D.C. Code 50-1501.02(c)(5), did unconstitutionally and without just cause prohibit Plaintiffs from pursuing their lawful business within the boundaries of the District of Columbia;

3. That this Court award Plaintiffs damages, interest, attorney fees, and the costs of these proceedings; and,

4. That this Court award Plaintiffs all such other and further relief as in law and justice they may be entitled to receive.

## COUNT X
### (Injunctive Relief)

55. COME NOW Plaintiffs, D.C. Professional Taxi Drivers Association, Inc., Babf O. Ogunjimi, and Mahmand M. Yunus, by and through their attorney, Horace L. Bradshaw, sue Defendants, The District of Columbia, The District of Columbia Department of Transportation, The District of Columbia Department of Motor Vehicles, and The District of Columbia Taxicab Commission, and hereby recite and incorporate all of the aforegoing paragraphs, as fully as if made again originally, and they further state:

56. That Defendant's aforesaid conduct constitutes an unconstitutional deprivation of Plaintiffs' fundamental rights. *There exists a strong likelihood that Plaintiffs will*

19

*succeed on the merits of their claim.*

57. That unless Defendant is constrained by this Court from illegally depriving Plaintiffs of their right to pursue their lawful trade, *Plaintiffs will suffer immediate, substantial, and irreparable injury.*

58. *That the benefits to Plaintiffs in obtaining injunctive relief are equal to or outweigh any potential harm which Defendant might incur if this Court grants the requested injunctive relief.*

59. *That the public interest is best served by granting the injunction.*

WHEREFORE, Plaintiff demands:

1. That this Court issue an Order granting Plaintiffs a temporary restraining order restraining and enjoining Defendants, The District of Columbia, *et al.*, from denying to Plaintiffs the issuance of registration certificates for all newly obtained taxicabs, wherein all said newly acquired taxicabs are and/or will be operated by Plaintiffs within the boundaries of the said District of Columbia.

2. That this Court issue an Order granting Plaintiffs a preliminary injunction restraining and enjoining Defendants, The District of Columbia, *et al.*, from denying to Plaintiffs the issuance of registration certificates for all newly obtained taxicabs, wherein all said newly acquired taxicabs are and/or will be operated by Plaintiffs within the boundaries of the said District of Columbia.

3. That this Court issue an Order granting Plaintiffs a permanent injunction restraining and enjoining Defendants, The District of Columbia, *et al.*, from denying to

20

Plaintiffs the issuance of registration certificates for all newly obtained taxicabs, wherein all said newly acquired taxicabs are and/or will be operated by Plaintiffs within the boundaries of the said District of Columbia.

4. That Plaintiffs be granted damages, interest, attorney fees, costs, and all such other and further relief as this Honorable Court may deem just and proper.

*We solemnly affirm under the penalties of perjury that the contents of the aforegoing Complaint are true and correct to the best of our knowledge, information, and belief.*

*Emmett Clark*
"Emmit Clark", Representative
D.C. Professional Taxi Drivers
Association, Inc.,
Plaintiff

Babf O. Ogunjimi
Plaintiff

Mahmand M. Yunus,
Plaintiff

Respectfully submitted,

Horace L. Bradshaw  D.C. Bar No. 446575
1644 6th Street, N.W.
Washington, D.C.  20001
(202)- 737-8774

Attorney for Plaintiffs

# Exhibit 7

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

DISTRICT OF COLUMBIA PROFESSIONAL
TAXICAB DRIVERS ASSOCIATION, INC
2417 Evarts St., NE
2nd Floor
Washington, D.C. 20018

COALITION OF TAXICAB DRIVERS
AND ASSOCIATIONS AND COMPANIES
2417 Evarts St., NE
2nd Floor
Washington, D.C. 20018

STANLEY W. TAPSCOTT
4331 Massachusetts Avenue, SE
Washington, Dc 20019

SILVERLENE HILL
4821 Meade St. ,NE
Washington, DC

          Plaintiffs,

     v.

