**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

D.C. PROFESSIONAL TAXICAB DRIVERS
ASSOCIATION, *et al.,*

                    Plaintiffs,

        v.                               Civil Action No. 11-1802 (BAH)

DISTRICT OF COLUMBIA*, et al.,*

                    Defendants.

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Plaintiffs are trying to hit a moving target, senselessly attacking the Taxicab Commission

without a proper legal basis, hurling numerous moot and/or non-actionable claims at Defendants

in the hope that something sticks.  Their desperation is most clearly evidenced by their failure to

relent on even the most basic defect of their lawsuit:  the inclusion of redundant Defendants, to

which they devote a full three pages of argument.  Plaintiffs' Memorandum in Opposition at 13-

16.[1]  At the same time, Plaintiffs have obviously had no choice but to acknowledge the obvious

lack of merit in certain of their arguments and claims, to wit, Counts III (concerning

Commissioner Pawha) and X (Commerce Clause), the former of which they concede is moot[2]

and that latter of which they have voluntarily dismissed.[3]  The Court should now dispose of the

remainder of Plaintiffs' claims in similar fashion

---

[1] Hereinafter "Opposition" or "Opp."

[2] Opp. at 39 ("Pahwa's removal moots Count III").

[3] *See* Notice of Dismissal (Document 12).

As shown in Defendant's Memorandum of Points and Authorities in Support of its Motion to Dismiss the First Amended Complaint,[4] the Taxicab Commission is under new leadership that is endeavoring to meet the concerns of the taxicab owners and operators for higher rates, while preserving the interests of the public in a smoothly running, efficient, and economical system.  The Court is urged to keep that background fact in mind while considering the lack of merit in Plaintiffs' arguments.

*First,* a number of the counts,  II, III, V,and XI, are moot by reason of events since the First Amended Complaint was filed or on the basis of other changed circumstances.  Plaintiffs' effort to revive them is counter to the established law of mootness in the District of Columbia. *Second,* Counts IV and V are also barred by plaintiffs' failure to exhaust their administrative remedies. There are ongoing administrative proceedings to deal with taxicab rates and other matters raised by plaintiffs, and these proceedings have not yet run their course.  *Third,* Plaintiffs' attack on the composition of the Taxicab Commission fails because they have relied on the wrong statute to challenge the makeup of the Commission. The correct statute upholds the composition of the Commission.  *Fourth,* the Mayor has not exercised unlawful control over the Taxicab Commission. On the contrary, both the Mayor's and the Commission' exercise of their authority over taxicabs and taxicab rates are in full conformity with the law, as established by prior cases in this Court.  *Fifth,* Plaintiffs' challenges to Counts VII and IX are barred by the discretionary function doctrine.  The actions complained of in these counts are completely within the discretionary authority of the Commission, originally and as delegated by the Mayor.  *Sixth,* Plaintiffs' challenge to the standards for stops by inspectors of taxicabs,  in addition to being

---

[4] Hereinafter "Defendants' opening papers" or "Df. Mem."

barred by mootness, is defeated by the recent general order of the Commission that plaintiffs concede is consistent with the Constitution and is beneficent in its effects.

As will emerge from this Reply Memorandum, it is clearly better to let the reform process run its course without judicial intervention. Defendants submit that the best resolution is for the Court to dismiss what remains of the First Amended Complaint, for the reasons stated herein and those set forth in Defendants' opening papers, after which Defendants are prepared to discuss Plaintiffs' concerns in a non-judicial setting in good faith.

## ARGUMENT

### I.   JURISDICTIONAL AND PRUDENTIAL CONSIDERATIONS WARRANT DISMISSAL

#### A.   DEFENDANTS OFFICE OF THE ATTORNEY GENERAL AND D.C. TAXICAB COMMISSION ARE *NON SUI JURIS*

In their opening papers at page 8, Defendants argued that Defendants "Office of the Attorney General for the District of Columbia" and the "D.C. Taxicab Commission" are *non sui juris.* Plaintiffs have now consented to the dismissal of these Defendants. Opp. at 13 n.3.