LEON J. SWAIN, JR.
Chairman
District of Columbia Taxicab Commission
2041 Martin Luther King Jr. Avenue, S.E., Suite 204
Washington, DC 20020

ADRIAN M. FENTY
Mayor, District of Columbia
John H. Wilson Building
1350 Pennsylvania Avenue, N.W.
Washington, DC 20004

Serve: Peter J. Nickles, Esquire
Attorney General for the District of Columbia
Office of the Attorney General
441 4th Street NW, Suite 1060 N
Washington, DC 20001

        Defendants.

FILED
CIVIL ACTIONS BRANCH
MAR 07 2008
SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, DC



0001308-08

No. _____

Case: 2008 CA 001801 B

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

This lawsuit challenges the unlawful actions taken by D.C. Mayor Adrian M.

Fenty and D.C. Taxicab Commission Chairman Leon J. Swain, Jr., in purporting to

promulgate rules requiring the use of "time and distance" taxi meters by taxicabs licensed

in the District of Columbia and in setting rates and issuing other regulations regarding the

D.C. taxicab industry.  By law, the exclusive authority to make those decisions is vested

in the District of Columbia Taxicab Commission, not in the Mayor or the Chairman.

Plaintiffs seek a declaration that the defendants' actions were unlawful, and an injunction

prohibiting the implementation or enforcement of their unlawful actions.

**JURISDICTION**

1.   This Court has jurisdiction over this action pursuant to D.C. Code § 11-921.

Plaintiffs' cause of action is provided by the District of Columbia Administrative

Procedure Act, D.C. Code § 2-510.

**PARTIES**

2.   Plaintiff District of Columbia Professional Taxicab Drivers Association, Inc.

(DCPTDA) is an association of over 2000 members, each of whom is licensed to operate

taxicabs in the District of Columbia.  It brings this action on its own behalf and on behalf

of its members.  Under the orders and regulations unlawfully issued by the defendants,

the Association's members will be required to purchase and install time and distance

meters in their taxicabs, and to use those meters to calculate passengers' fares at the rates

unlawfully established by the defendants, beginning not later than April 6, 2008.  The

imposition of these new fares will substantially decrease the incomes of the Association's

members.

2

3.   Plaintiff Coalition of Taxicab Drivers, and Associations and Companies (hereinafter "the Colation") is an unincorporated association, representing taxi drivers, as well as owners and managers of taxicab associations and companies.  It brings this action on its own behalf and on behalf of its members.  Under the orders and regulations unlawfully issued by the defendants, the Association's members will be required to purchase and install time and distance meters in their taxicabs, and to use those meters to calculate passengers' fares at the rates unlawfully established by the defendants, beginning not later than April 6, 2008.  The imposition of these new fares will substantially decrease the incomes of the Coalition's members.

4.   Plaintiff Stanley W. Tapscott is a Commissioner on the District of Columbia Taxicab Commission.  He has served as a commissioner since 2000.  He is one of three "industry members" who "have experience in taxicab industry operations in the District," as required by D.C. Code § 50-305(a).  Plaintiff Tapscott is a licensed District of Columbia taxi driver, and a member of the District of Columbia Professional Taxicab Drivers Association.  He has been driving a taxicab in the District of Columbia since 1962.  As an industry member of the Commission, he helps to make sure that the interests of taxi drivers are expressed and considered, but as a public servant he votes for the public policies that he believes are best for all stakeholders, including taxi owners, drivers, and the riding public.

5.   Plaintiff Silverlene Hill is an adult resident of the District of Columbia.  She is a senior citizen living on a budget, and she does not own a motor vehicle.  She relies on taxicabs to get to her doctors' offices, to and to get to work.  She knows exactly what each of those trips costs under the existing zone system.  The imposition of the new taxi

3

rules and fares unlawfully established by the defendants will make the cost of her taxi

rides both greater and unpredictable, and will decrease the availability of taxicab service

in her neighborhood.