#### B.   THE CLAIMS AGAINST MAYOR GRAY AND CHAIRMAN LINTON ARE REDUNDANT OF THE CLAIMS AGAINST THE DISTRICT

Defendants argued, beginning on page 9 of their opening papers, that the claims against Defendant Gray is in his official capacity as Mayor and against Defendant Ron Linton in his official capacity as Commissioner should be dismissed because they are redundant of the claims against the Defendant District of Columbia. Plaintiffs have offered a lengthy opposition to this well-supported and fairly straightforward argument, insisting that the claims should remain

because, although they are redundant, such redundancy is *not prohibited.* *See* Opp. at 13-16.  In doing so, Plaintiffs have missed the point.  The Court should not retain jurisdiction over claims that are clearly redundant where the institutional Defendant – in this case the District of Columbia – is already before it and fully subject to this Court's legal and equitable powers.

Plaintiffs' argument against dismissal rests on the contention that there is nothing "procedurally or substantively improper about the inclusion of Mayor Gray and Chairman Linton." Opp. at 14.  Defendants do not argue that their joinder is "procedurally or substantively improper."  Rather, the naming of these Defendants is redundant and unnecessary in the light of the suit against the District, and as a matter of sound judicial administration, these defendants should be dismissed to clear away the underbrush and make the case more efficient if it should go forward on *any* ground.

It is notable that the cases in which such joinder has been allowed to continue often involve suits in 42 U.S.C. § 1983 and the doctrine of *Monell v. Dept. of Social Services of New York,* 436 U.S. 658, 690 n. 55 (1978).  *See* Pl. Mem. at 13-14; *Winder v. Erste,* 2005 WL 736639 (D.D.C. 2005) (Bates, J.).  Since the Supreme Court in *Monell* held that local government officials sued in their official capacity under Section 1983 are "persons" within the meaning of the statute and therefore "appropriate defendant[s]" in such suits, some courts have exercised their discretion to keep them in the case.  *See Winder v. Erste, supra,* 2005 WL 736639, at 5.

There is no Section 1983 claim in the present case and therefore no reason to keep Mayor Gray and Chairman Linton in the case on the basis of *Monell.*  In the absence of any other reason to keep them in – Plaintiffs do not argue or show prejudice if they are dismissed – they should be dismissed.

### C.     ALL COUNTS OTHER THAN XI FAIL BECAUSE PLAINTIFFS HAVE NO PRIVATE RIGHTS OF ACTION UNDER LOCAL LAW

Plaintiffs have stipulated to the dismissal of one of their two federal law claims:  Count X.  Opposition at 24 n. 6.  That leaves only one federal law claim:  Count XI.  All other counts purport to state claims under District of Columbia law and all are deficient because District law does not recognize a private right of action, express or implied, on any of these claims.

Plaintiffs attempt to argue that the law governing private rights of action has no application to their claims because of the relief they seek.  They assert: "Plaintiffs bring their claims pursuant to the Court's general equitable powers to review government agency action; the existence of a private right of action is not relevant to plaintiffs' claims." Opp.  at 3.

Plaintiffs seek to have this Court draw a bright line protecting their claims, since they seek injunctive and declaratory relief rather than monetary damages.  *See* Opp. at 4.

Unfortunately for their theory, which they support with citations to a number of D.C. cases, District law does not support plaintiffs' position.

Inexplicably, plaintiffs fail to cite or discuss a recent leading case on private rights of action in the D.C. Court of Appeals, *Robert Siegel, Inc. v. District of Columbia,* 892 A.2d 387 (D.C. 2006).  *Siegel* occurred after *District of Columbia v. Sierra Club*, 670 A.2d 354 (D.C. 1996), which is a case heavily relied on by Plaintiffs.  *Siegel* was a challenge to the new baseball stadium in Washington, D.C., which was to provide a home for the new team in the National League, the Washington Nationals.  The plaintiffs were a landowner in the area whose property was designated for the exercise of eminent domain so that the new stadium could be built in Southeast Washington.  The plaintiffs sued in the Superior Court---seeking only injunctive relief, not money damages, to prevent the stadium project from moving forward. *Id.* at 391.  The suit

asserted that the District had failed to comply with a D.C. Act requiring an evaluation of projected costs on the stadium by the Chief Financial Officer of the District and requiring that the project be located elsewhere if the evaluation exceeded a specified limit.  The District moved to dismiss for failure to state a claim, and the Superior Court granted the motion on several grounds, including:  "the plaintiffs had no private right of action to challenge the CFO's revaluation of the stadium site purchase estimate."  *Id.* at 391.