6.    Defendant Leon J. Swain, Jr., is the Chairman of the District of Columbia

Taxicab Commission.  He is sued in his official capacity.

7.    Defendant Adrian M. Fenty is the Mayor of the District of Columbia.  He is

sued in his official capacity.

## FACTS

### The legal and regulatory framework

8.    In October 2006, Congress enacted the 2005 District of Columbia Omnibus

Authorization Act, Pub. L. No. 109-356, 120 Stat. 2019.  Section 105 of that Act

provided, in its entirety, as follows:

> (a) *In general.* – Except as provided in subsection (b) of this section and not later than 1 year after the date of enactment of this Act, the District of Columbia shall require all taxicabs licensed in the District of Columbia to charge fares by a metered system.

> (b) *District of Columbia opt out.* – The Mayor of the District of Columbia may exempt the District of Columbia from the requirement under subsection (a) of this section by issuing an executive order that specifically states that the District of Columbia opts out of the requirement to implement a metered fare system for taxicabs.

9.    The Mayor of the District of Columbia did not issue an executive order

specifically stating that the District of Columbia opts out of the requirement to implement

a metered fare system for taxicabs.  Accordingly, the District of Columbia must require

all taxicabs licensed in the District of Columbia to charge fares by a metered system.

4

10.  Under District of Columbia law, the District of Columbia Taxicab Commission has "exclusive authority for intrastate regulation of the taxicab industry." D.C. Code § 50-304.

11.  In particular, the Commission, through its Panel on Rates and Rules, has the "original jurisdiction, power, and duty to . . . Establish methodologies for the determination of reasonable fares for taxicab service, including, but not limited to, revision of the zone boundaries and zone construct currently employed to determine taxicab fares." D.C. Code § 50-307(b)(1)(B).  The Commission's Panel on Rates and Rules likewise has the jurisdiction and power to "authorize a metered system for determining taxicab fares," subject to a "60-day period of Council review." *Id.*

12.  Through its Panel on Rates and Rules, the Commission also has the "original jurisdiction, power, and duty to . . . Establish reasonable rates for taxicab service . . . within the District." D.C. Code § 50-307(b)(1)(A).

13.  In exercising this authority, the Panel on Rates and Rules must "adhere to and be subject to" the District of Columbia Administrative Procedure Act, and must "afford interested persons an opportunity to submit views and data orally during a public hearing, for which adequate notice has been given." D.C. Code § 50-308(b).

14.  In exercising this authority, the panel and the Commission must " balance equitably the interest of owners and operators of taxicabs, taxicab companies and associations, and dispatch services in procuring a maximum rate of return on investment and labor against the public interest in maintaining a taxicab system affordable to a broad cross section of the public, and shall establish nondiscriminatory rates, charges, matrices, boundaries, and methodologies for the determination of taxicab fares which assure

5

reasonable and adequate compensation and promote broad and nondiscriminatory public access to taxicab transportation facilities." D.C. Code § 50-317(b).

15. Pursuant to law, "No rule or rate [relating to taxicab service] shall be effective unless a majority of the full Commission has voted affirmatively for the adoption of the rule or rate." D.C. Code § 50-308(c).

16. Section 105 of the 2005 District of Columbia Omnibus Authorization Act was not intended to, and did not, repeal, amend, preempt or supersede the provisions of the D.C. Code vesting regulatory authority over the taxicab business in the Taxicab Commission, except in the single respect of mandating (unless the Mayor opted out) the use of a metered fare system.

**Defendants' unlawful actions**

17. Notwithstanding the unambiguous provisions of the D.C. Code quoted above, defendant Fenty usurped the authority of the Taxicab Commission and issued an order on October 17, 2007, purporting to decide that taxicabs licensed in the District of Columbia must use "time and distance meters" rather than the alternative "zone meters" that were favored by many taxi drivers and residents. This order was not published until January 2008. 55 D.C. Register 167.