The D.C. Court of Appeals affirmed the dismissal, stating:  "[w]e could simply affirm the trial court's decision in this case granting the motion to dismiss to the District solely on the lack of a private right of action under the Stadium Financing Act."  *Id.* at 392.  The court cited prior decisions holding that a private right of action was required in such cases.  *Id.* at 392 n. 8.   It concluded:  "[w]e are satisfied that the Siegel Group cannot bring a challenge by asserting a private right of action under the statute."  *Id.* at 392 n. 8.

There was not the slightest suggestion in the opinion that a private right of action was not required because only equitable relief was sought, becausethere was no monetary damages claim, or because the action sought judicial review of D.C. government action----all the factors relied on by plaintiffs in the present case in asserting that the existence of a private right of action is irrelevant.  *See* Opp. at 4.  The Court noted its awareness of *Sierra Club* and still found that it was "improbable that the Council intended to grant landowners…the right to challenge the legitimacy of a revaluation study."  *See Siegel*, 892 A.2d at 393.

*Siegel* does not stand alone.  In *In re D.G.*, 583 A.2d 160 (D.C. 1990), also ignoed by plaintiffs, the court dealt with an issue of the termination of parental rights by a D.C. agency. The mother of the plaintiff asserted that the termination of her rights was unlawful because it

violated a federal statute, the Adoption Assistance and Child Welfare Act (CWA).  *Id.* at 161.

Only equitable or declaratory relief was sought, but the Court held that:

 "D.G.'s mother lacks standing to make these claims because the CWA gives her no private right

of action to enforce its provisions against the District of Columbia."  *Id.* at 166.  *See also Suter v.*

*Artist M*, 503 U.S. 347, 363-64 (1992); *Fountain v. Kelly*, 639 A.2d 684, 690 (D.C. 1993).  *But*

*see District of Columbia v. American University*, 2 A.3rd 175 (D.C. 2010) (also not cited or

discussed by Plaintiffs).

Defendants respectfully suggest thatthe *Siegel* line of cases, ignored by plaintiffs, is far

more current and compelling.

Defendants submit that a private right of action analysis demonstrates that Plaintiffs have

not satisfied their burden of stating a valid claim on any of the District law counts.


### D.       COUNTS II, III, IV, V, AND XI ARE MOOT IN WHOLE OR IN PART[5]


As Defendants argued in their opening papers at 17, Count III is moot because the

composition of the Commission is already in full compliance with the Act with respect to

Plaintiffs' allegations about former Commissioner Pawha.   *See* Opp. at 39 (conceding that

"Pahwa's removal moots Count III").  Plaintiffs continue to dispute the arguments raised in

Defendants' memorandum at pages 17-18, however, that Counts II, V, and XI are not moot.

They are not correct.

--------------------------------------

[5] Because Count II includes allegations about Commissioner Pawha's presence on the Commission, First Amended
Complaint at ¶¶ 105-106; 109-113, Defendants correctly argued in their opening papers that Count II is moot *in part*
because of his departure.  *See* Df. Mem. at 17.  Further, as explained in the text, any study required by the Act has
now been conducted as part of the public rate-making process, which would also moot Count IV.  Although Count
IV was not included in Defendants' mootness argument in its opening papers, Plaintiffs have included it in their
opposition at page 39, which justifies including it here.

With respect to Count V, Plaintiffs argue principally that the failure to undertake a rate study demonstrates that Defendants have failed to establish reasonable rates.  Opp. at 39.  In so doing, however, Plaintiffs are implicating not only Count V, but Count IV, which directly alleges the failure to conduct a rate study.  But Plaintiffs offer no discussion to support their allegation that "Defendants have not carried out [the alleged] duty" to conduct a rate study."  *See* Opp. at 39.  In fact, Plaintiffs' own exhibits 15, 16, and 17 show that such a study was indeed conducted in November 29, 2011, as does the transcript of the Commission hearing of November 29, 2011 (attached hereto as Exhibit 8).  Thus, both Count V *and Count IV* are moot, according to Plaintiffs' own exhibits.

With respect to Count XI, Plaintiffs concede that Chairman Linton's "adoption of a reasonable suspicion" standard for traffic stops is consistent with the Constitution and "clearly ameliorative in practice."  Opp. at 40.  As shown by Defendants' Exhibit 4 to their motion to dismiss, the new standard meets constitutional requirements. *See* Exhibit 4 at 2.