18. Defendant Fenty had no legal authority to make that decision. His action has no legal force or effect.

19. The Taxicab Commission has never voted affirmatively for the adoption of any rule requiring the use of time and distance meters.

6

20.  Interested persons were never given an opportunity to submit views and data orally during a public hearing for which adequate notice has been given, as specifically required by law.

21.  Notwithstanding the unambiguous provisions of the D.C. Code quoted above, defendant Fenty also purported to delegate to defendant Swain "the Mayor's authority to implement the new time and distance metered taxicab system." Mayor's Order 2007-231, 55 D.C. Register 167.

22.  That purported delegation had no legal force or effect, as defendant Fenty had no such authority to delegate.

23.  Pursuant to that supposed delegation, defendant Swain (and not the Taxicab Commission) published a purported Notice of Proposed Rulemaking on November 9, 2007, proposing certain new rates and rules for D.C. taxicabs, and inviting written comments within 60 days.  54 D.C. Register 10819.

24.  Interested persons were never given an opportunity to submit views and data orally during a public hearing for which adequate notice has been given, as specifically required by law

25.  Also pursuant to that supposed delegation, defendant Swain (and not the Taxicab Commission) published a second purported Notice of Proposed Rulemaking on January 25, 2008, making several amendments to the proposed new rates and rules for D.C. taxicabs, and inviting written comments within 60 days.  55 D.C. Register 777, 810. This publication did not give any reasons for the amendments that were made.

26.  Mayor Fenty issued a Press Release dated January 16, 2008, http://www.dc.gov/mayor/news/release.asp?id=1206&mon=200801, in which he stated

that the January proposed rule would be subject to a thirty (30) day public comment

period. Counsel for the Plaintiffs contacted the D.C. Attorney General's office to inform

them of the discrepancy between the Press Release and the D.C. Register, which provided

for a sixty (60) day comment period. Counsel further informed them that the Plaintiffs

were relying on the sixty day comment period and intended to file comments during that

time.

27.   Following Plaintiff's counsel's contacts with the Attorney General's office,

defendant Swain (and not the Taxicab Commission), pursuant to that supposed delegation

of authority from the Mayor, published a Notice of Emergency and Proposed Rulemaking

on February 29, 2008, superseding the previously proposed new rates and rules for D.C.

taxicabs, and stating that final action to adopt the new rates and rules could be taken as

soon as five days from publication. 55 D.C. Register 2147.

28.   Also pursuant to that supposed delegation, defendant Swain (and not the

Taxicab Commission) published a Notice of Emergency and Proposed Rulemaking on

February 29, 2008, superseding the previously proposed new rates and rules for D.C.

taxicabs, and stating that final action to adopt the new rates and rules must be taken as

soon as five days from publication. 55 D.C. Register 2147.

29.   The proposed emergency rules occupy 35 single-spaced pages of the D.C.

Register. They go far beyond establishing new rates and technical requirements for

meters. For example, the proposed rules also establish new penalties, such as $1,000

fines for the new infractions of "operating without meter," operating with non-functional

meter," and "failure to provide meter statistics to [a] government agency." 55 D.C.

Register 2159-60. The proposed regulations also add an entire new Chapter 13

8

("Licensing and Operations of Taxi Meter Companies") to 31 DCMR, 55 D.C. Register
2162-2181.

30.   None of these new regulations have been lawfully adopted by the D.C.
Taxicab Commission.

31.   Defendant Swain purported to take final action adopting the proposed
emergency rates published on February 29, 2008 by stating that they were effective as of
February 29, 2008. 55 D.C. Register 2147.

According to the D.C. Register, 55 D.C. Register 810, the public comment period
on the proposed rule is still open and will remain open until March 25, 2008.