In any event, the new standard meets the allegations in Count XI and moots the Count.  Why plaintiffs should suggest that the Commission would retract the new policy on the same day that this case is dismissed is mysterious and a completely unsubstantiated allegation.  *See* Opp. at 40.  Plaintiffs' musings simply have no bearing on whether, as a legal matter, count XI is moot.

Indeed, Plaintiffs seem to be unaware of the proper approach to mootness questions.  As the D.C. Circuit summarized the law in *Clarke v. United States*, 915 F.2d 699, 701 (D.C. 1990):

> [e]ven where litigation poses a live controversy when filed, the doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.

*Id.* at 701 (quoting *Transwestern Pipeline Co. v. FERC,* 897 F.2d 570, 575 (D.C. Cir. 1990)) (internal quotations omitted).  So here, the decision on these counts will not presently affect the

parties' rights nor have a more than speculative chance of affecting them in the future.  As the

court in *Clarke* went on to say, "zero risk is not the test."  *Id.* at 702.

With respect to the so-called "voluntary cessation" exception to the principle of mootness,

the *Clarke* court said:

> [a]t least in the absence of overwhelming evidence (and perhaps not even then), it
> would seem inappropriate for the courts either to impute such manipulative
> conduct to a coordinate branch of government, or to apply against that branch a
> doctrine that appears to rest on the likelihood of a manipulative purpose.

*Id.* at 705.  Thus, this Court should reject Plaintiffs' unfounded belief that Director Linton will

unilaterally retract the new policy concerning the standard to be applied to searches if this count is

dismissed.  *See* Opp. at 40.  The holding in *Clarke* expressly prevents courts from imputing such

"manipulative conduct."  *Clarke*, 915 F.2d at 705.

Accordingly, all the counts on which Defendants have moved to dismiss on grounds of

mootness should be dismissed on that basis alone, in addition to the other grounds advanced.

## E.     COUNTS IV AND V ARE BARRED BY PLAINTIFFS' FAILURE TO EXHAUST THEIR ADMINISTRATIVE REMEDIES

Defendants raised the defense of failure to exhaust administrative remedies for Counts IV

and V.  Defendants cited *District of Columbia Metro. Police Dep't v. Fraternal Order of Police*,

997 A.2d 65, 81 (D.C. 2010), which provided that "judicial interference is withheld until the

administrative process has run its course."  In regards to plaintiffs' complaints regarding a

taxicab rate review and consideration of rate increase by the Commission, Defendants have

amply demonstrated that the administrative process regarding both of plaintiffs' concerns has not

yet run its course.

On November 29, 2011, the Commission held a hearing titled "Public Hearing on Rate Increase," which addressed both a taxicab rate review required by the Act and consideration of a rate increase.  *See* Plaintiffs' Exhibits 15, 16, and 17.  Further, the Commission most recently issued a notice of proposed rulemaking on December 23, 2011, to increase taxicab rates, which would result in a mileage rate increase from one dollar and fifty cents ($1.50) per mile to two dollars and sixteen cents ($2.16) per mile.  *See* Notice of Proposed Rulemaking to Amend Chapter 8 of Title 31 to adjust taxicab fare rates and eliminate certain other fees. http://www.dcregs.dc.gov/Search/FullTextSearch.aspx?SearchType=DCR&KeyValue=taxicab%20commission (last accessed Feb. 6, 2012).

Plaintiffs state that they have exhausted their administrative remedies for Counts IV and V through numerous correspondence with and submission of formal comments to the DCTC and Administration officials.  *See* Opp. at 19-23.  Notwithstanding Plaintiff's actions, *Fraternal Order of Police* squarely forecloses plaintiffs' claims.  Given the on-going rulemaking proceedings, the administrative process must run its course.

## II.     IN THE ALTERNATIVE, NUMEROUS COUNTS FAIL TO STATE COGNIZABLE CLAIMS

### A.     COUNT I FAILS BECAUSE THE MAYOR HAS NOT EXERCISED UNLAWFUL CONTROL OVER THE COMMISSION

Plaintiffs fail to refute Defendants' arguments (starting in its opening papers at page 20) justifying the exercise of Mayoral control over taxicab rates, which is an integral part of his lawful authority under the Act, the inherent authority of the mayor, and the Omnibus Act.