The Notice of Emergency and Proposed Rulemaking purported to abbreviate the
already published sixty day comment period.  The Notice stated, "The Proposed
Rulemaking comment period has been abbreviated because of the technical nature of the
changes and because the public and affective entities have already been given an
opportunity to adequately respond." 55 D.C. Register 2147.

The Plaintiffs are still in the process of preparing comments on the prepared rule
in reliance on the sixty day comment period and have not been able to submit all of their
data and views.

32.   Defendant Swain's purported adoption of new rates and rules for D.C.
taxicabs on an emergency basis was unlawful for each of five independent reasons.

a.   Defendant Swain had no authority to adopt or promulgate new rates and
rules for D.C. taxicabs.  That authority resides in the Taxicab Commission, or in the D.C.
Council.  It was not delegated to defendant Swain by the Mayor, because the Mayor
cannot delegate a power he does not possess.

b. Under the Taxicab Commission Establishment Act, rulemaking and ratemaking for the taxi business cannot be conducted without "afford[ing] interested persons an opportunity to submit views and data orally during a public hearing, for which adequate notice has been given as required by rules of the [P]anel [on Rates and Rules]." D.C. Code § 50-308(b). This explicit statutory mandate precludes use of the Administrative Procedure Act's emergency rulemaking procedures.

c. Even if the Administrative Procedure Act's emergency rulemaking procedures were applicable, they permit the adoption of rules and regulations on an emergency basis only when "necessary for the immediate preservation of the public peace, health, safety, welfare, or morals" of the District of Columbia. D.C. Code § 2-505(c). The defendants have not claimed that any such emergency exists regarding the adoption and implementation of new rates and rules for D.C. taxicabs. The only emergency articulated by the emergency notice is that "The emergency rulemaking is needed to implement the decision by the Mayor to require time and distance taximeters in licensed District of Columbia taxicabs on April 6, 2008." 55 D.C. Register 2197. That deadline is entirely arbitrary. District of Columbia taxicabs have operated on a zone system for many years. No harm to the "public peace, health, safety, welfare, or morals" of the District of Columbia would be created were the Mayor's self-imposed deadline of April 6, 2008, set aside so that new rates and rules for a metered fare system can be established in a lawful manner.

d. Even if there is an actual emergency, which there is not, ratemaking cannot be implemented through emergency rule.

e. So far as the record shows, defendant Swain did not seek to "balance equitably the interest of owners and operators of taxicabs, taxicab companies and associations, and dispatch services in procuring a maximum rate of return on investment and labor against the public interest in maintaining a taxicab system affordable to a broad cross section of the public, and [to] establish nondiscriminatory rates, charges, matrices, boundaries, and methodologies for the determination of taxicab fares which assure reasonable and adequate compensation and promote broad and nondiscriminatory public access to taxicab transportation facilities," as required by D.C. Code § 50-317(b).

### Harm to the plaintiffs and the public

33. Unless the unlawful actions identified in this Complaint are enjoined and set aside, all taxi drivers in the District of Columbia – including the members of plaintiffs District of Columbia Professional Taxicab Drivers Association and the Coalition – will be subjected to large fines on and after April 6, 2008, unless they have purchased time and distance meters and have had those meters installed in their taxicabs at one of the Commission licensed taximeter shops.

34. In order to have meters installed in all of the approximately 6,500 DC taxicabs by April 5, 2008, installations are scheduled to begin on or about March 10, 2008.

35. The purchase and installation of meters will cost approximately $300 to $500 per taxicab. It is, at best, unclear whether that expense could be recovered as damages from the District of Columbia in the event defendant Swain's actions are ultimately found to have been unlawful.

11

36. Unless the unlawful actions identified in this Complaint are enjoined and set aside, all taxi drivers in the District of Columbia – including the members of plaintiffs District of Columbia Professional Taxicab Drivers Association and the Coalition – will be required to charge the new fares set out in the regulations purportedly adopted by defendant Swain on March 5, 2008. That will lead to an immediate, severe decrease in the income of taxi drivers. It is, at best, unclear whether that loss could be recovered as damages from the District of Columbia in the event defendant Swain's actions are ultimately found to have been unlawful.