*First,* Plaintiffs spend an inordinate amount of time discussing dicta in *D.C. Professional Taxicab II.  See* Opp. at 27.   Besides the fact that *dicta* does not constitute the court's holding,

Defendants urge this Court to reject any conclusion that the Establishment Act does not give the Mayor co-extensive power to regulate taxicabs; that portion of the Superior Court's decision is not persuasive and this Court should not follow it.[6]  *D.C. Professional Taxi Drivers Assoc'n, Inc. v. D.C.,* No. 1993-08 (D.C. Super. Ct.).   The Act gives the Mayor broad power to regulate passenger vehicles for hire, which includes taxicabs.  D.C. OFFICIAL CODE § 50-313(a).  Plaintiffs also maintain that the definition of "passenger vehicle for hire" excludes taxicabs.  Opp. at 27.  Plaintiffs' reading of the DCTC Establishment Act is incorrect.  "Taxicab" is defined as "any passenger vehicle for hire having a seating capacity of 8 or less passengers, exclusive of the driver, and operated as a vehicle for passenger transportation for hire by taxicab."  D.C. OFFICIAL CODE § 50-303(8).  Under this definition, "taxi" is a subset of "passenger vehicle for hire."[7]

   *Second,* Plaintiffs' contention that the *holding* in *D.C. Professional Taxicab II* somehow "limited" the Mayor's authority cannot be a serious one, since it *affirmed* the Mayor's exercise of control over meter implementation under the Omnibus Act.  As the Superior Court noted in its decision, "[t]he Mayor… had the authority to implement the meter system pursuant to this independent enactment.  Since he had that authority to so act, the Mayor could delegate such

---

[6] The same is true of Defendants' argument that the Mayor has power over taxicabs inherent to his power as the Chief Executive.  The Court should follow the *holding* in the prior case, for the reasons set forth herein.  *See* Df. Mem. at 17 and discussion *supra.*

[7] "Passenger vehicle for hire" is defined as (A) ambulances, funeral cars, sightseeing vehicles, or other contract vehicles, or vehicles rented by the hour; (B) vehicles operated between two points or on a fixed schedule; or (C) "[a]ny other private motor vehicle for hire not operated on a schedule or between fixed termini and operated exclusively in the District, exclusive of taxicabs." *Id.,* § 50-303(6).  Subparagraph (C) brings in private motor vehicles for hire not covered by subparagraphs (A) or (B) if they meet *two* requirements: (1) they are "not operated on a schedule or between fixed termini" and (2) they are "operated exclusively in the District, exclusive of taxicabs." A taxicab is a "passenger vehicle for hire" because it falls squarely within the first requirement.  The fact that a taxicab is a subset of passenger vehicles for hire is also supported by other law—namely, D.C. Official Code § 34-203, part of the title on public utilities, which excludes from the definition of "common carrier," among other vehicles, "[t]axicabs, and all other passenger vehicles for hire."

authority to the head of the agency under the Home Rule Act."  Df. Exhibit 3, April 21, 2008

Memorandum Opinion and Order at 21-22.[8]  Plaintiffs' instant challenge is that,

notwithstanding the ruling in their earlier lawsuit, the Mayor has somehow *lost* the authority

given to him in the Omnibus Act; there is nothing in the earlier decision to support this position,

nor is supported by the grant of authority in the Act.  As former Attorney General Nickles noted:

"Part and parcel with implementing a meter system is establishing the rules under which the

system will operate, including setting rates.  The Mayor's Order [2007-231] remains in effect."

*See* Exhibit 9 hereto, Letter from Attorney General Nickles to Chairperson Jim Graham.

Accordingly, the Mayor's authority should be upheld for the same reasons as in *D.C.*

*Professional Taxicab II.*[9]

## B.   COUNT II FAILS BECAUSE THE COMPOSITION OF THE TAXICAB COMMISSION DOES NOT VIOLATE THE ACT

This Count raises a single straightforward legal issue – are the two members of the

Commission who are respectively a restaurateur and a hotel executive properly on the

Commission as "industry members"?  D.C. Official Code § 50-305(a) requires three of the

members to "have experience in taxicab operations in the District."  Plaintiffs do not appear to be

disputing that these gentlemen have "familiarity and experience with taxicab operations."  Opp.

at 32.  Rather, Plaintiffs contend that – under different sections of the statute, §§ 50-301(7) and

---

[8] As explained in Defendants' opening papers and above, the earlier decision precludes re-litigation here of the issue of whether the Mayor has authority to set taxicab rates.