37. Unless the unlawful actions identified in this Complaint are enjoined and set aside, plaintiff Silverlene Hill – and many similarly situated residents of the District of Columbia – will be forced to pay higher fares for taxi service. It is, at best, unclear whether that loss could be recovered as damages from the District of Columbia in the event defendant Swain's actions are ultimately found to have been unlawful.

38. Unless the unlawful actions identified in this Complaint are enjoined and set aside, plaintiff Hill, and all other taxi passengers, will be unable to predict in advance what their fares will be, because time in traffic, as well as distance, will be part of the fare calculation, and because each taxi driver may take a different route from the beginning point of a ride to the destination. This will deter plaintiff Hill, and others who live on fixed, limited incomes, from using taxi services, and will thereby limit their ability to travel, including their ability to visit their doctors' offices, to shop for groceries, and to visit relatives. These harms cannot be undone in the event defendant Swain's actions are ultimately found to have been unlawful.

39. Unless the unlawful actions identified in this Complaint are enjoined and set aside, plaintiff Hill and other residents who live in outlying D.C. neighborhoods will also suffer from a decreased availability of taxi services, because the economic realities of the new fare system will cause taxicabs to cluster in the downtown area and avoid more remote neighborhoods. This harm cannot be undone in the event defendant Swain's actions are ultimately found to have been unlawful.

40. Unless the unlawful actions identified in this Complaint are enjoined and set aside, plaintiff Tapscott will be deprived of his legal right to participate, along with his fellow commissioners, in the making of appropriate rules and regulations for the taxi industry.

41. Unless the unlawful actions identified in this Complaint are enjoined and set aside, all interested members of the public will be deprived of their right to submit views and data on the proposed rates and rules orally during a public hearing for which adequate notice has been given, as guaranteed by law.

42. Plaintiffs have no adequate remedy at law for the injuries here complained of.

43. The defendants and the District of Columbia will suffer no harm if the unlawful actions identified in this Complaint are enjoined and set aside. Should it ultimately be determined that the defendants' actions were lawful, the rates and rules published on February 29, 2008, can simply take effect at a later date. Time is not of the essence.

44. The public interest will be served by making these important policy decisions in the manner established by law. The public interest is not served by allowing

13

government officials to ignore the law and take unilateral action that exceeds their lawful authority.

45.   The public interest in local self-government will also be served by affirming that statutes duly enacted by the District of Columbia Council are not repealed, amended preempted or superseded by congressional action unless a fair reading of the congressional enactment indicates such a purpose.

## CLAIMS FOR RELIEF

### Violation of the Administrative Procedure Act

46.   In usurping authority vested by law in the Taxicab Commission, defendants' actions were in excess of their statutory authority, and should therefore be held unlawful and set aside pursuant to the District of Columbia Administrative Procedure Act, D.C. Code § 2-510(a)(3)(C).

47.   In failing to "afford interested persons an opportunity to submit views and data orally during a public hearing, for which adequate notice has been given," as required by D.C. Code § 50-308(b) by arbitrarily abbreviating the comment period set forth in the D.C. Register, defendants' actions were without observance of procedure required by law, and should therefore be held unlawful and set aside pursuant to the District of Columbia Administrative Procedure Act, D.C. Code § 2-510(a)(3)(D).

48.   By attempting to adopt regulations through emergency rulemaking when there was no emergency, as required under D.C. Code § 2-505(c), defendants' actions were in excess of their statutory authority, and should therefore be held unlawful and set aside pursuant to the District of Columbia Administrative Procedure Act, D.C. Code § 2-510(a)(3)(C).