[9] Plaintiffs also complain that the authority retained by the Mayor makes it impossible for the Commission to have any meaningful say in rate-making, stating "[Chairperson] Linton [could] reverse himself at any time and preserve this power for himself."  *See* Opp. at 31.  Plaintiffs do not allege that this has actually occurred or is likely to occur, and such speculation is not even enough to show Plaintiffs' have Article III standing on Count I (as argued by Defendants in their opening papers at 12), no less defeat a documented delegation of authority from the Mayor to the Commission.

50-303(12) – they would not qualify as persons "directly involved in the provision of taxicab services within the District." *See* Opp. at 33.

The problem with Plaintiffs' argument is that the statute does not require industry membership on the Commission to be limited to persons "directly involved in the provision of taxicab services within the District." D.C. OFFICIAL Code § 50-305(a). If that is what Council had intended, it would have said so. To the contrary, the statute is precise in defining industry membership for purposes of appointment to the Commission as persons with "experience in taxicab operations in the District." D.C. OFFICIAL CODE § 50-305(a).

Perhaps the statute should be amended to adopt plaintiffs' reading. But that is a matter for them to take to the Council, not to this Court. Defendants do not see how the Court can rewrite the statute to conform to Plaintiffs' wishes. Section §305(a) is what it is, and unless and until it is rewritten by the legislative body, it cannot be overcome. Count II fails.

### C.   COUNT IV FAILS BECAUSE THE COMMISSION IS NOT OBLIGATED TO CONDUCT A RATE "STUDY"

Plaintiffs have not demonstrated that the Act requires a "formal rate study."  *See* Df. Mem. at 27; Opp. at 34. Rather, the statute simply provides for a "review of the taxicab rate structure" which shall be undertaken by "holding at least 1 public hearing." *See* D.C. Code § 50-317(a). Nowhere in the statute do the words "formal rate study" appear, nor is there any indication that outside consultants and review of fare data since 2006 is required. *See* Pl. Mem. at 35. Plaintiffs' assertions that the D.C. Municipal Regulations also provide for a formal rate study is similarly not based at all on the relevant regulatory text. Nowhere in the regulations is there any indication that formal rate studies are mandatory. Nothing in the regulations, 31 D.C.M.R. §§ 1102, *et. seq.,* establishes that monies from the Fund shall be used for "any

investigation or proceeding concerning taxicab rates or regulations," while such commission or panel investigations "may include…an investigation into the following subjects such as rate studies."  For these reasons, Plaintiffs have failed to state a claim that a "formal rate study" is required by law.

**D.    COUNTS V, VII AND IX ARE BARRED BY DISCRETIONARY FUNCTION IMMUNITY**

Defendants argued at page 28 of their opening papers that Counts V,[10] VII and IX – regarding the Commission's rate-making, management of the driver's assessment fund and decision to discontinue paper licenses – fail because they attack decisions immune from judicial challenge.  Plaintiffs' response is largely that the Act leaves the Commission "no discretion" in making the decisions.  *See* Opp. at 10-11.  Plaintiffs, however, fail to cite any section of the statute or any other controlling authority to support their position.  There is no statute, regulation, or policy specifically prescribing any course of action to be followed in connection in making these decisions and Plaintiffs *still* do not suggest otherwise.  Further, there is no "course of action" exception to immunity for discretionary acts; that is merely part of the analysis for determining whether an act is discretionary or ministerial.  *See* Opp. at 10 (discussing *Aguehounde, v. District of Columbia.* 666 A.2d 443, 448 (D.C. 1995)).  The actions complained of in Counts VII and IX are completely within the discretionary authority of the Commission (originally, or as delegated from the Mayor), and therefore these Counts fail on the basis of discretionary function immunity.

---

[10] Defendants submit that the Commission's rates should be subject to the protection of discretionary function immunity for the reasons set forth herein and in Defendant's opening papers.  In the alternative, any judicial review should be subject to the requirements of exhaustion, and limited by appropriate administrative deference to the Commission.