14

49. Defendants' actions were unsupported by substantial evidence in the record, arbitrary, capricious, and otherwise not in accordance with law, and should therefore be held unlawful and set aside pursuant to the District of Columbia Administrative Procedure Act, D.C. Code § 2-510(a)(3)(E) and (A).

### Violation of the Regulation of Taxicabs Act

47.    In failing to "afford interested persons an opportunity to submit views and data orally during a public hearing, for which adequate notice has been given," as required by D.C. Code § 50-308(b), defendants' actions were without observance of procedure required by law, and should therefore be held unlawful and set aside pursuant to the District of Columbia Administrative Procedure Act, D.C. Code § 2-510(a)(3)(D).

### REQUEST FOR RELIEF

WHEREFORE, plaintiffs ask that this Court:

(A)  DECLARE that D.C. Code §§ 50-307 and 50-308 were not repealed, amended, preempted or superseded by § 105 of the 2005 District of Columbia Omnibus Authorization Act, 120 Stat. 2023, except in mandating the use of a metered fare system;

(B)  DECLARE that defendant Fenty has no authority to "establish methodologies for the determination of reasonable rates for taxicab service" in the District of Columbia, or to select the type of meters to be used by taxicabs licensed in the District of Columbia, or to set the rates or fares to be charged by taxicabs licensed in the District of Columbia;

(C)  DECLARE that defendant Swain has no authority to set the rates or fares to be charged by taxicabs licensed in the District of Columbia;

15

(D) DECLARE that Mayor's Order 2007-231 (55 D.C. Register 167), purporting to determine that taxicabs licensed in the District of Columbia shall use time and distance meters beginning not later than April 6, 2008, is null and void;

(E) DECLARE that Mayor's Order 2007-231 (55 D.C. Register 167), purporting to delegate defendant Fenty's purported "authority to implement the new time and distance metered taxicab system" to defendant Swain, is null and void;

(F) DECLARE that the Notices of Proposed Rulemaking published by defendant Swain at 54 D.C. Register 10819 (November 9, 2007) and at 55 D.C. Register 777 (January 25, 2008) are null and void;

(G) DECLARE that no emergency existed justifying the Notice of Emergency and Proposed Rulemaking published by defendant Swain at 55 D.C. Register 2147 (February 29, 2008);

(H) DECLARE that the Notice of Emergency and Proposed Rulemaking published at 55 D.C. Register 2147 (February 29, 2008) is null and void;

(I) DECLARE that the action taken by defendant Swain on March 5, 2008, purporting to adopt the rules and fares published at 55 D.C. Register 2147, is null and void;

(J) ENJOIN the defendants, their officers, agents and employees, and persons acting in concert with them, from requiring taxicabs licensed in the District of Columbia to install and use time and distance meters, unless and until such a requirement is duly adopted by the District of Columbia Taxicab Commission;

(K) ENJOIN the defendants, their officers, agents and employees, and persons acting in concert with them, from establishing or implementing new taxi rates for

16

taxicabs licensed in the District of Columbia unless and until such rates are duly adopted

by the District of Columbia Taxicab Commission;

(L) ENJOIN the defendants, their officers, agents and employees, and persons

acting in concert with them, from imposing any fines or penalties upon taxi drivers for

failure to use time and distance meters, unless and until such fines or penalties are duly

adopted by the District of Columbia Taxicab Commission; and

(M)  Grant plaintiffs such other and further relief as the Court deems just and

proper.

Respectfully submitted,

Jeffrey B. O'Toole (D.C. Bar No.244509)(otoole@otrons.com)
Karen Burke (D.C. Bar No.429396)(kburke@otrons.com)
Danya A. Dayson (D.C. Bar No.461566)(Danya@otrons.com)
O'Toole, Rothwell, Nassau & Steinbach
1350 Connecticut Avenue, N.W., Suite 200
Washington, DC 20036
(202) 775-1550 (telephone)
(202) 775-0008 (facsimile)

Counsel for plaintiffs

March 7, 2008

17