### E.   ALTERNATIVELY, COUNT VII FAILS BECAUSE PLAINTIFFS HAVE PLED NO ACTIONABLE CLAIM CONCERNING THE DCTC FUND

Plaintiffs have not demonstrated a viable claim for Count VII regarding the Drivers' Assessment Fund ("Fund").  *See* Opp. at 36; Df. Mem. at 36.  Despite certain findings in the "Review of the D.C. Taxicab Commission's Assessment/Commission Fund for Fiscal Years 2005 Through 2009, As of June 20, 2009," conducted by the D.C. Auditor, Plaintiffs cannot demonstrate that D.C. Official Code § 50-320 – pertaining to the Fund – has been violated.  The only relevant finding in the Auditor's Report concerning a violation of the Fund's statute relates to the failure of the DCTC to submit annual reports to the Council for FY's 2005 through 2009.  Yet, the D.C. Auditor Report acknowledges that the law has been changed, with the statutory section regarding submission of annual reports now repealed as of March 3, 2010.  *See Auditor's Report*, p. 9 n. 13-14.  The other two findings which raise the possibility of the unlawful action relate to the District's Procurement Practices Act and the District's Quick Payment Act, both of which are not relevant to Plaintiffs' claim regarding the Fund.  *See id.* at 14.  For these reasons, Count VII fails to state a cognizable claim.

### F.   PLAINTIFFS HAVE VOLUNTARILY DISMISSED COUNT X

On January 11, 2012, Plaintiffs voluntarily dismissed Count X, which had alleged that the District has violated Plaintiffs' right to travel and the Commerce Clause.  *See* Notice of Dismissal (Document 12).  Accordingly, these allegations are out of the case.

### G.     A NUMBER OF COUNTS ARE BARRED BY THE STATUTE OF LIMITATIONS AND LACHES

Defendants raised the defenses of the statute of limitations and laches in their Motion to Dismiss, *see* Def. Mem. at  33-34, pointing out that the factual allegations in the complaint date to at least 2007, more than three years before the First Amended Complaint was filed, and it is alleged that the administration of the meter system for taxicabs, which is under attack here, was completely in implementation by June 2008.

Plaintiffs have not responded to this basis for dismissal of their claims and therefore appear to concede it.   Certainly this is true as to any claims for monetary recover which may be subsumed in the complaint.  *See. e.g.,* First Amended Complaint, Prayer for Relief, Section 1g, at 33.

## III.     COUNTS VI AND XII ARE NOT CAUSES OF ACTION

Defendants argued at page 34 of their opening papers that Counts VI and XII are not causes of action, but prayers for relief.  Count VI is a request for preliminary relief and Count XII is a request for declaratory relief.  Plaintiffs have failed to address Defendants' argument about Count VI and the argument should be treated as conceded.  *Nickel,* 2011 WL 5822724 *4. *See also Three Lower Counties Comm. Health Serv.,* 517 F.Supp.2d at 434 n. 2. Plaintiffs state that they are willing to "forego" Count XII as a separate cause of action.  Opp. at 41. Defendants' motion as to these claims should be granted.

# CONCLUSION

For all the foregoing reasons, the complaint fails under Rules 12(b)(1) and 12(b)(6) and should be dismissed.

Respectfully submitted,

IRVIN B. NATHAN
Attorney General for the District of Columbia

ELLEN EFROS
Deputy Attorney General
Public Interest Division

/s/ *Grace Graham*_____
GRACE GRAHAM, D.C. Bar No. 472878
Chief, Equity Section
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C.  20001
Direct Dial: (202) 442-9784
Receptionist: (202) 727-6295
Facsimile: (202) 741-8892
Email: grace.graham@dc.gov

/s/ *Daniel A. Rezneck*_____
DANIEL A. REZNECK, D.C. Bar No. 31625
Senior Assistant Attorney General
441 Fourth Street, N.W., Suite 600S
Washington, D.C.  20001
Direct Dial: (202) 724-5691
Fax: (202) 727-3625
Email: daniel.rezneck@dc.gov

 

                 /s/ *Jacques P. Lerner*_____

                 JACQUES P. LERNER, D.C. Bar No. 440998

                 Assistant Attorney General

                 441 Fourth Street, N.W., Sixth Floor South

                 Washington, D.C.  20001

                 Direct Dial:  (202) 724-1342

                 Receptionist:  (202) 727-6295

                 Facsimile:  (202) 741-5908

                 Email: jacques.lerner@dc.gov

**FEBRUARY 8, 2012**       **COUNSEL FOR DEFENDANTS**